**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Case No. 1:22-cv-04976-JSR |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS, | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

ARGUMENT ................................................................................................................... 3

   I.   This Action Might Have Been Brought in the Middle District of Florida. ......................... 4

  II.  The Interests of Convenience and Justice Strongly Favor Transfer to the Middle District of Florida. ................................................................................................................... 4

      A.   The Locus of Operative Facts Strongly Favors Transfer (Factor 3). ............................. 5

      B.   Florida Would Be Significantly More Convenient for the Parties and Witnesses and for Access to Sources of Proof (Factors 1, 2, 4, and 5). ........................................................ 6

      C.   Plaintiff's Choice of Forum Is Not Entitled to Deference (Factor 8). ........................... 8

      D.   The Interests of Justice Favor Transfer to the Issuer's Home Forum (Factor 10). ........ 8

      E.   The Remaining Factors are Neutral (Factors 6, 7, and 9). ........................................... 9

CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrens v. CTI Biopharma Corp.*,
2016 WL 2932170 (S.D.N.Y. May 19, 2016) ...................................................3, 4, 5

*AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash.*,
675 F. Supp. 2d 354 (S.D.N.Y. 2009)....................................................................9

*In re ChannelAdvisor Corp. Securities Litig.*,
2015 WL 4064625 (S.D.N.Y. July 2, 2015) ..........................................................5

*City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*,
2010 WL 2035130 (S.D.N.Y. May 21, 2010) ........................................................8

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
2013 WL 5656086 (S.D.N.Y. Oct. 9, 2013) ...........................................................1

*In re Cuyahoga Equip. Corp.*,
980 F.2d 110 (2d Cir. 1992)....................................................................................3

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016) ..............................................................................3

*Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*,
2007 WL 2068107 (S.D.N.Y. July 20, 2007) .........................................................7

*Erickson v. Corinthian Colleges, Inc.*,
2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ..........................................................5

*France Telecom S.A. v. Marvell Semiconductor, Inc.*,
2012 WL 6808527 (S.D.N.Y. Dec. 28, 2012) .....................................................8, 9

*Garity v. Tetraphase Pharms., Inc.*,
2019 WL 2314691 (S.D.N.Y. May 30, 2019) ..................................................6, 7, 8

*In re Global Cash Holdings, Inc. Sec. Litig*,
2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)......................................................6, 9

*Krasner v. Rahfco Funds, L.P.*,
2012 WL 4069300 (S.D.N.Y. Aug. 9, 2012)..........................................................4

*Lehrer v. J&M Monitoring, Inc.*,
2022 WL 2392441 (S.D.N.Y. July 1, 2022) ..........................................................5

*SBAV LP v. Porter Bancorp., Inc.*,
  2013 WL 3467030 (S.D.N.Y. July 10, 2013) ........................................................................4, 8

*Searle v. Gilead Sciences, Inc.*,
  2022 WL 294727 (S.D.N.Y. Feb. 1, 2022) .............................................................................3, 4

**Statutes**

15 U.S.C. § 78aa ............................................................................................................................4

28 U.S.C. § 1404 .........................................................................................................................1, 3

**Other Authorities**

United States Courts, Combined Civil and Criminal Federal Court Management
  Statistics (March 31, 2022), available at
  https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0331.2022.pdf
  (last visited August 15, 2022) ...................................................................................................9

Defendants Tupperware Brands Corporation ("Tupperware" or the "Company"), Miguel Fernandez, and Cassandra Harris (Fernandez and Harris, together, the "Individual Defendants" and, with Tupperware, "Defendants") respectfully submit this memorandum of law in support of their motion to transfer this action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404. Plaintiff Michael Edge does not oppose the relief sought.

## INTRODUCTION

This putative securities class action was filed in the Southern District of New York by a resident of Oklahoma against a company headquartered in Florida, based on documents and oral statements that originated from the Company's headquarters in Orlando. Other than alleging that Tupperware's stock is traded on the New York Stock Exchange—like thousands of other public companies—and speculating that *some* of Tupperware's thousands of investors *may* live in the District, the Complaint contains no allegations tying this action to the forum. By contrast, the ties to the Middle District of Florida are substantial. The Company is headquartered in Orlando, the challenged public statements were prepared in and issued from Orlando, the allegedly misleading earnings conference calls took place in Orlando, and many of the key witnesses and documents are located in Orlando. In short, the "center of gravity" of this dispute is in the Middle District of Florida. Whatever attenuated connections this action has to this District—such as being listed on the NYSE—do not overcome the substantial connections to the Middle District of Florida. *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2013 WL 5656086, at *1 (S.D.N.Y. Oct. 9, 2013) (transferring the case despite the plaintiff's allegation that the issuer's stock "like that of so many large corporations, is listed on the New York Stock Exchange"). This is precisely the type of case that warrants transfer under 28 U.S.C. § 1404(a). The unopposed motion should be granted.

