## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA (ORLANDO DIVISION)

|  |  |
|---|---|
| MICHAEL EDGE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) No. 6:22-cv-1518-RBD-LHP ) |
| vs. | ) Judge Roy B. Dalton, Jr. ) Magistrate Judge Leslie Hoffman |
| TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS, | ) Price ) ) ) ) |
| Defendants. | ) ) ) |

### DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT[1]

James W. Ducayet (IL Bar No. 6236997)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
Email: jducayet@sidley.com

*/s/ Ian M. Ross*
Ian M. Ross (Bar No. 091214)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL  33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email:  iross@sidley.com
*Counsel for Defendants*

Dated:  April 3, 2023

---

[1] All capitalized terms herein shall have the same meaning as set forth in Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (D.E. 56) (the "Motion to Dismiss" or "Motion").

# **TABLE OF CONTENTS**

I.  ARGUMENT ......................................................................................................1

    A.  Defendants' Present-Tense Statements are not Actionable. ...............1

    B.  Defendants' Forward-Looking Statements are not Actionable. ..........5

    C.  Plaintiffs Fail to Plead a Strong Inference of Scienter. ...................... 6

II.  CONCLUSION ...............................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carvelli v. Ocwen Fin. Corp.,*
  934 F.3d 1307 (11th Cir. 2019) ...............................................................6

*In re Egidi,*
  571 F.3d 1156 (11th Cir. 2009).................................................................5

*FindWhat Inv. Grp. v. FindWhat.com,*
  658 F.3d 1282 (11th Cir. 2011) ............................................................2, 4

*Mizzaro v. Home Depot, Inc.,*
  544 F.3d 1230 (11th Cir. 2008) ............................................................4, 7

*Plumbers and Pipefitters Loc. Union 719 Pension Fund v. Zimmer
  Holdings, Inc.,*
  679 F.3d 952 (7th Cir. 2012) ...............................................................3, 6

*Schultz v. Applica Inc.,*
  488 F. Supp. 2d 1219 (S.D. Fla. 2007).....................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007).................................................................................6

**Statutes**

15 U.S.C. § 78u-4(b)(3).................................................................................1

15 U.S.C. § 78u-5(c)(1)–(2)..........................................................................5

ii

Plaintiffs' Opposition (D.E. 59) (the "Opposition") does little to cure the deficiencies in the First Amended Complaint ("FAC"). The FAC abandoned the original complaint's theory regarding the Company's earnings guidance and took a scattershot approach of alleging that Defendants made at least seven different misstatements on pricing and profitability between May 2021 and May 2022. The Opposition abandons that approach, too. It largely ignores the FAC's theory and alleged "partial" corrective disclosure (which the Opposition never mentions) in November 2021. (FAC ¶¶ 99-106.) Indeed, most of the purported misstatements in the FAC are given scant attention in the Opposition.

Instead, the Opposition focuses on Defendants' statements about pricing increases between November 2021 and February 2022. However, the Opposition excerpts those statements to omit crucial context that made clear that pricing increases were being made over several quarters on a market-by-market basis. Ultimately, the Opposition relies on an improper "fraud-by-hindsight" argument that the Company did not act quickly enough to raise prices. It fails to allege any actionable misstatements. Nor does the FAC allege that Defendants made any statements with scienter or intent to defraud. Under the PSLRA, the absence of such allegations requires that the FAC be dismissed, 15 U.S.C. § 78u-4(b)(3), and that dismissal should be with prejudice.

## I.   ARGUMENT

### A.   Defendants' Present-Tense Statements are not Actionable.

Although the FAC alleged at least seven different misstatements relating to

1

Tupperware's pricing and profitability, the Opposition focuses on Defendant Fernandez's statements on a February 23, 2022 earnings call. (Opp. at 2, 6, 8.)[2] According to Plaintiffs, Fernandez said on that call that the Company was increasing prices "across the board" in "every single market," which is alleged to have been inconsistent with his later statement that pricing actions were being taken in North America "for the first time." (*Id.* at 2, 8.) But Plaintiffs' argument relies not on Fernandez's actual statements, but chopped up excerpts (bolded and italicized throughout) that look nothing like what Fernandez said. In their full context, Fernandez's statements make clear that pricing decisions were being implemented over time, on a market-by-market basis. (Mot. at 13, 24.)