1

## BACKGROUND

**The Complaint.** This is a putative class action alleging violations of the federal securities laws. (*See generally* Dkt. 1, Complaint.) The Complaint asserts claims for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act based on allegations that Defendants made false or misleading statements in Tupperware's public filings, press releases, and earnings calls during the Class Period. (*See* Dkt. 1 ¶¶ 1, 3–4, 19–26, 41–56.)

**Plaintiff.** The Complaint is brought by an individual investor, Michael Edge, on behalf of all persons who purchased or acquired publicly traded securities of Tupperware between November 3, 2021 and May 3, 2022 (the "Class Period"). Mr. Edge is a resident of Kingfisher County, Oklahoma, (Dkt. 2, Civil Cover Sheet at 2), and is not alleged to have any ties to New York.

**Tupperware and the Individual Defendants.** Tupperware is incorporated in the State of Delaware and is headquartered in Orlando, Florida. (Ex. A, Decl. of Madeline Otero ("Otero Decl.") ¶ 2.) Its Chief Executive Officer, Defendant Miguel Fernandez, both resides and works in the Middle District of Florida. (*Id.* ¶ 6.) And its former Chief Financial Officer and Chief Operations Officer, Defendant Cassandra Harris, is a resident of North Carolina and maintained her office in Orlando, Florida during the Class Period. (*Id.* ¶ 8.) The Company prepares its SEC filings and public statements from its headquarters in Orlando, where it prepares and maintains its books and records. (*Id.* ¶¶ 10, 13, 15–16.) Each of the public filings and press releases cited in the Complaint was prepared in and issued from Orlando, Florida, and each of the quarterly earnings conference calls that occurred during the Class Period originated from Orlando, Florida. (*Id.* ¶¶ 10, 13–14; *see* Dkt. 1 ¶¶ 4, 19–26, 28.) Officers of the Company, other than the Individual

Defendants, who are typically responsible for preparing SEC filings and press releases, all reside and work in Florida. (Otero Decl. ¶¶ 11–12.)

**Venue Allegations.** The Complaint does not allege that the purported false or misleading statements were made in the Southern District of New York. There are no allegations that any Defendant resides in this District or that any culpable conduct occurred in this District. Instead, the only basis for venue in this District identified in the Complaint is that Tupperware's securities trade on the New York Stock Exchange ("NYSE") and that "some" of the "hundreds, if not thousands investors" in the Company's stock across the United States may live in the District. (Dkt. 1 ¶ 9.)

## ARGUMENT

District courts have broad discretion to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."). "The purpose of this provision is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Searle v. Gilead Sciences, Inc.*, 2022 WL 294727, at *1 (S.D.N.Y. Feb. 1, 2022) (quoting *Tillery v. NYS Office of Alcoholism & Substance Abuse Servs.*, 2013 WL 6405326, at *3 (S.D.N.Y. Dec. 5, 2013)) (internal quotation marks omitted).

To determine whether a case should be transferred under Section 1404(a), district courts apply a "two-part test." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016). "[The] court should first inquire whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." *Ahrens*

3

*v. CTI Biopharma Corp.*, 2016 WL 2932170, at *2 (S.D.N.Y. May 19, 2016) (internal quotation marks omitted). Both elements support transfer.

**I.      This Action Might Have Been Brought in the Middle District of Florida.**

Under the Exchange Act, a putative securities class action may be brought "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa(a).[1] The Company is headquartered in Orlando, which is in the Middle District of Florida, and both Individual Defendants maintained their offices at the Company's headquarters during the Class Period. (Otero Decl. ¶¶ 2, 6, 8.) Venue in the Middle District of Florida would therefore be proper under the Exchange Act's venue provision.

**II.      The Interests of Convenience and Justice Strongly Favor Transfer to the Middle District of Florida.**

In determining whether to exercise discretion to transfer a case, courts typically balance several factors, including:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances.

*Searle*, 2022 WL 294727 at *1. Although there is "no *per se* rule requiring or presumptively favoring the transfer of securities-fraud action to the district where the issuer is headquartered[,] . . . as a practical matter, such transfers are routine." *SBAV LP v. Porter Bancorp., Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *In re Hanger Orthopedic Grp.*, 418 F. Supp.