Here is what Fernandez said in February:  "We literally started pricing in – towards the end of Q4. But absolutely, every single market is increasing pricing effectively in Q1.  And there's a few of them, very little portion of them in Q2, but in all of them, we're going at least with the rate of inflation." (FAC ¶ 114 (emphasis removed).) Plaintiff repeatedly omits the first and third sentences, which make clear that Fernandez was describing a gradual market-by-market process that

---

[2] The Opposition gives less attention, for example, to its other allegations regarding the purported discounting of Tupperware's products in 2021. As demonstrated in the Motion (Mot. at 10-13), each of the statements made in 2021 made clear that pricing changes were in progress with respect to "some key products." (FAC ¶ 97; Mot. at Ex. G at 14.) Those statements are misleadingly excerpted in Plaintiffs' Opposition so Plaintiffs can argue that the purported discounts were never disclosed. But Plaintiffs never alleged a duty to disclose the alleged discounts, nor could they. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (no requirement that "by revealing one fact about a product, one must reveal all others that, too, would be interesting") (cleaned up). And as noted *infra* at 4, Plaintiffs' own timeline shows that the discounting occurred *before* Tupperware began to implement its pricing increases—there is no inconsistency between those two sets of allegations.

would ***begin in 2021 Q4 and continue through 2022 Q2***. (*Id.*) And he also distinguished between pricing changes to track "at least with the rate of inflation" as opposed to other, more significant pricing changes. (*Id.*) That is not inconsistent with what he said in May. (*Id.* at ¶ 123 (describing more "rapid changes" in the United States and Canada market).)[3] Fernandez consistently described an ongoing process where pricing increases would become effective over several quarters through Q2 2022. (FAC ¶¶ 97, 109, 114; Mot. at Ex. J at 4, 7 (same).)

Plaintiffs seek to ascribe surgical precision to these statements, implying that Defendants warranted the exact moment in time when they would increase pricing worldwide. But that is not what Defendants said, it was not the context for the statements, and it was not how they were understood.

For example, the analyst question that prompted Fernandez's February 2022 response asked, "[h]ow long will it take to flow through the system?" (FAC ¶ 128.) Fernandez's off-the-cuff response outlined a process that would take three quarters (FAC ¶ 114), noting that it would continue through Q2. *See Plumbers and Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012) ("off the cuff" response to analyst question did not support inference of scienter because "[o]ral exchanges are less precise then written ones").

---

[3] Although Plaintiffs argue that Defendants "waived" this argument because the Motion did not reprint the entire February 2022 statement (Opp. at 8), Defendants discussed this statement and the exact FAC paragraph Plaintiffs quote throughout the Motion. (Mot. at 11, 12, and 13.) The "waiver" cases Plaintiffs cite refer to instances where a party entirely fails to raise an argument— that obviously is not the case here. (*See id.*) A better example of "waiver," as discussed *infra* at p. 5, is Plaintiffs' complete failure to address the actual knowledge prong of the PSLRA.

Defendant Harris said the same thing, explaining that it would take time for *announced* pricing increases to become *effective*. (FAC ¶ 97; Mot. at Ex. J at 4, 7.) Indeed, the Opposition quotes an analyst report showing that the market knew that this would be an multi-quarter process. (*See* Opp. at 9-10.) Thus, nothing in the Opposition supports Plaintiffs' theory that the February statement was false.

The Opposition nonetheless contends that the statements, even if true, were misleading because they only mentioned price increases and not that Tupperware purportedly was "slashing" other prices (Opp. at 10-11.) This "omissions" theory does not appear anywhere in the FAC. Moreover, discussion about pricing increases for some products does not require discussion of price *decreases* in *other* products. *See FindWhat Inv. Grp.*, 658 F.3d at 1305. And there is a temporal mismatch too—Tupperware's alleged pricing decreases were from Q4 2020 through Q3 2021, (FAC ¶ 56), but the alleged pricing increases were later, from Q4 2021 through Q2 2022. (*Id.* at ¶¶ 122-24.) These were two different strategies adopted at two different points in time.

Regardless, Plaintiffs' only support for its new omissions theory is the unreliable testimony of CW1, which should be discounted. (Mot. at 18-19, 22-24.) Plaintiff points out that CW1 is alleged to have attended meetings regarding *North American* pricing and margins (Opp. at 12 n.3), but that does not support broad extrapolations about Tupperware's *worldwide* pricing decisions when CW1 admittedly had no such knowledge. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239-40 (11th Cir. 2008) (plaintiffs failed to "unambiguously provide[] a

4

cognizable and detailed way [forming] the basis of [the witness's] knowledge").[4]

### B. Defendants' Forward-Looking Statements are not Actionable.

Forward-looking statements are not actionable if they ***either*** (1) are accompanied by meaningful cautionary statements, ***or*** (2) are made without actual knowledge that they are false. 15 U.S.C. § 78u-5(c)(1)–(2). The Opposition wholly ignores "actual knowledge," which is an independent basis for dismissal. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009); (Mot. at 17).