---

[1] "Venue in a securities action under the Securities Exchange Act is governed exclusively by 15 U.S.C. § 78aa and not 28 U.S.C. § 1391." *Krasner v. Rahfco Funds, L.P.*, 2012 WL 4069300, at *4 (S.D.N.Y. Aug. 9, 2012).

2d 164, 168 (E.D.N.Y. 2006) (collecting cases)); *see also Ahrens*, 2016 WL 2932170, at *4.

Here, the balance of the relevant factors support transfer.

### A.    The Locus of Operative Facts Strongly Favors Transfer (Factor 3).

In securities cases, "misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *In re ChannelAdvisor Corp. Securities Litig.*, 2015 WL 4064625, at *3 (S.D.N.Y. July 2, 2015) (quoting *In re Colling & Aikman*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006)) (internal quotation marks omitted). Accordingly, "[t]he locus of operative events in a securities action is where the alleged misrepresentations were made." *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013).

Tupperware's Orlando headquarters is undoubtedly the center of this action. In particular:

- Each of the public filings or press releases alleged to be false or misleading was prepared in and issued from Tupperware's corporate headquarters in Orlando. (Otero Decl. ¶¶ 10, 13.)

- Each earnings call alleged to be false or misleading originated at the Company's headquarters in Orlando. (*Id.* ¶ 14.)

- Tupperware's headquarters is home to the Company's corporate finance, investor relations, and legal departments. These divisions of the Company are most substantially involved in preparation of the Company's public filings and statements. (*Id.* ¶¶ 3–5.)

- The Orlando headquarters is where the Company prepares and maintains its books and records. (*Id.* ¶ 15.)

In short, the "center of gravity" of this action is plainly the Company's headquarters in the Middle District of Florida. *Lehrer v. J&M Monitoring, Inc.*, 2022 WL 2392441, at *10 (S.D.N.Y. July 1, 2022) ("[T]he core determination under § 1404(a) is the center of gravity of the litigation.") (internal quotation marks omitted). This factor weighs strongly in favor of transfer.

5

**B.      Florida Would Be Significantly More Convenient for the Parties and Witnesses and for Access to Sources of Proof (Factors 1, 2, 4, and 5).**

Given that the events underlying this action primarily occurred in the Middle District of Florida, it is no surprise that potential witnesses and evidence central to the Complaint's allegations are also largely located in Florida. This makes the Middle District of Florida a far more convenient forum for the parties, the witnesses, and for access to sources of evidence.

"The convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *In re Global Cash Holdings, Inc. Sec. Litig*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (internal alterations and quotation marks omitted). In a securities class action, "courts presume the key witnesses are officers and employees of the corporate issuer who participated in drafting or distributing the challenged statements." *Garity v. Tetraphase Pharms., Inc.*, 2019 WL 2314691, at *3 (S.D.N.Y. May 30, 2019) (internal quotation marks and alterations omitted). Defendant Fernandez—the Company's CEO—is based in Florida.[2] (Otero Decl. ¶ 6.) The non-party officers of Tupperware who were primarily responsible for preparing, drafting, and issuing the Company's challenged public statements universally live and work in Florida. (*Id*. ¶¶ 11–12.) And, although the Company permits employees to work remotely, the divisions primarily responsible for preparation and issuance of the Company's public statements are based at its Orlando headquarters. (*Id.* ¶¶ 3–5.) Moreover, only two of Tupperware's hundreds of U.S.-based employees live in the State of New York, and only a single one lives in this District.[3] (*Id.* ¶ 18.) Neither of these employees had any involvement in preparing, approving, or issuing the

---

[2] Defendant Harris currently in Wilmington, North Carolina. (Otero Decl. ¶ 8.) This factor is therefore neutral as to her convenience.

[3] One of these employees lives in the Southern District of New York and one in the Northern District of New York. (Otero Decl. ¶ 18 n.2.)

6

Company's SEC filings or press releases identified in the Complaint. (*Id.*) The majority of both the Company's Board of Directors and the Audit Committee are based in Florida; no directors live in New York. (*Id.* ¶ 17.) In short, the convenience of Defendants and the officers and employees of Tupperware involved in preparing the challenged statements weighs strongly in favor of transfer.