In any event, Plaintiffs' arguments fail for several additional reasons. Plaintiffs argue that the Company's cautionary language did not precisely address price discounting in 2021 (Opp. at 13-14), but this level of precision in not required. *Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1228 (S.D. Fla. 2007) (cautionary language need not identify "the particular risk that ultimately came to pass" if it identifies factors similar to what occurred).[5] Here, Tupperware repeatedly disclosed risks relating to its profitability, turnaround initiatives, and implementation of "pricing strategies." (Mot. at 15-16.)

Plaintiffs also incorrectly argue that some of Defendants' forward-looking statements were actually were present-tense statements. Thus, Plaintiffs claim that Fernandez's statement (which they misattribute to Harris) that "we're shifting to

---

[4] In the out-of-Circuit cases Plaintiffs cite, the confidential witness had first-hand knowledge of the specific facts alleged and provided detailed information about those facts. (Opp. at 12.)

[5] In the cases Plaintiffs cite (Opp. at 15-16), the cautionary language was insufficient because it was boilerplate, did not mention a relevant risk, or was misleading. Here, it is none of those things.

more profitable sales" was present-tense because "we are" does not mean "we would be." (Opp. at 10-11.) This misses the point. The full statement was "we're shifting to more profitable sales in this market, and *we will* reduce" promotional programs. (FAC ¶ 87 (emphasis added).) The Eleventh Circuit has held that this type of "present-tense commitment[s] to a specific future goal" is protected under PSLRA's safe harbor. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1329 (11th Cir. 2019). Likewise, although Plaintiffs argue that Harris's statements about Tupperware's ongoing "focus" as the company enters "new channels" are present-tense statements (*see* Opp. at 12-13), those are protected not only because they were true, but also because they similarly were directed at a future goal.

### C.      Plaintiffs Fail to Plead a Strong Inference of Scienter.

Finally, Plaintiffs try to sidestep the PSLRA's exacting scienter requirement, claiming "scienter necessarily follows from falsity." (*See* Opp. at 15–19.) Not so. As the Supreme Court has made clear, these are independent requirements requiring independent factual showings. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). As the Motion makes clear, this is a separate basis for dismissal because Plaintiffs cannot satisfy the high burden of pleading facts that give rise to a strong inference of scienter as to each individual defendant. (Mot. at 20-25.)

As discussed, scienter cannot be inferred simply from the statements themselves, which were not false, and particularly as to statements made "off the cuff" in response to analyst questions. *Zimmer Holdings, Inc.*, 679 F.3d at 956. Likewise, although Plaintiffs argue that the alleged importance of Tupperware's

6

Turnaround Plan supports a motive to commit fraud, absent facts showing that the Plan was part of an alleged fraud, this allegation cannot support an inference of scienter. *See Mizzaro*, 554 F.3d at 1249 ("gaps in the amended complaint's description of the Plan undermine any inference of scienter"). The only other purported fact identified in the Opposition—Harris' departure (Opp. at 19)—also does not support an inference of scienter. Plaintiffs' cases involve facts that connect an executive's departure to the purported scheme, which the FAC fails to do. Absent such facts, courts routinely hold that an executive's departure is not indicative of fraudulent intent. (Mot. at 24.)[6]

In conclusion, Plaintiffs fail to allege any culpable inference stronger than the non-culpable inference that Tupperware was navigating an unprecedented pandemic that forced it, like many other companies, to try to raise prices during unexpected rises in inflation. The Company expressly disclosed the risks in its strategy, and Plaintiffs fail to allege any particularized facts supporting their theory that Defendants' statements were somehow designed to perpetrate a fraud.[7]

## II.    CONCLUSION

For all of these reasons, the Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

---

[6] The "supplemental authority" Plaintiffs filed (D.E. 63) illustrates this point. There, the terminated officer oversaw the internal control failures announced by the company, and was implicitly referenced in a company statement that senior management had failed to enforce company policies. There are no facts here linking Harris's departure to any purported misstatement.

[7] Plaintiffs also fail to state a Section 20(a) claim for the reasons stated in the Motion.

Dated:  April 3, 2023                    Respectfully submitted,

                                         */s/ Ian M. Ross*
                                         James W. Ducayet (IL Bar No.
                                         6236997)
                                         SIDLEY AUSTIN LLP
                                         One South Dearborn Street
                                         Chicago, IL  60603
                                         Telephone:  (312) 853-7000
                                         Facsimile:   (312) 853-7036
                                         Email:  jducayet@sidley.com

                                         Ian M. Ross (Bar No. 091214)
                                         SIDLEY AUSTIN LLP
                                         1001 Brickell Bay Drive, Suite 900
                                         Miami, FL  33131
                                         Telephone: (305) 391-5100
                                         Facsimile: (305) 391-5101
                                         Email:  iross@sidley.com

                                         *Counsel for Defendants*

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to the counsel of record for Plaintiffs.

*/s/ Ian M. Ross*
Ian M. Ross

9