Likewise, nearly all documents relevant to this case are located or maintained at the Company's headquarters in the Middle District of Florida. To be sure, the location of documents has less practical relevance given current technology. Nevertheless, courts continue to find this factor "to weigh in favor of transfer to a corporate issuer's home forum in securities class actions." *Garity*, 2019 WL 2314691, at *3. "Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession." *Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, 2007 WL 2068107, at *5 (S.D.N.Y. July 20, 2007) (citation omitted). Here, those who prepare and maintain the Company's consolidated financial statements and financial records work from the Orlando headquarters, and that is where potentially relevant documents and data are located. (Otero Decl. ¶¶ 11–12, 15–16.) This factor therefore weighs in favor of transfer as well.

By contrast, the Complaint does not identify a single witness or source of evidence located in the Southern District of New York.[4] Plaintiff is a resident of Oklahoma. (Dkt. 2 at 2.) And the putative class is dispersed, by Plaintiff's own admission, throughout the country. (Dkt. 1 ¶ 9.) Just as Plaintiff assumes that "some" potential class members may reside in the Southern

---

[4] Given the concentration of key witnesses near the Company's headquarters in Orlando, Florida, and the lack of witnesses in the Southern District of New York, there is a greater likelihood that if attendance of a witness had to be compelled at trial, that witness would fall within the subpoena power of the Middle District of Florida.

District of New York, the same inference may be made with respect to the Middle District of Florida. There is nothing to suggest that Plaintiff or the class would be inconvenienced by litigation there.

### C.   Plaintiff's Choice of Forum Is Not Entitled to Deference (Factor 8).

Although Plaintiff's choice of forum ordinarily is afforded significant weight, the named plaintiff himself resides in Oklahoma, (Dkt. 2 at 2), and the Complaint does not allege that he has any connection to the Southern District of New York. The Complaint's speculation that some Tupperware investors could live in the District is also not entitled to any weight. (Dkt. 1 ¶ 9.) Putting aside that the Complaint does not actually identify any investor in the Southern District of New York, this is true of any class action and any judicial district in the country. Where, like here, members of a putative shareholder class are dispersed throughout the country, "courts afford little weigh to a plaintiff's choice of forum." *Garity*, 2019 WL 2314691, at *2 (collecting cases).

### D.   The Interests of Justice Favor Transfer to the Issuer's Home Forum (Factor  10).

Securities fraud class actions are commonly brought in the first instance in the judicial district where the issuer defendant has its headquarters. When they are brought elsewhere, transfer to the issuer's home forum is "routine." *Porter Bancorp*, 2013 WL 3467030, at *4; *see also City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010) ("Courts routinely transfer securities cases to the issuer's district."). In these cases, like here, the overwhelming weight of key events, witnesses, and potential evidence typically occurred in or near the issuer's headquarters. This action's connections to the Middle District of Florida are substantial. Because Tupperware conducts its business in Florida and the substantial majority of the operative facts occurred there, Florida "has a public interest in

8

adjudicating this dispute." *France Telecom S.A. v. Marvell Semiconductor, Inc.*, 2012 WL 6808527, at *3 (S.D.N.Y. Dec. 28, 2012). The interests of justice favor transfer of this action.

### E. The Remaining Factors are Neutral (Factors 6, 7, and 9).

The remaining factors—the relative means of the parties, the forum's familiarity with the governing law, and trial efficiency—are neutral. *First*, the parties' means to litigate are not substantially unequal. Because Plaintiff is not a resident of this District and is representing a putative nationwide class, there is no reason to believe that his "financial situation would meaningfully impede [his] ability to litigate this case" in the Middle District of Florida as compared to the Southern District of New York. *AIG Fin. Prods. Corp. v. Public Utility Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 371 (S.D.N.Y. 2009). This factor therefore does not weigh against transfer. *Second*, this case will be governed by federal securities laws. It is well established that "[f]ederal courts throughout the nation are equally capable of applying federal securities laws." *Global Cash Holdings*, 2008 WL 4344531, at *7. Accordingly, this factor is neutral. *Third* and finally, trial efficiency will not be impacted by the transfer of this case. The docket congestion of this District and the Middle District of Florida are not materially different,[5] and there have not yet been any substantive proceedings in this case. *See Marvell Semiconductor*, 2012 WL 6808526, at *3.

### CONCLUSION

For these reasons, transfer of this case to the Middle District of Florida is "in the interest of justice" and "for the convenience of parties and witnesses." Defendants' motion to transfer should be granted.

---

[5] *See* United States Courts, Combined Civil and Criminal Federal Court Management Statistics (March 31, 2022), available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0331.2022.pdf (last visited August 15, 2022).

Dated:  August 16, 2022

Respectfully submitted,

By: /s/ James W. Ducayet

James W. Ducayet (*pro hac vice* pending)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
jducayet@sidley.com

Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
ncrowell@sidley.com

*Attorneys for Defendants*