# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS, <br><br> Defendants. | No. 6:22-cv-1518-RBD-LHP <br><br> Judge Roy B. Dalton, Jr. <br> Magistrate Judge Leslie Hoffman Price |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO THE SECOND AMENDED COMPLAINT

Defendants Tupperware Brands Corporation ("Tupperware" or "Company"), Miguel Fernandez, and Cassandra Harris (together with Tupperware, "Defendants"), by and through their counsel, hereby answer and assert affirmative defenses to the allegations contained in the Second Amended Complaint ("Complaint").

This Answer is based on present knowledge and information, and the Defendants reserve all rights to supplement or otherwise amend this answer, including to add affirmative defenses, as discovery proceeds and as otherwise may be appropriate during the course of litigation.

Although Defendants have no obligation to admit or deny the headings, subheadings, glossary of terms, footnotes, or prefatory material used in the Complaint, to the extent any response is required, Defendants deny the allegations set forth therein unless otherwise noted. Unless expressly admitted, all allegations set forth in the Complaint are denied. Defendants will use the defined terms and phrases set forth in the Complaint but deny that those defined terms or phrases are proper or accurate. Defendants further answer as follows:

Co-Lead Plaintiffs Michael J. Dennehy and Ralph Estep and Plaintiff Michael Edge bring this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, on behalf of themselves and all persons and entities other than Defendants who purchased or otherwise acquired securities of Tupperware Brands Corporation, between May 5, 2021 and May 4, 2022 inclusive, and were injured thereby (the "Class").

**ANSWER:** Defendants admit that Plaintiffs purport to bring this suit as a class action pursuant to Sections 10(b) and 20(a) of the Exchange Act, but deny that the Defendants have caused any injury to the putative class, and deny that a class may be properly certified. Defendants deny the remaining allegations in this paragraph.

Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters. Plaintiffs' information and belief is based on the Co-Lead Counsel's investigation, which included, among other things: (i) review and analysis of Tupperware's public filings with the SEC; (ii) review and analysis of Defendants' other public statements, including Tupperware's press releases and interviews that Defendants participated in with various news sources; (iii)

2

interviews with individuals who are former employees of Tupperware; (iv) review and analysis of reports of securities and financial analysts, news articles, and other commentary and analysis concerning Tupperware and the industry in which it operates; and (v) review of pertinent court filings.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiffs' knowledge or beliefs, or the conduct of counsel, and for that reason deny the allegations in this Paragraph.

Co-Lead Counsel's investigation into the matters alleged herein is continuing, and many relevant facts are known only to, or are exclusively within the custody or control of, Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiffs' knowledge or beliefs, or the conduct of counsel. Defendants deny the allegations in this paragraph.

## NATURE OF THE ACTION

1.    This class action concerns material misstatements and omissions made by Tupperware and its executive officers concerning their purported efforts to offset skyrocketing costs and shrinking profit margins, including misstatements touting material price increases of Tupperware's products.

**ANSWER:** Defendants admit that this action is styled as a class action, but deny that any class may be properly certified. Defendants further admit that the Complaint alleges that certain individuals made public misstatements and omissions, but deny that the allegations involve all of the Company's executive officers. Defendants deny the remaining allegations in Paragraph 1.

2.    Tupperware is a manufacturer and seller of kitchenware for consumers, including reusable storage containers that are primarily produced

3

from plastic resins. Tupperware has historically distributed and sold products through "direct selling" whereby the Company utilizes independent distributors and salespeople who purchase products from Tupperware at a discount and sell them to end customers.

**ANSWER:** Defendants admit that one of Tupperware's lines of business includes the manufacturing and selling of reusable storage containers. Defendants further admit that Tupperware historically utilized an independent sales force. Defendants deny the remaining allegations in Paragraph 2.

3.      After almost a decade of falling sales, Tupperware replaced its leadership in March 2020 by appointing Defendant Miguel Fernandez as the Company's new CEO, as part of Tupperware's multi-year "Turnaround Plan." The beginning of Tupperware's Turnaround Plan coincided with a massive sales bump that the Company experienced for the remainder of 2020 as consumers increasingly prepared, ate, and stored food at home during COVID-19-related quarantines.

**ANSWER:** Defendants admit that Miguel Fernandez was named CEO in March 2020 and that the Company had a plan called the Turnaround Plan when Fernandez was appointed. Defendants deny the remaining allegations in Paragraph 3.

4.      Additionally, in 2021 as part of Tupperware's Turnaround Plan, the Company began to roll out an "omnichannel" initiative that would make Tupperware's products available for sale in stores and online, thereby accessible to new swaths of customers who were unacquainted with or disinterested in purchasing from direct sellers. Accordingly, throughout 2021, Tupperware admittedly "intentionally built up inventory" in line with sales levels during the COVID-19 pandemic to sell in its new channels, in addition to its legacy direct sales channel.

4

**ANSWER:** Defendants admit that there was an omnichannel initiative. Defendants further admit that Paragraph 4 purports to quote and characterize statements made during a November 3, 2021 earnings call, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny all remaining allegations in Paragraph 4.

5.      Throughout the Class Period—i.e., the same period Tupperware was building up massive inventory stocks—the Company experienced record inflation for its costs, including raw material (resin) costs. Accordingly, throughout the Class Period, market analysts and investors were intensely concerned about Tupperware's rising costs and its ability to offset them with price increases. Defendants were asked about these issues in every conference call they attended during the Class Period, during which they always mollified and reassured analysts.

**ANSWER:** Defendants deny the allegations in Paragraph 5.

6.      For instance, on May 5, 2021, Defendant Cassandra Harris, CFO stated "**we're shifting to more profitable sales**" in "the United States and Canada market" and on August 4, 2021, Defendant Fernandez falsely assured the market that "**we're making progress in the pricing**" when he was asked by an analyst whether Tupperware had initiated price increases to "offset" inflation.

**ANSWER:** Defendants admit that Paragraph 6 purports to quote and characterize statements from the Company's August 4, 2021 press release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements.

Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 6.

7.     However, as COVID-related sales disappeared throughout 2021, Tupperware's cashflows depleted and moving inventory was imperative because Tupperware needed to get cash in the door. According to a confidential witness, Tupperware's former Demand Planning and Sales & Operations Planning Manager for the United States and Canada during the Class Period, the need to quickly sell inventory meant that Tupperware was *not* raising prices, but rather, "discounting and discounting" its inventory such that margins were "almost zero," especially on the online sales channels. This former employee explained that beginning in approximately the fourth quarter of 2020 through June of 2022 when this witness left Tupperware's employment, "total sales" was a "Key Performance Indicator" for Tupperware, but margins were not.

**ANSWER:** Denied.

8.     Investors began to learn part of the truth on November 3, 2021 when Tupperware issued, among other disclosures, the Company's fiscal year 2021 third quarter results. During an earnings call that day explaining the results, Defendants disclosed that, contrary to their prior statements, profit margins were worsening, stating "Gross profit in the third quarter was $248 million or 65.8% of net sales, a decrease of approximately 300 basis points compared to last year." Further, Defendant Harris acknowledged that the Company's sales were slowing and inventory levels were too high, thus, Tupperware would "be focused on sell-through of inventory" in the second half of 2021.

**ANSWER:** Defendants admit that the Company issued certain disclosures and conducted an earnings call on November 3, 2021, and respectfully refer the Court to those documents for their complete and accurate contents. Defendants further admit that the second and third sentences of Paragraph 8 purport to quote statements made during the November 3, 2021 earnings call, but deny the allegations because they selectively quote,

inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny all remaining allegations in Paragraph 8.

9.      On this news, Tupperware's common stock price declined $4.54 per share or 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 per share on November 3, 2021 on abnormally high trading volume.

**ANSWER:** Defendants admit that Tupperware common stock closed at $23.46 per share on November 2, 2021 and $18.92 per share on November 3, 2021. Defendants deny the remaining allegations in Paragraph 9.

10.     However, rather than disclose the truth that Tupperware was discounting prices and not increasing them to offset inflation, Defendants continued to falsely tell investors that they *already had* implemented material price increases. For example, on the November 3, 2021 earnings call, Defendant Harris falsely told an analyst that "**We have taken some pricing**. We talked about it in our Q. **So we've had some opportunistic pricing this year**." Similarly during an earnings call for the fourth quarter of 2021 on February 23, 2022, Defendant Fernandez falsely stated "**We literally started pricing in -towards the end of Q4. But absolutely, every single market is increasing prices effectively in Q1.**"

**ANSWER:** Defendants admit that the second sentence of Paragraph 10 purports to quote from the November 3, 2021 earnings call transcript, and that the last sentence of Paragraph 10 purports to quote from the February 23, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those

documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 10.

11.    The truth was fully revealed on May 4, 2022 when Tupperware issued, among other disclosures, the Company's fiscal year 2022 first quarter results and that Tupperware was withdrawing its full-year 2022 price guidance. Tupperware explained that "Profitability was significantly impacted by persisting inflationary pressures and the latency between rising input costs and our decision to increase prices."

**ANSWER:** Defendants admit that the Company issued certain disclosures on May 4, 2022. Defendants further admit that the last sentence of Paragraph 11 purports to quote from the Company's May 4, 2022 Earnings Release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 11.

12.    Further, on an earnings call that day explaining the results, Defendant Fernandez admitted Tupperware had not taken price increases previously, as falsely represented. Rather Defendants were only now "making fundamental and rapid changes in the market, including 10% price increases effective in early May, *which is the first time we've taken pricing actions in quite some time."* Defendants also announced Defendant Harris's demotion from CFO to COO. Harris would be terminated approximately less than a month later.

**ANSWER:** Defendants admit that Paragraph 12 purports to quote from the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to,

or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 12.

13.   As a result of the dissemination of this previously undisclosed information, the price of Tupperware common stock fell $5.76 per share, or 32.16%, from a close of $17.91 per share on May 3, 2022 to a close of $12.15 per share on May 4, 2022 on extremely high trading volume.

**ANSWER:** Defendants admit that Tupperware common stock closed at $17.91 per share on May 3, 2022 and $12.15 per share on May 4, 2022. Defendants deny the remaining allegations in Paragraph 13.

14.   Analysts and market participants reacted immediately. That same day, Douglas M. Lane of Lane Research wrote that he "would have liked the company to have been more proactive in its pricing initiatives." On May 5, 2022, D.A. Davidson downgraded its rating to "neutral" on "murkier turnaround outlook," observing that "[p]rofitability was impacted by cost inflation (largely plastic resin and freight) and the delay in implementing price increases."

**ANSWER:** Defendants admit that Paragraph 14 purports to quote statements from Lane Research and D.A. Davidson, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 14.

15.   Defendants' fraud as alleged herein caused investors to lose millions of dollars. Plaintiffs now seek damages individually and on behalf of the Class.

**ANSWER:** Denied.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

**ANSWER:** Defendants admit that the Plaintiffs purport to bring this suit pursuant to the statutes enumerated in Paragraph 16, but deny any liability to Plaintiffs or the putative class, deny that the Defendants have caused any injury to the putative class, and deny that a class may be properly certified. Defendants deny the remaining allegations in Paragraph 16.

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, codified at 15 U.S.C. §78aa. In connection with the acts, conduct, and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the U.S. mail, interstate telephone communications, and the facilities of national securities exchanges.

**ANSWER:** Defendants admit that this Court has jurisdiction over this action, but deny the remaining allegations in Paragraph 17.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Exchange Act Section 27 because many of the false and misleading statements were disseminated in or from the Middle District of Florida. Defendants agree venue is proper in this District as they moved for transfer to this District, which motion was granted on August 17, 2022. ECF Nos. 18-23.

**ANSWER:** Defendants admit that venue is proper in this Court, and that they moved to transfer to this District, but deny the remaining allegations in Paragraph 18.

10

## PARTIES

### I.    Plaintiffs

19.    Plaintiff Michael J. Dennehy, Court-appointed Co-Lead Plaintiff, was damaged by purchasing the Tupperware securities set forth in his amended certification, filed on December 1, 2022 at ECF No. 45, at artificially inflated prices during the Class Period caused by Defendants' materially false and misleading public statements.

**ANSWER:**  Defendants admit that Dennehy is a Court-appointed Co-lead Plaintiff. Defendants deny the remaining allegations in Paragraph 19.

20.    Plaintiff Ralph Estep, Court-appointed Co-Lead Plaintiff, was damaged by purchasing the Tupperware securities set forth in his certification, filed on August 15, 2022 at ECF No. 17-4, at artificially inflated prices during the Class Period caused by Defendants' materially false and misleading public statements.

**ANSWER:**  Defendants admit that Estep is a Court-appointed Co-lead Plaintiff. Defendants deny the remaining allegations in Paragraph 20.

21.    Plaintiff Michael Edge was damaged by purchasing the Tupperware securities set forth in his certification, filed on June 14, 2022 at ECF No. 1 at 22, at artificially inflated prices during the Class Period caused by Defendants' materially false and misleading public statements.

**ANSWER:**  Denied.

### II.    Defendants

22.    Defendant Tupperware Brands Corporation is a Delaware Corporation based in Orlando, Florida. Tupperware's common stock trades on the NYSE under the ticker symbol "TUP."

**ANSWER:**  Admitted.

23.    Defendant Miguel Fernandez has served as CEO at Tupperware since April 2020 when he was hired along with Richard Goudis, Executive Vice Chairman, to lead the Company's Turnaround Plan. Fernandez was employed at other multi-level marketing companies prior to his employment at

11

Tupperware, including as Global President at Avon Products, Inc., between 2017 and 2020, and as Executive Vice President at Herbalife Nutrition, Ltd., from 2013 through 2017.

**ANSWER:**   Defendants admit that Miguel Fernandez joined Tupperware as CEO in approximately April 2020, and that he was previously employed at Avon and Herbalife. Defendants further admit that Richard Goudis was the Company's Executive Vice Chairman. Defendants deny the remaining allegations in Paragraph 23.

24.    Defendant Cassandra Harris served at Tupperware in several capacities from 2019 through 2022. Specifically, Defendant Harris was employed as Tupperware's: 1) Executive Vice President from April 1, 2019 through October 12, 2020; 2) CFO from April 1, 2019 through May 24, 2022, when she was replaced by Mariela Matute, who currently serves as Tupperware's CFO; and 3) COO from October 12, 2020 through June 2, 2022, when Tupperware terminated her.

**ANSWER:**   Defendants admit that Harris served as Executive Vice President from approximately April through October 2020, Chief Operating Officer from approximately October 2020 through June 2022, and Chief Financial Officer from approximately April 2020 until May 2022. Defendants further admit that Mariela Matute is currently the Company's CFO. Defendants deny the remaining allegations in Paragraph 24.

## III.   Relevant Non-Parties

25.    CW1 was employed at Tupperware as Demand Planning and S&OP [Sales & Operations Planning] Manager for the United States and Canada between February 2019 and June 2022. In this role, CW1 was responsible for demand planning and determining how much inventory Tupperware needed to have available to meet the company's various forecasted needs. Due to restructurings at Tupperware, CW1's reporting structure

changed several times throughout CW1's tenure. For the last two months of CW1's tenure at Tupperware, this witness reported to the Director of Operations within the Supply Chain group. CW1 reported to Tupperware's Director of Demand Planning for approximately one year prior to that. CW1's superiors in Operations and Demand Planning reported to Juan Camilo, Vice President of Supply Chain for the Americas, who reported to Defendant Harris.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 25, and, for that reason, deny those allegations.

26.     Since March 2020**,** Richard Goudis has served as Executive Vice Chairman of Tupperware. Previously, Mr. Goudis also served at Herbalife Nutrition as CEO, CFO, and then CEO from 2004 through 2019.

**ANSWER:** Defendants admit that Goudis joined the Company in March 2020 as Executive Vice Chairman, and that he was previously employed at Herbalife, including as CEO and CFO. Defendants deny the remaining allegations in Paragraph 26.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.     Company Background

27.     Founded in 1946, Tupperware operates worldwide as a consumer products manufacturer. Tupperware's core business operations consist of the manufacture and sale of products intended to help consumers store, serve, and prepare food. Tupperware also sells related lines of cookware, knives, microwave products, microfiber textiles, water-filtration related items, and other products.

**ANSWER:** Admitted, except denied to the extent that Paragraph 27 characterizes Tupperware as having only one core business operation.

28.     Tupperware's products are sold and distributed to nearly 70 countries primarily via its direct selling business model. Direct selling is a

business model in which independent contractors market and sell products and services for a third party. Typically, these independent contractors sell through one-to-one selling, in-home product demonstrations, or online. Compensation for the direct sellers is often based on sales and may be earned based on personal sales or the sales of others in the same sales organization.

**ANSWER:** Defendants admit that the Company operates in nearly 70 countries, and that it uses the direct selling business model in some of those markets, but otherwise denies Plaintiffs' characterization of the Company's direct selling business model. Defendants deny the remaining allegations in Paragraph 28, including the allegations in the footnote.

29. Tupperware operates its business under four reportable segments in four broad geographic regions: (1) Asia Pacific, (2) Europe (Europe, Africa, and the Middle East), (3) North America, and (4) South America.

**ANSWER:** Admitted.

30. Many of the products manufactured by and for Tupperware require specialty polymers, including plastic resins refined from oil and natural gas, which Tupperware purchases through various arrangements with chemical companies located in the markets in which it does business.

**ANSWER:** Admitted.

## II. Historically, and Leading Up to the Class Period, Tupperware is Entirely Reliant on Direct Selling

31. Leading up to the Class Period, Tupperware was entirely reliant on direct sales. According to Tupperware's 2020 Form 10-K filed with the SEC on March 10, 2021, the Company's sales are "primarily" made through direct selling, and the other sales channels are "immaterial."

**ANSWER:** Defendants admit that Paragraph 31 purports to quote and characterize the Company's 2020 Form 10-K, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add

emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 31.

32.    Defendants disclosed in the 2020 Form 10-K that the Company's direct sales force consisted of approximately 3.2 million independent sales force members with approximately 534,000 active sales force members.

**ANSWER:** Defendants admit that Paragraph 32 purports to quote and characterize the Company's 2020 Form 10-K, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 32.

33.    CW1 reported that, during CW1's tenure, Tupperware's direct sales force utilized three primary marketing initiatives to sell Tupperware's products: 1) Tupperware's catalog, which was issued every six months to members of the direct sales force, and which contained offers that would last until the next catalog was issued; 2) Tupperware's brochures, which had promotions that could last for four to five weeks; and 3) Short-term offers that might last a week or two that would be offered over the holidays or for some special purpose.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 33 and, for that reason, deny those allegations.

34.    As set forth more fully below, after years of declining sales, in 2019, Tupperware announced a plan to increase sales by selling its products through other channels, such as in-store and online retailers. Defendants

sometimes referred to this strategy as Tupperware "omnichannel" sales to differentiate it from the Company's direct sales channel.

**ANSWER:** Defendants admit that Tupperware developed an omnichannel sales approach. Defendants deny the remaining allegations in Paragraph 34.

**III.    After Years of Declining Revenue, Tupperware Institutes New Management and a Purported "Turnaround Plan" Heavily Predicated on Shifting Away from Selling Primarily Through Direct Selling and Introducing Tupperware Products into New Sales Channels to Increase Sales**

35.    Since 2013, Tupperware's revenue has continually fallen. As set forth below, Tupperware's fell 41.7% between 2013 and 2020**.**

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and, for that reason, deny those allegations.

Figure 1



36.   In response to Tupperware's consistently declining sales, in January 2019 Tupperware announced a "transformation" program in which it sought to increase sales by: expanding into other channels, improving direct sales performance, reducing costs, and restructuring Tupperware's high debt.

**ANSWER:**  To the extent Paragraph 36 purports to be quoting from a document, Defendants respectfully refer the Court to that document for its complete and accurate contents but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants otherwise deny the allegations in Paragraph 36.

37.   As part of the transformation program, in November 2019, Tupperware's Board of Directors began searching for new leadership to "turn around the company." On March 12, 2020, in a Company press release, Tupperware announced it appointed Defendant Fernandez as President and

Chief Executive Officer, effective April 6, 2020, and Richard Goudis as Tupperware's Executive Vice Chairman, effective March 12, 2020. During Tupperware's earnings call for the first quarter of 2020, Richard Goudis stated that Defendant Fernandez would be "focusing on fixing the core business and motivating the sales force," and that Goudis would be "addressing the capital structure in markets and developing a growth strategy."

**ANSWER:** Defendants admit that Fernandez became CEO effective on or around April 6, 2020, and that Goudis became Executive Vice Chairman effective on or around March 12, 2020. Defendants further admit that Paragraph 37 purports to quote from the first quarter 2020 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 37.

38.    It was not until the arrival of Defendant Fernandez and Goudis that the turnaround efforts commenced in earnest. Indeed, in Tupperware's Q1 2020 Form 10-Q filed with the SEC on April 29, 2020, Tupperware formally recognized the plan as the "Turnaround Plan." In an earnings call that same day, Goudis directly informed market analysts that he and Defendant Fernandez were naming their growth plan the Turnaround Plan.

**ANSWER:** Defendants admit that the Q1 2020 Form 10-Q refers to the Turnaround Plan, and that the April 29, 2020 earnings call transcript refers to the turnaround plan (in lowercase letters). Defendants respectfully refer the Court to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 38.

18

39.    A central focus of Defendants' Turnaround Plan was to expand access to consumers through in-store and internet sales. For example, in the April 2020 Q1 Earnings Call, Mr. Goudis explained:

> When Miguel and I joined the company, we agreed we need to quickly become a leaner and more centrally organized company. We also recognize the need to develop a realistic growth plan, incorporating the unique opportunity to increase consumer access to the iconic Tupperware brand, along with proven growth initiatives from our past experiences. Together, we are calling this the turnaround plan.
>
> [...]
>
> We're developing a growth strategy that will result in a significant strategic shift in the company from looking backwards, exclusively through the eyes of our sales force with a consumer push model, to now pivot and look through the eyes of the consumer and create a consumer pull model that can coexist with the strength and uniqueness of our independent sales force. This is a dramatic change from the old Tupperware.

**ANSWER:** Defendants admit that Paragraph 39 purports to quote from the April 29, 2020 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 39.

40.    Tupperware's 2020 Form 10-K further detailed its plans to expand into new sales channels beyond its primary direct sale channel:

> As its business strategy evolves, as part of the Turnaround Plan, the Company is focused on accelerating modernization in two areas.
>
> [...]

19

Second, the Company is focused on business expansion opportunities, by shifting from a business model reliant solely on the direct sales channel to drive consumer demand, to a business model that creates a natural "pull and push" to the brand to lift up all channels in which Company products are available. This includes expanding into more product categories where the Tupperware brand is in demand and creating more access points for consumers to purchase Company products — both in person and online.

Company efforts are underway in creating a consumer-tailored product and pricing strategy intended to reach and address the needs of all consumer socioeconomic levels, while also exploring alternative revenue streams for incremental business-to-business opportunities and new licensing opportunities to leverage the value of its iconic brand. This strategy is designed to create additional brand awareness and create new leads for the Company's independent sales force and increase revenue from channels and consumers that the Tupperware brand does not reach today.

**ANSWER:** Defendants admit that Paragraph 40 purports to quote from the 2020 Form 10-K, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 40.

41.    Thus, by expanding into new sales channels such as stores and online retailers (including Tupperware's own website), Defendants' Turnaround Plan aimed to target new consumer segments that had not previously been interested in purchasing through sales representatives. Attracting new customer cohorts was possible because online and in-store sales channels were more accessible, and because prices were cheaper than direct sales which required Tupperware to pay commissions. CW1 confirmed that a key reason internet prices were lower was because Tupperware did not have

20

to pay commissions on these sales. CW1 reported that commissions paid to the direct salesforce could be upwards of 30% to 40%.

**ANSWER:** Defendants are without knowledge as to consumers' previous interest in purchasing through sales representatives, and therefore deny the allegations in the first and second sentences of Paragraph 41. To the extent Paragraph 41 relies on statements from CW1, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations, and for that reason deny those allegations. Defendants deny the remaining allegations in Paragraph 41.

## IV.    The COVID-19 Pandemic Temporarily Boosts Sales in 2020, Leading to an Inventory Shortfall as Tupperware is Unprepared to Meet Increased Demand.

42.    The COVID-19 pandemic resulted in a significant, short-term boost of Tupperware's worldwide sales. Specifically, beginning in the second quarter of 2020, Tupperware experienced the first sustained quarter-over-quarter increase in net sales since the fourth quarter of 2017, reversing its downward trend of several years.

Figure 2



**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 42 and Figure 2, and,

for that reason, deny those allegations.

43.    For example, quarterly growth in Q2, Q3, and Q4 of 2020 was 5.7%, 6.6%, and 5.8%, respectively, whereas quarterly growth for Q1, Q2, Q3, and Q4 of 2019, respectively, was -3.7%, -2.5%, -12%, and -.2%.

**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 43, and, for that reason,

deny those allegations.

44.    Net sales followed a similar trend in North America, with net sales increasing by 22.4% from Q1 to Q2 of 2020.

Figure 3



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and Figure 3 and, for that reason, deny those allegations.

45.    Indeed, as set forth below, the COVID-19 pandemic significantly affected revenue across all the Company's geographic segments, by either slowing or reversing historical sales declines.

Figure 4



Tupperware Revenue By Segment (SEC.gov)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and Figure 4, and, for that reason, deny those allegations.

46.    During Tupperware's earnings call for the second quarter of 2020, Defendant Harris and Richard Goudis explained to analysts that sales benefitted from the COVID-19 pandemic, in part, because Tupperware's direct sales force was positioned to "help consumers adapt to the new norms created by the pandemic, such as increase in eating at home, along with increased consumer focus on food safety, food storage and food conservation." CW1 also stated that the COVID-19 pandemic resulted in increased sales because new and existing direct sales force members increasingly turned to Tupperware's direct sales program to provide additional income.

**ANSWER:** Defendants admit that Paragraph 46 purports to quote from the Q2 2020 earnings call transcript, but deny the allegations because they

24

selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Further, to the extent Paragraph 46 relies on statements of CW1, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations, and for that reason deny those allegations. Defendants deny the remaining allegations in Paragraph 46.

47.    However, Tupperware's explosive growth in 2020 resulted in an unexpected depletion of inventory levels to satisfy demand. During an earnings call on October 28, 2020, Defendant Fernandez stated that due to significant growth across three of Tupperware's four geographic segments, "we have increasingly put pressure on our supply chain and service levels."

**ANSWER:** Defendants admit that Paragraph 47 purports to quote from the October 28, 2020 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 47.

48.    Tupperware's declining inventory was also reflected in its quarterly reported financial data. For example, as set forth below, Tupperware's inventory, including its finished goods, began dropping in Q3 and Q4 of 2019 before dropping more steeply in **2020,** when increased sales during COVID-19 quarantines caused Tupperware to see increasing demand. Tupperware's supply of finished goods dropped by 24.5% from Q3 2019 to Q4 2020.

Figure 5



**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 48 and Figure 5, and,

for that reason, deny those allegations.

## V.    Despite Lacking Any Reasonable Basis to Believe that Sales Would Continue at the Current Pace as Quarantine Restrictions Eased, Tupperware Goes "All In," Rushing to Order Huge Amounts of Inventory

49.    CW1 confirmed that, beginning in mid-2020 and continuing through mid-2021, Tupperware's management began placing large orders for additional inventory, including for products on backorder. CW1 further explained that through the third quarter of 2021, Tupperware focused on ensuring it had more inventory for the United States and Canada, even if this meant bringing it in from other countries.

**ANSWER:**  To the extent Paragraph 49 relies on statements of CW1,

Defendants lack knowledge or information sufficient to form a belief as to the

truth of those allegations, and for that reason deny those allegations.

Defendants deny the remaining allegations in Paragraph 49.

50. As the Company has since acknowledged, Tupperware was intentionally purchasing inventory to improve its service levels and prepare for increased demand, stating, in significant part:

> I should also note that we intentionally built-up inventory levels during the first half of 2021 in order to improve service and meet increasing demand....We intentionally built up our inventory as we saw the higher demand and also knowing the supply chain challenges that existed across the world even though we were able to fare a little bit better with our own internal production, we purposely built up the inventory for service as well. We really needed to improve our service.

**ANSWER:** Defendants admit that Paragraph 50 and its corresponding footnote purport to quote from the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 50.

51. Accordingly, as set forth below, Tupperware's inventory skyrocketed in 2021, with a year over year increase in finished goods inventory of 10.7%, 27%, 26.4%, and 15.6% in Q1, Q2, Q3, and Q4 of 2021, respectively.

27

Figure 6



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and Figure 6, and, for that reason, deny those allegations.

## VI.    Amidst Rising Inventory and Plummeting Sales, Global Inflation Eats Away at Tupperware's Profit Margins

52.    Beginning in the second quarter of 2020, inflation in the United States began rising. By October 2021, inflation was the highest it had been in twenty years. Inflation increased from .1% in May 2020 to 5.4% in July 2021, before continuing to rise to 9.1% in June 2022.

Figure 7



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and Figure 7, and for that reason deny those allegations.

53.    For Tupperware, inflation meant rapidly increasing costs, including for resin and freight shipping. Indeed, as Tupperware has admitted, gross margin was 66.7% for fiscal year 2021, as compared to 67.6% for the prior year period and "the decrease was driven primarily by higher resin costs and other inflationary pressures." Further, Tupperware stated on the 2021 Form 10-K that it estimates costs of sales for 2022 to include approximately $134 million for the cost of resin in its products. Tupperware estimates that this increase in resin costs would result in an approximate $13.4 million increase in cost of sales.

**ANSWER:** Defendants admit that Paragraph 53 purports to quote from and/or characterize the May 4, 2022 earnings call transcript and the 2021 Form 10-K, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those

29

documents for their complete and accurate contents. Defendants deny the

remaining allegations in Paragraph 53.

54.    As set forth in Figure 8 below, the cost of resin also began soaring

in the second quarter of 2020 and skyrocketed throughout the class period.

Figure 8

**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 54 and Figure 8, and,

for that reason, deny those allegations. Defendants deny the remaining

allegations in Paragraph 54 and Figure 8.

55.    Freight shipping costs were also materially affected by rising
inflation. By Q2 2021, Tupperware's expansion into direct-to-consumer
channels was increasing its shipping freight costs because, rather than
shipping products to a direct sales member to distribute, Tupperware instead
shipped sales directly to each customer. This resulted in more packages it had
to ship as units per carton decreased from over 4 per carton to 1.5 per carton.

**ANSWER:** Defendants admit that Paragraph 55 and its corresponding

footnote purport to characterize statements made during the Q2 2021 earnings

call, but deny the allegations because they selectively quote, inaccurately

quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 55 and footnote 8.

## VII. Defendants Engage in Mass-Discounts to Unload Excess Inventory and Mitigate the Company's Worsening Liquidity Problem Rather than Raise Prices to Combat Rising Costs and Decreasing Profitability

56.    CW1 stated that the end of the pandemic-fueled sales had a "whip effect" because around Q4 of 2020, Tupperware's initial surge of COVID-fueled sales subsided and the Company transitioned from high demand and not enough inventory to lower demand and too much inventory. Furthermore, according to CW1, Tupperware could not raise product prices commensurate with inflation because Tupperware was prioritizing the rapid sale of its excess inventory.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 56 and, for that reason, deny those allegations.

57.    According to CW1, not only was Tupperware not raising prices in an effort to sell inventory rapidly, but it was often selling inventory at a discount in an effort to incentivize sales. CW1 stated that by focusing on liquidating its inventory, Tupperware set about "discounting and discounting" its inventory, especially on the online sales channels. CW1 confirmed that the period of large discounts continued from approximately the fourth quarter of 2020 through the third quarter of 2021.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 57 and, for that reason, deny those allegations.

31

58.     Tupperware's prioritization of rapidly selling inventory by lowering prices at the expense of profit, was motivated by the Company's worsening liquidity problem.

**ANSWER:** Denied.

59.     By Q1 2021, Tupperware's "Current Ratio," the ratio of current assets (cash and other assets which will be turned into cash within one year) to current liabilities (liabilities due within a year) was declining. Specifically, it declined from 0.7x in Qi, to 0.6x in Q2, and 0.5x in Q3. For context, the median Current Ratio for U.S. listed Retail companies in 2021 was 1.27x.

**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 59, and for that reason

deny the allegations in this Paragraph.

60.     Tupperware's rapidly declining Current Ratio indicated that the Company was suffering from a liquidity problem and was at an elevated risk of distress or default. Thus, to cover its current liabilities, Tupperware needed to convert its inventory into cash as quickly as possible. It wasn't until the end of Q4 2021 that the Company would be able to obtain new long-term financing to pay off its current obligations and improve its Current Ratio to 1.2x. See Figure 9, i*nfra*.

**ANSWER:** Defendants lack knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 60, and, for that reason,

deny the allegations in this Paragraph.

61.     CW1 confirmed that, during meetings CW1 attended in the second half of 2021 with Juan Camilo, who reported to Defendant Harris, there were discussions regarding Tupperware's massive inventory and how they needed to sell it off. At these meetings, no one on the supply chain team cared if heavy discounting would be required to sell the excess inventory.

32

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 61 and, for that reason, deny those allegations.

62.    Indeed, as demonstrated in Figure 9, sales declined beginning in Q3 2021**,** resulting in increasing inventory from products that were not being sold and, consequently, depleting cash flows, and a worsening Current Ratio.

Figure 9

|  | Q1 '21 | Q2 '21 | Q3 '21 | Q4 '21 | Q1 '22 |
|---|---|---|---|---|---|
| Sales | $413.90 | $416.60 | $376.90 | $394.90 | $348.10 |
| Incr./(Decr) Inventory | | $60.50 | $70.10 | $51.0 | ($13.7) |
| Cash | $154.80 | $108.0 | $123.80 | $267.20 | $245.60 |
| Debt | $680.0 | $635.10 | $678.40 | $709.40 | $809.4 |
| Current Ratio | 0.7x | 0.6x | 0.5x | 1.2x | 1.3x |

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and Figure 9, and, for that reason, deny those allegations. Defendants deny the remaining allegations in Paragraph 62 and Figure 9.

63.    Thus, throughout 2021**,** liquidating inventory was imperative as Tupperware needed to get cash in the door. Indeed, as Defendants have since admitted the Company suffered a "net unfavorable" change in operating cash flow in the third quarter of 2021 "primarily due to...an ***increase in inventory due to changes in net sales[.]***" Defendants have also since confirmed Tupperware's ongoing problems from its inability to sell inventory, stating the unfavorable change in operating cash flow year-over-year in 2021 was due in part to "higher inventory, mainly in North America."

33

**ANSWER:** Defendants admit that Paragraph 63 purports to characterize statements made in the Company's November 4, 2020 Form 10-Q and 2021 Form 10-K, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 63.

64. Accordingly, throughout the Class Period, in order to move inventory quickly to generate cash, Tupperware did not raise prices, which would only slow Tupperware's sales further.

**ANSWER:** Denied.

65. Further, CW1 explained that before the pandemic, Tupperware established "clear goals" for sales, margins, and units. However, starting in the beginning of 2021 through the remainder of CW1's tenure, the Company's singular goal was to "just sell and reduce inventory." CW1 confirmed that during this time period, "total sales" was a "Key Performance Indicator" for Tupperware, but margins were not, and margins for products in the Company's catalog, brochures, and all other offers were "almost zero."

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 65 and, for that reason, deny those allegations.

66. As demonstrated in Figure 9 above, as a result of Tupperware's discounting, it was able to sell inventory, albeit at significantly discounted price.

**ANSWER:** Denied.

67. Furthermore, by moving into channels such as third-party retailers' online markets or in-person stores, Tupperware's products were

competing with other companies for similar products, which added a different dynamic than direct selling. Given that consumers could compare Tupperware's prices immediately against competitors' prices, Tupperware could not afford to raise prices and price itself out of the market.

**ANSWER:** Denied.

## VIII. In the Second Half of 2021, Tupperware Sales Plummet Resulting in Excess Inventory

68.    As demonstrated in the chart below, beginning in the third quarter of 2021, Tupperware sales began to steadily decline as COVID restrictions eased and consumers opted to eat and shop out. Moreover, Tupperware's expansion into new sales channels had the undesired effect of cannibalizing, rather than adding to, its direct sales, causing a further sales decline.

Figure 10



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 and Figure 10 and, for that reason, deny those allegations.

69.    Indeed, as Defendant Fernandez noted during Tupperware's November 3, 2021 Earnings Call:

[T]he [third quarter of 2020] benefited from an increase in demand from shift in consumer behavior as most of us were under lockdown and adjusting to working, learning and eating from home. Now that several markets have begun to open up, mostly the U.S. and Europe, we've seen a reversal of that trend as consumers are excited to get out and go places again and shopping at more traditional retail channels. And we believe this trend will continue.

**ANSWER:** Defendants admit that Paragraph 69 purports to quote from the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 69.

70.    Furthermore, CW1 stated that Tupperware's omnichannel strategy caused sales "cannibalization" and deceleration. CW1 confirmed that during 2020 and 2021, the majority of Tupperware's executive management's interest was on "pushing channels" and driving internet sales rather than sales through the traditional direct salesforce. By pushing sales to online and third-party retailers, Defendants were, by definition, creating avenues for customers to purchase Tupperware products from someone other than direct sales team members.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 70 and, for that reason, deny those allegations. Defendants deny the remaining allegations in Paragraph 70.

71.    By pushing customers to online sales channels, CW1 confirmed that direct sales began to decline because consumers preferred to purchase on the internet at cheaper prices. According to CW1, the Company was "not prepared" for its omnichannel strategy to "cannibalize" its direct sales and, as a result, had massively overstocked inventory.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 71 and, for that reason, deny those allegations.

72.    As a result of the cannibalization, Tupperware's sales teams became exasperated because they felt "betrayed" by the Company's change in focus to more online sales at lower prices. Indeed, selling products online at lower prices than what the direct salespeople were allowed to offer meant more consumers would buy through the omnichannel. A key reason internet prices were lower was because Tupperware did not have to pay commissions on these sales, whereas CW1 reported that commissions paid to the direct salesforce could be upwards of 30% to 40%. According to CW1, for these reasons throughout 2021, competition with Tupperware's omnichannel "caused chaos" with its direct sales force.

**ANSWER:** To the extent Paragraph 72 relies on statements from CW1, Defendants lack knowledge or information sufficient to form a belief as to the truth of those allegations, and for that reason deny those allegations. Defendants deny the remaining allegations in Paragraph 72.

73.    As set in Figure 11, Tupperware's gross margin percentage was steadily increasing in 2020 as a result of initial demand caused by the COVID-19 pandemic. However, increased inventory, decreased demand, lower prices and cannibalization of Tupperware's direct market channel caused the Company's gross margin percentage to plummet during 2021.

Figure 11



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and Figure 11, and, for that reason, deny those allegations. Defendants deny the remaining allegations in Paragraph 73 and Figure 11.

74.    As set in Figure 12, Tupperware's gross profits followed a similar trend, increasing throughout 2020 and declining in 2021 as sales began subsiding and excess inventory increased.

Figure 12



**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and Figure 12, and, for that reason, deny those allegations. Defendants deny the remaining allegations in Paragraph 74 and Figure 12.

**IX.    After Concealing the Truth Throughout the Class Period, Defendants Admit That Discounts Offered to Liquidate Inventory Caused Profits to Drastically Shrink and That Defendants Did Not Raise Prices to Offset Margin Erosion**

75.    During Tupperware's November 3, 2021 Earnings Call, Defendants finally admitted that Tupperware's sales were unprofitable (gross profit for the third quarter of 2021 fell approximately 300 basis points year-over-year), and they further conceded that the Company had not raised prices to offset rising resin costs. Instead, Defendant Harris admitted that Tupperware was "focused on sell-through of inventory."

**ANSWER:** Defendants admit that Paragraph 75 purports to quote from and/or characterize the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference

out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 75.

76.    In response to Defendants' disclosures on November 3, 2021, Tupperware's common stock price declined $4.54 or 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 on November 3, 2021 on abnormally high trading volume. On the following trading day, November 4, 2021, the stock declined an additional 3.9% to close at $18.19 for a total two-day decline of 22.5%.

**ANSWER:**  Defendants admit that Tupperware common stock closed at $23.46 per share on November 2, 2021, $18.92 per share on November 3, 2021, and $18.19 per share on November 4, 2021. Defendants deny the remaining allegations in Paragraph 76.

77.    However, Defendants did not disclose on the November 3, 2021 Earnings Call that they were discounting prices to liquidate such inventory. Rather, Defendant Harris falsely stated that Tupperware was "opportunistically" raising prices. Defendant Harris also stated on the November 3, 2021 Earnings Call that Tupperware had already made some price increases, and that more were imminent "as we go into next year."

**ANSWER:** Defendants admit that Paragraph 77 purports to quote from and/or characterize the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 77.

40

78.    In Tupperware's February 23, 2022 Earnings Call, Defendants again assured investors that Tupperware was offsetting rising costs through price increases. For example, Defendant Fernandez told analysts that Tupperware "literally" started raising prices towards the end of the fourth quarter, and that "every single market" had been increasing prices "effectively" in Q1. On February 24, 2022, based upon Defendant Fernandez's misrepresentations, analyst D.A. Davidson issued a report to analysts stating "TUP started taking broad-based price increases in late-4Q21, and is continuing with that implementation in 1Q22."

**ANSWER:** Defendants admit that Paragraph 78 purports to quote from and/or characterize the February 23, 2022 earnings call transcript and to quote statements from D.A. Davidson, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 78.

79.    During its May 4, 2022 Earnings Call, Rich Goudis revealed that the year-over-year margins suffered for many reasons, with the primary cause being, in part, "inflationary cost increases not yet offset by price increases" and "a timing disconnect that we identified during the fourth quarter earnings call [...]."

**ANSWER:** Defendants admit that Paragraph 79 purports to quote and characterize the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 79.

41

80.    Defendant Fernandez explained during the May 4, 2022 Earnings Call that year-over-year profitability was significantly impacted by inflationary pressures, including in part the increasing cost of resin and higher freight costs. Fernandez also admitted that Defendants were implementing 10% price increases beginning in May 2022, "which is the *first time [Tupperware has] taken pricing actions in quite some time."* Further, Defendant Fernandez stated Tupperware had not previously raised prices in the United States.

**ANSWER:**  Defendants admit that Paragraph 80 purports to quote and characterize the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 80.

81.    In response to Defendants' disclosures on May 4, 2022, the price of Tupperware common stock fell $5.76 per share, or 32.16%, from a close of $17.91 on May 3, 2022 to a close of $12.15 per share on May 4, 2022 on extremely high trading volume.

**ANSWER:**  Defendants admit that Tupperware common stock closed at $17.91 per share on May 3, 2022 and $12.15 per share on May 4, 2022. Defendants deny the remaining allegations in Paragraph 81.

## DEFENDANTS' MATERIAL CLASS PERIOD MISREPRESENTATIONS AND OMISSIONS

82.    Throughout the Class Period Tupperware suffered rapidly shrinking sales and rising costs of goods sold causing shrinking margins and profits. To conceal these issues from investors, throughout the Class Period, Defendants issued a series of material misstatements and omitted material facts in their public statements and in the Company's public filings, press releases, and other documents. These material misstatements and omissions

created the false impression that Tupperware was taking significant price increases and meaningfully addressing its shrinking margins and profits.

**ANSWER:** Denied.

83.    Plaintiffs assert that all statements set forth below that are bolded and underlined were materially false and/or misleading for the reasons set forth therein. Non-bolded statements are included for context. Underlines on but non-bolded statements are added for emphasis.

**ANSWER:** Paragraph 83 contains an assertion to which no answer is required. To the extent a response is required, Defendants deny the allegations in Paragraph 83.

**I.    False and Misleading Statements in Tupperware's May 5, 2021 Press Release**

84.    The Class Period begins on May 5, 2021, when, before market open, Tupperware issued the May 5, 2021 Press Release via PR Newswire, a widely circulated national wire service. The May 5, 2021 Press Release was concurrently filed with the SEC on Form 8-K.

**ANSWER:** Defendants admit that Plaintiffs' putative class period begins on May 5, 2021, but deny that a class may be properly certified. Defendants further admit that the Company issued a press release on May 5, 2021, and that it filed a Form 8-K on the same date. Defendants deny the remaining allegations in Paragraph 84 and the corresponding footnote.

85.    In the May 5, 2021 Press Release Defendant Harris stated, in pertinent part: "Our cash earnings in the first quarter illustrate the benefits of the ongoing Turnaround Plan, **which is creating a more profitable company**."

**ANSWER:** Defendants admit that Paragraph 85 purports to quote from the May 5, 2021 press release, but deny the allegations because they selectively

43

quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 85.

86. The above statement was materially false, misleading and/or lacked a reasonable basis when made because it gave a misimpression that Tupperware was improving "profit" margins, when in reality Tupperware's "profitab[ility]" was eroding, as evidenced by:

- CW1 confirmed that Tupperware's singular goal was to "just sell and reduce inventory," and that Tupperware was "discounting and discounting" to achieve those sales.

- CW1 confirmed that Tupperware was focused on total sales, and did not consider Tupperware's margin to be a Key Performance Indicator, such that margins were "almost zero."

- Defendants knew that as early as March 10, 2021, market analysts were constantly concerned about costs, profitability, and the availability of price increases to address those issues, yet Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

**ANSWER:** Denied.

## II. False and Misleading Statements on Tupperware's May 5, 2021 Earnings Call

87. On May 5, 2021, before market open, Defendants Fernandez and Harris presented the May 5, 2021 Earnings Call to analysts to discuss Tupperware's first quarter fiscal 2021 results.

**ANSWER:** Defendants admit that Defendants Fernandez and Harris participated in an earnings call on May 5, 2021. Defendants deny the

remaining allegations in Paragraph 87, including because the term "market open" is vague.

88. During prepared remarks, Fernandez discussed Tupperware's profit margins in "the U.S. and Canada market" stating "**we're shifting to more profitable sales in this market, and we will reduce some of the highly promotional programs** and improved distribution costs."

**ANSWER:** Defendants admit that Paragraph 88 purports to quote from the May 5, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 88.

89. The above statements were materially false, misleading and/or lacked a reasonable basis when made because it gave a misimpression that Tupperware was improving "profit" margins, and that Tupperware was reducing "promotional" discount programs, when in reality Tupperware's "profitab[ility]" was eroding, including in "the U.S. and Canada market" as evidenced by :

- CW1 confirmed that Tupperware's singular goal was to "just sell and reduce inventory," and that Tupperware was "discounting and discounting" to achieve those sales.

- CW1 confirmed that Tupperware was focused on total sales, and did not consider Tupperware's margin to be a Key Performance Indicator, such that margins were "almost zero."

- Defendants knew that as early as March 10, 2021, market analysts were constantly concerned about costs, profitability, and the availability of price increases to address those issues, yet Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

45

**ANSWER:** Denied.

### III. False and Misleading Statements in the May 27, 2021 Conference Call

90.    On May 27, 2021, Defendant Harris participated in the May 27, 2021 Conference Call, hosted by Citigroup Inc. analyst Wendy Caroline Nicholson in connection with Citigroup's Day of Direct Selling Conference.

**ANSWER:** Admitted.

91.    During the May 27, 2021 Conference Call, Defendant Harris unequivocally misrepresented "Yes" in the affirmative that Tupperware's margin performance would not suffer as Defendants began rolling out their omnichannel strategy:

**Wendy Caroline Nicholson**
*Citigroup Inc., Research Division*

Fair enough. And I know it's hard because there's so many variables with regard to new products, and the price points you might have on those new products. But can you talk about the margin structure? Maybe of that $35 million business you have today in Western Europe, is that margin accretive, margin dilutive? I mean, one of the strong selling points of Tupperware is your very strong gross margin to begin with. Can you sustain that if you pursue these different channels?

**Cassandra E. Harris**
*Chief Financial Officer & Chief Operating Officer*

**Yes.** So historically, our business-to-business partnerships that we had in Europe have been accretive. They've been really good margins. There's not a natural compensation structure that plays into it. And so even though there is some back-end costs for distribution and managing the programs and things of that nature, it is accretive to the business. **And as we think about entering into these new channels**, is kind of what I talked about on Amazon, **it has to be the right price point, the right margin and the right volume of cells to be able to entertain that channel. Our focus is to  maintain the profitability of the company as we grow through these other channels**. And

making sure that we're making the right product choices for those channels to ensure that we have the right profitability.

**ANSWER:** Defendants admit that Paragraph 91 purports to quote from the May 27, 2021 conference call, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 91.

92.    The above statements were materially false, misleading and/or lacked a reasonable basis when made because they gave investors the misleading impression that Tupperware was highly attuned to the Company's "price," "margin," and "profitability" and that Tupperware would not sacrifice those items as it rolled out its omnichannel strategy. In reality, Defendants were only concerned with selling through Tupperware's ballooning inventory, and relegated issues relating to "price," "margin," and "profitability" as evidenced by:

- CW1 confirmed that Tupperware's singular goal was to "just sell and reduce inventory," and that Tupperware was "discounting and discounting" to achieve those sales.

- CW1 confirmed that Tupperware was focused on total sales, and did not consider Tupperware's margin to be a Key Performance Indicator, such that margins were "almost zero."

- CW1 stated that Tupperware's omnichannel strategy caused sales "cannibalization" and deceleration. CW1 confirmed that during 2020 and 2021, the majority of Tupperware's executive management's interest was on "pushing channels" and driving internet sales rather than sales through the traditional direct salesforce, which "caused chaos" and discontent within the direct sales channel when sales personnel were unable to hit targets.

- Defendants knew that as early as March 10, 2021, market analysts were constantly concerned about costs, profitability, and the

47

availability of price increases to address those issues, yet Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

**ANSWER:** Denied.

## IV.  False and Misleading Statements in Tupperware's August 4, 2021 Press Release

93.  On August 4, 2021, before market open, Tupperware issued the August 4, 2021 Press Release via PR Newswire. The August 4, 2021 Press Release was concurrently filed with the SEC on Form 8-K.

**ANSWER:** Defendants admit that the Company issued a press release on August 4, 2021, and that it filed an 8-K on the same date. Defendants deny the remaining allegations in Paragraph 93, including because the term "market open" is vague.

94.  In the August 4, 2021 Press Release, Defendant Harris misrepresented that Tupperware was "delivering profit," stating in pertinent part:

> "We continue to successfully implement our Turnaround Plan," said Sandra Harris, Tupperware Brands' Chief Financial Officer and Chief Operating Officer. "Sales growth coupled with **delivering profit** that continues to reflect our rightsizing efforts and lowering our debt and improving EBITDA resulting in a leverage ratio of 2.05 are all further evidence that it is working."

**ANSWER:** Defendants admit that Paragraph 94 purports to quote from the August 4, 2021 press release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that

48

document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 94.

95. The above statement was materially false, misleading, and/or lacked a reasonable basis when made because it gave a misimpression that Tupperware was improving "profit" margins, when in reality Tupperware's profitability was eroding, as evidenced by:

- CW1 confirmed that Tupperware's singular goal was to "just sell and reduce inventory," and that Tupperware was "discounting and discounting" to achieve those sales.

- CW1 confirmed that Tupperware was focused on total sales, and did not consider Tupperware's margin to be a Key Performance Indicator, such that margins were "almost zero."

- Defendants knew that as early as March 10, 2021, market analysts were constantly concerned about costs, profitability, and the availability of price increases to address those issues, yet Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

**ANSWER:** Denied.

## V. False and Misleading Statements on Tupperware's August 4, 2021 Earnings Call

96. Also on August 4, 2021, before market open, Defendants Fernandez and Harris presented the August 4, 2021 Earnings Call to analysts to discuss Tupperware's second quarter fiscal 2021 results.

**ANSWER:** Defendants admit that Defendants Fernandez and Harris participated in an earnings call on August 4, 2021. Defendants deny the remaining allegations in Paragraph 96, including because the term "market open" is vague.

49

97.    During prepared remarks, Defendant Harris misleadingly suggested that Tupperware was on the precipice of improving price margins through "price increases," rather than, as was actually true, experiencing price cuts that cannibalized sales. Defendant Harris falsely stated, in pertinent part: "Looking forward to the second half, we do expect higher product costs versus a year ago, primarily as a result of higher resin and logistics. However, our turnaround plan efforts will continue to drive efficiencies through the supply chain and **when coupled with the impact of price increases, we believe we can largely neutralize the overall impacts**."

**ANSWER:** Defendants admit that Paragraph 97 purports to quote from the August 4, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 97.

98.    Later during the August 4, 2021 Earnings Call, analysts questioned Defendants regarding Tupperware's profitability during an inflation-driven economic climate. In response to questioning, Defendant Fernandez deflected from the reality that Tupperware was selling through increasingly expensive inventory without "offsetting" inflation, and misleadingly suggested that Tupperware was "making progress" towards offsetting higher costs and maintaining profitability with price increases:

**Linda Ann Bolton-Weiser**
*D.A. Davidson & Co., Research Division*

Okay. Great. And then can you talk about the pricing that you've implemented so far? Is it on kind of like everything? Or are you implementing it more through the new product innovation you mentioned? And at what point will like the pricing be kind of fully implemented, so it can be offsetting your inflation?

**Miguel Angel Fernandez**
*President, CEO & Director*

50

So Linda, as you know, it's a lot easier to increase prices in your products, right, because there's no comparison. **But even with that in some key products, we're making progress in the pricing**.

**ANSWER:** Defendants admit that Paragraph 98 purports to quote from the August 4, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 98.

99.    The above statements were materially false, misleading, and/or lacked a reasonable basis when made because they gave the misimpression that Defendants were addressing higher costs and shrinking margins through material price increases. Indeed, Defendant Fernandez misleadingly affirmed the analyst's belief that "pricing" had already been "implemented so far." In reality, Defendants were not raising prices and were instead sacrificing margins in order to "sell-through" as much inventory as possible to raise cash, as evidenced by:

- CW1 confirmed that Tupperware's singular goal was to "just sell and reduce inventory," and that Tupperware was "discounting and discounting" to achieve those sales.

- CW1 confirmed that Tupperware was focused on total sales and did not consider Tupperware's margin to be a Key Performance Indicator, such that margins were "almost zero."

- Defendants admitted on the November 3, 2021 Earnings Call that Tupperware was prioritizing "selling-through" inventory in the second half of 2021.

- Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when they would raise prices for the "first time."

**ANSWER**:  Denied.

## DEFENDANTS CONTINUE MAKING FALSE AND MISLEADING STATEMENTS AS THE TRUTH IS REVEALED OVER TWO SETS OF PARTIAL DISCLOSURES

**I.     Defendants Partially Disclosed the Truth on November 3, 2021 in Tupperware's November 3, 2021 Press Release and November 3, 2021 Earnings Call**

100.   Tupperware partially revealed the truth to investors when it released the November 3, 2021 Press Release, before market open, via PR Newswire. The November 3, 2021 Press Release was concurrently filed with the SEC on Form 8-K.

**ANSWER:**  Defendants admit that the Company issued a press release on November 3, 2021, and that it filed a Form 8-K on the same date. Defendants deny the remaining allegations in Paragraph 100, including because the term "market open" is vague.

101.   In the November 3, 2021 Press Release, the Company revealed the following pertinent financial results:

- Net sales were $376.9 million, a decrease of 11% year over year (or 13% on a constant currency basis)
- ***Gross profit was $247.9, or 65.8% of net sales***
- Income from continuing operations was $60.4 million
- Diluted earnings per share was $1.14
- Adjusted diluted earnings per share (non-GAAP) was $1.19
- Adjusted EBITDA (non-GAAP) was $68.9 million
- Debt to EBITDA (as defined in the Company's Credit Agreement) was 2.28

**ANSWER:** Defendants admit that Paragraph 101 purports to quote from and/or characterize the November 3, 2021 press release, but deny the allegations because they selectively quote, inaccurately quote, reference out of

52

context, add emphasis to, or mischaracterize the statements. Defendants

respectfully refer to that document for its complete and accurate contents.

Defendants deny the remaining allegations in Paragraph 101.

102. Thus, Defendants partially revealed for the first time that the Company had failed to increase prices to offset inflationary pressures, including rising raw material and manufacturing costs, thereby failing to prevent gross profit decline.

**ANSWER:** Denied.

103. On November 3, 2021, before market open, Defendants Fernandez and Harris presented the November 3, 2021 Earnings Call to analysts to further discuss Tupperware's third quarter fiscal 2021 results.

**ANSWER:** Defendants admit that Defendants Fernandez and Harris

participated in an earnings call on November 3, 2021. Defendants deny the

remaining allegations in Paragraph 103, including because the term "market

open" is vague.

104. In the November 3, 2021 Earnings Call, Defendants for the first time partially disclosed the truth of their fraud to the market. Specifically, Defendants revealed a significant decrease in gross profit for the quarter, primarily driven by higher input costs that the Company had not offset through price increases. Defendant Harris stated, in pertinent part:

> ***Gross profit in the third quarter was $248 million or 65.8% of net sales, a decrease of approximately 300 basis points compared to last year.*** This was driven primarily by 240 basis points related to higher resin and manufacturing costs and 60 basis points related to country mix. As we mentioned last quarter, we had anticipated higher resin costs, but we're [sic] optimistic that the favorability in manufacturing would continue to help offset it. However, this was not the case in the third quarter due to lower volumes and higher inventory.

53

**ANSWER:** Defendants admit that Paragraph 104 purports to quote from the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 104.

105. Defendant Harris's statement above further discloses that Defendant Fernandez's statement on the August 4, 2021 Earnings call that "**we're making progress in the pricing**" was false and misleading, because Defendants had purportedly only attempted to mitigate rising costs through "manufacturing" and not by raising prices as Defendant Fernandez misstated.

**ANSWER:** Defendants admit that Paragraph 105 purports to characterize the November 3, 2021 earnings call transcript and quote from the August 4, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize those statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 105.

106. Moreover, Harris revealed that the Company had "intentionally built up inventory levels during the first half of 2021" and that now, as a result of lower demand, the Company would be "*be focused on sell-through of inventory and taking downtime where needed in the future*."

**ANSWER:** Defendants admit that Paragraph 106 purports to quote from the November 3, 2021 earnings call transcript, but deny the allegations

54

because they selectively quote, inaccurately quote, reference out of context, add

emphasis to, or mischaracterize the statements. Defendants respectfully refer

to that document for its complete and accurate contents. Defendants deny the

remaining allegations in Paragraph 106.

107.   On this news, Tupperware's common stock price declined $4.54 or 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 on November 3, 2021 on abnormally high trading volume. On the following trading day, November 4, 2021, the stock declined an additional 3.9% to close at $18.19 for a total two-day decline of 22.5%.

**ANSWER:**  Defendants admit that Tupperware common stock closed at

$23.46 per share on November 2, 2021, $18.92 per share on November 3, 2021,

and $18.19 per share on November 4, 2021. Defendants deny the remaining

allegations in Paragraph 107.

## II.    Continued False and Misleading Statements on Tupperware's November 3, 2021 Earnings Call

108.   Defendants continued to make false and misleading statements during the November 3, 2021 Earnings Call.

**ANSWER:**  Denied.

109.   During prepared remarks, when commenting on Tupperware's shrinking sales volumes and rising inventories, Defendant Harris gave the misimpression that Tupperware was targeting price raises, stating: "As we look forward to 2022**,** we will look for opportunities to reduce cost, increase efficiencies and **opportunistically raise prices where appropriate**."

**ANSWER:**  Defendants admit that Paragraph 109 purports to quote

from the November 3, 2021 earnings call transcript, but deny the allegations

because they selectively quote, inaccurately quote, reference out of context, add

55

emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 109.

110.    Defendant Harris doubled down when questioned by analysts if prices were increasing to offset margin erosion, falsely stating:

**Linda Ann Bolton-Weiser**
*D.A. Davidson & Co., Research Division*

Okay. <u>And then in terms of your gross margin being impacted by inflationary costs, et cetera, are you considering price increases</u>? I've always thought the direct sellers have maximum flexibility on implementing price because you control your channel. <u>So how about taking some price to be able to offset some of these pressures</u>?

**Cassandra E. Harris**
*CFO & COO*

<u>Yes, absolutely. So we will be looking to take price, and that is part of our plan. We have taken some pricing</u>. We talked about it in our Q. <u>So we've had some opportunistic pricing this year</u>, especially in more the inflationary markets, that with the higher cost of resin. And now with less of an ability to help offset that manufacturing, we will be looking to take further price increases as we go into next year.

**ANSWER:** Defendants admit that Paragraph 110 purports to quote from the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 110.

111.    The above statements were materially false, misleading, and/or lacked a reasonable basis when made because they gave the misimpression that Defendants were addressing higher costs and shrinking margins through material price increases. In reality, Defendants were not raising prices and were instead sacrificing margins in order to "sell-through" as much inventory as possible to raise cash, as Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

**ANSWER:**  Denied.

### III.    Continued False and Misleading Statements on Tupperware's February 23, 2022 Earnings Call

112.    On February 23, 2022, before market open, Defendants Fernandez and Harris presented the February 23, 2022 Earnings Call to analysts to discuss Tupperware's fourth quarter and full year fiscal 2021 results.

**ANSWER:**  Defendants admit that Defendants Fernandez and Harris participated in an earnings call on February 23, 2022. Defendants deny the remaining allegations in Paragraph 112, including because the term "market open" is vague.

113.    During the February 23, 2022 Earnings Call, Defendant Harris misrepresented that the Company had instituted price increases that could address margin erosion, stating:

> We also believe that 2022 will be another tale of 2 halves, the trending opposite of 2021, with tougher comps in the first half exacerbated by COVID and persistent cost pressures, followed by relatively easier comps in the second half. **We also expect our pricing actions to catch up with cost increases by the second half and for results to benefit from business expansion efforts that began to take root in the latter part of the year**.

**ANSWER:**  Defendants admit that Paragraph 113 purports to quote from the February 23, 2022 earnings call transcript, but deny the allegations

because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 113.

114.   Likewise, during follow up from analysts specifically about pricing, Defendant Harris misleadingly stated:

**Anthony Chester Lebiedzinski**
*Sidoti & Company, LLC*

Got you, and then I guess, last question for me. As far as the timing of the new products and new sales channels, is that going to be mostly back half driven of this year? <u>Or can you give us a little bit more color about your strategy with that as far as also product pricing and just  timing?</u> That would be very helpful.

…

**Cassandra E. Harris**
*CFO & COO*

And Anthony, **I think you asked about pricing, too. So pricing actions are going to happen in the first half**, but the timing of the new channels and products is as Miguel stated.

**ANSWER:**  Defendants admit that Paragraph 114 purports to quote from the February 23, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 114.

115. Likewise, Defendant Fernandez falsely and misleadingly suggested Tupperware had begun raising prices "effectively" to offset margin erosion:

**Linda Ann Bolton-Weiser**
*D.A. Davidson & Co., Research Division*

Okay. <u>And just in terms of the pricing, I mean, are you -- can you give us a little more color?</u> Like, is it across the board? Is it a certain percentage of SKUs? How long will it take to flow through the system? Is it certain geographies? Can you give us like a little more color on the pricing actions?

**Miguel Angel Fernandez**
*President, CEO & Director*

Yes. Linda, this is Miguel. **So pretty much, it's across the board**. And obviously, we're going to take advantage of new products to make sure that we price accordingly.

**We literally started pricing in -- towards the end of Q4. But absolutely, every single market is increasing prices effectively in Q1. And there's a few of them, very little portion of them in Q2**, but in all of them, we're going at least with the rate of inflation.

**ANSWER:**  Defendants admit that Paragraph 115 purports to quote from the February 23, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 115.

116.  The above statements were materially false, misleading, and/or lacked a reasonable basis when made because they gave the misimpression that Defendants were addressing higher costs and shrinking margins through material price increases. In reality, Defendants were not raising prices and

were instead sacrificing margins in order to "sell-through" as much inventory as possible to raise cash, as Defendants admitted on the May 4, 2022 Earnings Call, that they deferred making price increases to offset profit and margin erosion until "May" of 2022 when the would raise prices for the "first time."

**ANSWER:** Denied.

117. For the same reasons, Fernandez's statements that Defendants had "effectively" deployed price increases across "every single market" in the first quarter of 2022, and that only "a few of them [price increases], a very little portion of them" were left for Q2, were materially false and misleading because such statements misrepresented the timing of Tupperware's price increases which were not made until May of 2022 for the "first time."

**ANSWER:** Defendants admit that Paragraph 117 purports to quote from the February 23, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 117.

## IV. Defendants Partially Disclosed the Truth on May 4, 2022 in Tupperware's May 4, 2022 Press Release and May 4, 2022 Earnings Call

118. On May 4, 2022, before market open, Tupperware issued the May 4, 2022 via PR Newswire. The May 4, 2022 Press Release was concurrently filed with the SEC on Form 8-K.

**ANSWER:** Defendants admit that the Company issued a press release on May 4, 2021, and that it filed an 8-K on the same date. Defendants deny the remaining allegations in Paragraph 118, including because the term "market open" is vague.

60

119. The May 4, 2022 Press Release—subtitled "Acknowledges Delay in Turnaround Plan"—shocked the market, revealing net sales and gross profits well below expectations as well as eroded gross and operating margins. In direct contradiction to Defendants' Class Period statements, the May 4, 2022 Press Release partially disclosed for the first time that Tupperware's Turnaround Plan to, among other things, increase profitability through price increases was not "on track" and "still require[d] a lot more work." The Company expressly linked the misses to the "core direct selling business."

**ANSWER:**  Defendants admit that Paragraph 119 purports to quote from the May 4, 2022 press release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 119.

120. Defendants disclosed the following financial results in the 2022 Q1 Earnings Release:

> Gross profit was $222.0 million, as compared to $293.6 million for the prior year period. Gross margin was 63.8%, as compared to 71.0% for the prior year period. The decrease was driven primarily by higher resin costs and other inflationary pressures, operational inefficiencies related to lower volumes, higher inventory reserves, and country and product mix.

**ANSWER:**  Defendants admit that Paragraph 120 purports to quote from the Q1 2022 earnings release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 120.

121.   Because of these poor results, the Company withdrew its full-year 2022 EPS guidance. The 2022 Q1 Earnings Release stated in pertinent part:

> ***Profitability was significantly impacted by persisting inflationary pressures and the latency between rising input costs and our decision to increase prices***. This quarter illuminated elements within our core direct selling business that still require fundamental improvement, and we are refocusing our efforts to address them. While we acknowledge the near-term delay this has on our Turnaround Plan timeline, we believe our business will become stronger as a result of the structural changes we are making. Due to the high degree of operational uncertainty we currently face, we have decided to withdraw our previously issued financial guidance for 2022.

**ANSWER:**  Defendants admit that Paragraph 121 purports to quote from the Q1 2022 earnings release, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 121.

122.   On May 4, 2022, before market open, Defendants Fernandez and Harris presented an earnings conference call with analysts (the "May 4, 2022 Earnings Call") to discuss Tupperware's first quarter fiscal 2022 results.

**ANSWER:**  Defendants admit that Defendants Fernandez and Harris participated in an earnings call on May 4, 2022. Defendants deny the remaining allegations in Paragraph 122, including because the term "market open" is vague.

123.   The May 4, 2022 Earnings Call supplemented the partial corrective disclosures contained within the press release published earlier that same day. In the call, Richard Goudis, Executive Vice Chairman, reiterated

that "lower-than-expected contribution" from the direct-selling channel "dramatically affected" profitability and attributed the year-over-year margin decline primarily to inflationary "cost increases not yet offset by price increases" and "volume-related impacts." Goudis stated in pertinent part:

> [T]his quarter's results were lower than we had expected on both top and bottom line based on a number of internal and external factors. Revenue was lower, and we had gross margin and operating margin erosion versus last year. Our top line performance was impacted by poor service levels, continued technology issues, business model changes and, quite honestly, revenue assumptions that just didn't materialize when we expected. These internal issues, when combined with the global events, such as the COVID shutdowns in China and the knock-on effect of the Russian invasion of Ukraine, resulted in a 14% decline in our top line. Our year-over-year margin suffered for many reasons as well. ***The primary contributor was the result of inflationary cost increases not yet offset by price increases***, a timing disconnect that we identified during the fourth quarter earnings call, coupled with volume-related impacts such as lower contribution dollars and higher inventory and receivable reserves... The quarter's lower profitability also indicates a higher breakeven point than we had a year ago after our aggressive rightsizing. As you know, we are making investments to both fix our core business while we make new investments to open up an omnichannel business. With lower-than-expected contribution from our direct selling business in the quarter, our profitability was dramatically affected. In the long term, this cost structure can only be justified if we are successful in driving revenue growth.

**ANSWER:** Defendants admit that Paragraph 123 purports to quote from the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 123.

124.  Defendant Fernandez further revealed that:

***Profitability was significantly impacted by the extreme lag between rising input costs and when and how quickly we determine the increased prices to offset those cost increases....***The U.S. and Canada were down 25% and had tough comps. Additionally, it experienced lower buying ahead of price increases, lower inventory sell-through and experienced significant service issues in demand and sale force systems, although I should note that the U.S. and Canada grew 38% on a 2-year stack. ***We are making fundamental and rapid changes in the market, including io% price increases effective in early May, which is the first time we've taken pricing actions in quite some time***.

**ANSWER:**  Defendants admit that Paragraph 124 purports to quote from the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 124.

125.  Defendant Harris further disclosed:

Now moving down the P&L to margin. Gross profit in the first quarter was $222 million or 63.8% of net sales, which represents a decrease of approximately 720 basis points compared to last year, primarily driven by inflationary pressures as well as an increase in obsolescence reserves. We mentioned on our last call that we were in the process of announcing price increases, that the vast majority will become effective in the second quarter and that they would not help to offset cost increases until the second half of the year. As Miguel mentioned earlier, most of these increases are now in various stages of implementation. However, ***despite the fact that they are in process, they nevertheless significantly lagged the rise in input costs that have already hit.***

**ANSWER:** Defendants admit that Paragraph 125 purports to quote from the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 125.

126. Fernandez's admission that the May 2022 price increases would be *"the first time we've taken pricing actions in quite some time"* shocked the market and directly contradicted Defendants' Class Period assurances that Tupperware was taking material price increases to offset costs. Investors understood from this that the previously promised price increases had not been implemented and that the timeline to resolving Tupperware's profit and margin issues would be extended.

**ANSWER:** Defendants admit that Paragraph 126 purports to quote from the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 126.

127. As a result of the dissemination of this previously undisclosed information, the price of Tupperware common stock fell $5.76 per share, or 32.16%, from a close of $17.91 on May 3, 2022 to a close of $12.15 per share on May 4, 2022 on extremely high trading volume.

65

**ANSWER:** Defendants admit that Tupperware common stock closed at $17.91 per share on May 3, 2022 and $12.15 per share on May 4, 2022. Defendants deny the remaining allegations in Paragraph 127.

### ADDITIONAL SCIENTER ALLEGATIONS

128. Numerous facts alleged herein support a strong inference that Defendants knew or recklessly disregarded that the statements set forth in Paragraphs 83 through 98 and Paragraphs 107 through 116 above were materially false and misleading when made. The below facts further solidify the inference of scienter as to each defendant. The scienter of the Individual Defendants and other senior executives is properly imputed to Tupperware.

**ANSWER:** Denied.

**I.    Defendants' Regular and Detailed Responses to Analyst and Media Questions Concerning Tupperware's Prices Show They Closely Monitored and Tracked Sales and Margins**

129. Throughout the Class Period, Defendants regularly provided updates on, and were asked questions from analysts about Tupperware's gross margins and pricing strategy. Defendants did not demur or claim ignorance of these matters. Rather, the Individual Defendants repeatedly provided detailed answers to these questions, indicating their personal knowledge on the subjects. Moreover, ***Defendants' statements contained explicit and knowing misrepresentations that Tupperware was making price increases***. Defendants' numerous, detailed statements concerning such issues include, but are not limited to, the following:

### March 10, 2021: Tupperware's Q4 2020 Earnings Call

**Linda Ann Bolton-Weiser**

Great. And then finally, do you have an outlook for your plastic resin costs in 2021?

**Cassandra E. Harris**

Yes. We are seeing some slight increases in resin costs. We anticipate that we can offset those through other cost savings

throughout the supply chain and/or through pricing in specific markets.

**\*\*\***

**May 5, 2021 Earnings Call**

**Wendy Caroline Nicholson**

Got it. Okay. Fair enough. And then second question on some of the sustainability stuff that you talked about and using the new, whatever, ingredients or products, raw materials for the products, is there any impact, notably on gross margin? Are those harder or more expensive to source? Or will you price up for those? Or is it neutral to pricing in margin?

**Cassandra E. Harris**

. . .And so ***we've been opportunistic*** on sourcing. But as we build out this organization and start to form the partnerships with the right suppliers and start to leverage them, then our expectation is that we can obviously maintain margin and maybe even improve some of our pricing through the third-party sourcing.

Obviously, ***we'll continue to look*** for margin accretive products to add to our portfolio. And as with all of our incremental investments, it's ROI driven, right? So ***we'll make the choices that continue to grow both profit and sales.***

**Miguel Angel Fernandez**

Yes. Let me just add a thought. We're going to be developing sub-brands. And let's say, if a brand speaks to the consumer around sustainability, and the product cost is higher, then we would price it up because that's just the nature of that sub-brand that we're going to be offering to the consumers. ***So we're going to be very disciplined.***

67

**\*\*\***

## May 27, 2021 Conference Call

### Wendy Caroline Nicholson

Fair enough. Fair enough. Okay. Shifting gears to kind of margins and maybe some headwinds but opportunities you have on the profit side of things. First, just in the short term, obviously, we've all read about commodity inflation and increases in freight and given that you ship an awful lot of stuff. ***Can you talk about kind of your exposure there, your outlook for gross margins for this year, for the balance of this year, given those headwinds we're seeing***?

### Cassandra E. Harris

Yes. ***So as of now, we're doing everything to continue to help offset those cost*** increases. We recently hired new leadership in our supply chain. We're starting to look at our supply chain from a global point of view versus a local point of view, and really starting to try to leverage. And so to this point, we've really been able to help offset. Now as inflation starts to continue to rise, and we see continued cost increases, ***we'll have to really think about whether price increases are necessary***. But at this juncture, we've been working through other mechanisms to help offset that cost. Now with that said, every day, it's a different day. FedEx just announced this week that they have continued surcharge increases. And so that does impact our business, and ***we're continuing to look for ways to offset that. So we'll continue to monitor it and continue to find the best ways to help to mitigate those cost increases, whether it is through continued leveraging or whether it's through price increases.*** But right now, we feel pretty secure where our margins have been.

***

### June 10, 2021: dbAccess Global Consumer Conference

**Unknown Analyst**

Okay. Okay. And then I'd be remiss not to talk about cost inflation because it's such a huge topic or just inflation generally. So I don't know if you can give us more color around how much inflation you're seeing, obviously, a lot of your products or use resin that has been inflationary. ***How quickly can you pass through pricing***? ***Or how are you dealing with the high level of inflation that we're seeing***?

**Cassandra E. Harris**

So about 60% of what we do is internally manufactured, and that's largely resin-based products. So the traditional Tupperware that most people know. And to date, we've been able to offset the rise in resins with efficiency throughout our supply chain.

And so at this juncture, other than some markets that are traditionally more inflationary than others. Brazil, Argentina, and some pricing actions in highly inflationary markets, but we've been able to help offset it. As we look toward the future, there still continues to be a mismatch of supply and demand. And so that continues to put pressure on the resin prices. *And **so we'll have to continue to monitor that, make the right decisions on pricing. Today, our model is such that we know what our cost is, and we obviously know our compensation programs with our sales force. And so we do actually tend to -- as we move into more of a consumer-driven world, we're clearly focusing and looking at pricing from a competitive basis as well.***

***So that's something new as we expand this business, that we'll continue to monitor.*** We also outside of resin, much like other companies that now are shipping direct-to-consumer, and we have more of that. We are also feeling the pressure in our logistics area. Again, the batcher supply and demand and continued increases in cost and surcharges that continue to be passed along. ***So the resin and the surcharges on logistics are probably the***

69

*biggest input increases that we're experiencing, and we'll continue to monitor it.*

***

### August 4, 2021 Earnings Call

**Cassandra E. Harris**

*As we look forward to 2022, we will look for opportunities to reduce cost, increase efficiencies, and opportunistically raise prices where appropriate.* I should also note that we intentionally built up inventory levels during the first half of 2021 in order to improve service and meet increasing demand....

**Linda Ann Bolton-Weiser**

Okay. And then in terms of your gross margin being impacted by inflationary costs, et cetera, **are you considering price increases?** I've always thought the direct sellers have maximum flexibility on implementing price because you control your channel. So how about taking some price to be able to offset some of these pressures?

**Cassandra E. Harris**

*Yes, absolutely. So we will be looking to take price, and that is part of our plan.* We have taken some pricing. We talked about it in our Q. *So we've had some opportunistic pricing this year, especially in more the inflationary markets, that with the higher cost of resin.* And now with less of an ability to help offset that manufacturing, *we will be looking to take further price increases as we go into next year.*

***

### February 23, 2022 Earnings Call

**Linda Ann Bolton-Weiser**

Okay. And just in terms of the pricing, I mean, are you -- can you give us a little more color? Like, is it across the board? Is it a certain percentage of SKUs?

70

How long will it take to flow through the system? Is it certain geographies? Can you give us like a little more color on the pricing actions?

**Miguel Angel Fernandez**

Yes. Linda, this is Miguel. So pretty much, it's across the board. And obviously, we're going to take advantage of new products to make sure that we price accordingly.

*We literally started pricing in -- towards the end of Q4. But absolutely, every single market is increasing prices effectively in Q1*. And there's a few of them, very little portion of them in Q2, but in all of them, we're going at least with the rate of inflation.

*And again, we're going to be opportunistic, and we find a way to -- through new products to price and obviously grow our gross margins*. We'll take a bunch of that.

But you have to remember that we're pricing against to market, so we don't want to price ourselves out of the -- of our competitive scenario. We know that we are a premium brand. *We always want to be around 15% to 20% above competition because of our quality of our products.* But again, it's a balance, right?

**ANSWER:** Defendants admit that Paragraph 129 purports to quote from the March 10, 2021 earnings call transcript, May 5, 2021 earnings call transcript, May 27, 2021 conference call, June 10, 2021 dbAccess Global Consumer conference, August 4, 2021 earnings call transcript, and February 23, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those

71

documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 129.

130.   Defendants' numerous, detailed discussions with analysts and investors regarding Tupperware's margins and pricing strategy during the Class Period are probative of Defendants' knowledge of those subjects and support a strong inference of scienter.

**ANSWER:**  Denied.

## II.    Defendants' Admissions on the May 4, 2022 Earnings Call Support a Strong Inference of Scienter

131.   According to CW1, while Defendants continually assured investors that they were increasing product prices to offset rising costs during the Class Period, according to CW1, they were, in reality, "discounting and discounting" to move excess inventory, such that margins were "almost zero." This was later confirmed in the May 4, 2022 Earnings Call when Defendants admitted that price increases were not taken until Q2 2022, stating, "[w]e are making fundamental and rapid changes in the market, including 10% price increases effective in early May, **which is the first time we've taken pricing actions in quite some time**."

**ANSWER:**  Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations in the first sentence of Paragraph 131 and, for that reason, deny those allegations. Defendants admit that the second sentence of Paragraph 131 purports to quote and characterize the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 131.

132. These facts directly contradict their Class Period misstatements that Defendants were addressing the Company's profitability and margins by increasing prices in 2021 and early 2022. Thus, Defendants' admissions support a strong inference of scienter.

**ANSWER:** Denied.

## III. Defendants' Admissions on the November 3, 2021 Earnings Call Support a Strong Inference of Scienter

133. Consistent with CW1's statements, Defendant Harris admitted during the November 3, 2021 Earnings Call that:

> Moving now to profit. Gross profit in the third quarter was $248 million or 65.8% of net sales, a decrease of approximately 300 basis points compared to last year. This was driven primarily by 240 basis points related to higher resin and manufacturing costs and 60 basis points related to country mix. As we mentioned last quarter, we had anticipated higher resin costs, but we're optimistic that the favorability in manufacturing would continue to help offset it. However, this was not the case in the third quarter due to lower volumes and higher inventory.
>
> As we look forward to 2022, we will look for opportunities to reduce cost, increase efficiencies and opportunistically raise prices where appropriate. ***I should also note that we intentionally built up inventory levels during the first half of 2021*** in order to improve service and meet increasing demand.
>
> However, with the higher inventory levels and lower demand in the quarter, we will be focused on sell-through of inventory and taking downtime where needed in the future.

**ANSWER:** Defendants admit that Paragraph 133 purports to quote statements made during the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements.

73

Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny all remaining allegations in Paragraph 133.

134. Thus, by admitting Defendants were "focused on sell-through" of excess inventory, Harris admitted for the first time that Defendants knew the Company needed to flush out inventory, which meant it was not able to command higher prices. Indeed, as CW1 confirmed, Tupperware was "discounting and discounting" throughout the Class Period.

**ANSWER:** Denied.

135. Defendant Harris further admitted during the November 3, 2021 Earnings Call that Defendants "intentionally built up inventory levels during the first half of 2021," and thus, Defendants were well aware of Tupperware's inventory level throughout the Class Period, and the rising costs associated with building that level up as inflationary costs continued to rise.

**ANSWER:** Defendants admit that Paragraph 135 purports to quote statements made during the November 3, 2021 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny all remaining allegations in Paragraph 135.

136. These facts directly contradict Defendants' Class Period misstatements that Defendants were focused on sustaining and growing the Company's profitability and that increasing price was a viable strategy for offsetting rising costs even as they expanded into additional channels. Thus, Defendants' admissions support a strong inference of scienter.

**ANSWER:** Denied.

74

## IV.    Suspiciously Timed Turnover in Tupperware's Senior Management

137.   On May 4, 2022, as the Company continued to leak out disclosure of the truth, including that Defendants had not taken price increases despite their prior representations to investors. Tupperware also disclosed that Mariela Matute would replace Defendant Harris as CFO.

**ANSWER:**    Defendants admit that the Company announced on approximately May 4, 2022 that Mariela Matute was being appointed CFO. Defendants deny the remaining allegations in Paragraph 137.

138.   Defendants purported that relieving Harris of her responsibilities as CFO would benefit the Company, as it would enable her to devote more of her attention to operations. Thus, Defendant Fernandez represented during the May 4, 2022 Earnings Call that Harris "will now be able to dedicate all her time toward optimizing operations and systems as COO, and we look forward to her focus on this important area of our business."

**ANSWER:** Defendants admit that Paragraph 138 purports to quote and characterize the May 4, 2022 earnings call transcript, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 138.

139.   However, Defendant Harris's demotion was simply step one of a two-step removal process, and Defendants' purported justification for the demotion was a smokescreen so that Tupperware could avoid having to explain Harris's departure during an earnings call. Indeed, less than a month later, on June 2, 2022, the Company completed the removal process by eliminating the COO role and Defendant Harris's employment.

**ANSWER:** Defendants admit that Defendant Harris left the company on June 2, 2022. Defendants deny the remaining allegations in Paragraph 139.

140. The suspicious timing of Tupperware's personnel changes, including the demotion and removal of Defendant Harris during the Class Period, supports a strong inference of scienter.

**ANSWER:** Denied.

## V.    Importance of the Turnaround Plan and Core Direct-Selling Business to the Company

141. The fundamental significance of the Turnaround Plan to Tupperware's operation supports scienter.

**ANSWER:** Denied.

142. As alleged above, Tupperware's sales steadily declined between 2013 and the end of 2019, making the Turnaround Plan key to the Company's continued viability. Investors and analysts were watching closely. Even before the Class Period, Sidoti & Company pegged its valuation of Tupperware in December 2020 to the Turnaround, stating "[i]n short, we hope to get more confirmation in the results that the turnaround is firmly in place. Assuming this is confirmed, we would expect to continue to increase our multiple accordingly." Similarly, in February 2021, D.A. Davidson reiterated its `Buy' rating for Tupperware, on the grounds that "TUP's new management is just starting to execute on strategies to drive top-line growth, and we think there's much more to come with this turnaround, now that the balance sheet has been fixed." Emphasis on the Turnaround continued through the end of the Class Period. On May 5, 2022, for example, D.A. Davidson downgraded the stock "on murkier turnaround outlook."

**ANSWER:** Defendants admit that Paragraph 142 purports to quote from public statements made by certain analysts, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer

76

to those documents for their complete and accurate contents. Defendants deny

the remaining allegations in Paragraph 142.

143. Moreover, Defendant Fernandez was specifically hired to implement the Turnaround Plan. Per Richard Goudis, Executive Vice President, when CEO Tricia Stitzel stepped down in 2020, Tupperware's board decided a "team approach" was needed to turn the Company around. Fernandez was charged with "fixing the core business and motivating the sales force," and Goudis was supposed to "address[] the capital structure and markets and develop[] a growth strategy."

**ANSWER:** Defendants admit that Paragraph 143 purports to quote from

the Orlando Sentinel, but deny the allegations because they selectively quote,

inaccurately quote, reference out of context, add emphasis to, or

mischaracterize the statements. Defendants respectfully refer to that

document for its complete and accurate contents. Defendants deny the

remaining allegations in Paragraph 143.

144. In the March 12, 2020 press releasing announcing the hire of both Fernandez and Goudis, the Company professed the Board's belief that "the structure of having two experienced executives with a history of leading growth and business transformation together" would have a "strong impact" as the Company "develop[ed] and implement[d] new and urgent transformation efforts." Non-Executive Chairman of the Board Susan Cameron expressed the Board's confidence "that these proven leaders bring skills essential to Tupperware's business — a thorough understanding of the direct selling model, a belief in its relevance and growth potential, and ***proven track records of executing operational transformations and generating value.***" Unsurprisingly, in a letter to shareholders accompanying Tupperware's 2020 Form 10-K, Fernandez referred to "our efforts to fix the core business" as "our first focus as a new leadership team."

**ANSWER:** Defendants admit that Paragraph 144 purports to quote from

a March 12, 2020 press release and a letter to shareholders, but deny the

allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 144.

145. Tupperware's direct-selling business, meanwhile, was core to both the Company and the Turnaround Plan. Defendants recognized, and indeed touted, the overwhelming significance of Tupperware's direct selling business, which they regularly referred to as "primary" and "core" to its operation. For example, Item 2 of the 10-Qs filed for the second and third quarters of 2021 stated that the Company *"primarily uses* a direct selling business model to distribute and market products through personal connections, product demonstrations, and understanding of consumer needs." The 10-Ks for both 2020 and 2021 included in their risk disclosures that "The Company is *largely dependent* upon the independent sales organizations and individuals to reach end consumers," and warned of material adverse financial effects possible from any significant disruption of the direct-sales distribution network. Likewise, the 2021 10-K included the following description of the Company's business strategy: "As its business strategy evolves, as part of the Turnaround Plan, the Company is focused on accelerating modernization in two areas. *First is improving the core direct sales business."*

**ANSWER:** Defendants admit that Paragraph 145 purports to quote from certain Form 10-Q's and 10-K's, and a letter to shareholders, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 145, including because the terms "core" and "significance" are vague.

146. Thus, the paramount importance of the Turnaround Plan to the Company, and Defendant Fernandez's role at Tupperware specifically, support

a strong inference that Defendants were highly aware of developments relating to the Turnaround Plan, including price elasticity concerns associated with web and other retail selling, depressed pricing and volume caused by conflict between direct and new sales channels, and increased costs and expenses relating to Turnaround initiatives.

**ANSWER:** Denied.

## LOSS CAUSATION

147.  During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Tupperware common stock and operated as a fraud or deceit on Class Period purchasers of Tupperware stock by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Tupperware common stock declined precipitously as the prior artificial inflation came out of the stock's price. The decline in the price of Tupperware common stock was the direct result of the nature and extent of Defendants' fraud being revealed to investors and the market. Plaintiffs and other Class members purchased Tupperware common stock at artificially inflated prices, causing them to suffer damages as complained of herein.

**ANSWER:** Denied.

148.  By misrepresenting the adverse facts detailed herein to investors, Defendants presented a misleading picture of Tupperware's business, risks, and future financial prospects. As a result of their purchases of Tupperware common stock during the Class Period, Plaintiffs and the other Class members suffered economic loss (*i.e.,* damages) under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused Tupperware common stock to trade at artificially inflated levels throughout the Class Period, trading as high as $28.75 per share on May 17, 2021.

**ANSWER:** Defendants admit that Tupperware common stock closed at $28.75 on May 17, 2021. Defendants deny the remaining allegations in Paragraph 148.

149.   On November 3, 2021, Defendants began to reveal the truth about the Company when they issued the first set of corrective disclosures in the November 3, 2021 Press Release and on the November 3, 2021 Earnings Call. This first set of corrective disclosures reveal, *inter alia,* declines in gross margins as a percentage of net sales and deliberate inventory buildup not commensurate with continuing demand.

**ANSWER:**  Defendants admit that the Company issued a press release on November 3, 2021, and that an earnings call was held the same day. Defendants respectfully refer the Court to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 149.

150.   In response to Defendants' first set of corrective disclosures, the price of Tupperware common stock fell significantly, dropping $4.54 per share or 19.35%, thereby partially removing the artificial inflation caused and/or maintained by Defendants' false and misleading statements and causing economic loss to investors who had purchased Tupperware common stock during the Class Period.

**ANSWER:**  Denied.

151.   Analysts absorbed Defendants' partial corrective disclosures. On November 3, 2021, Douglas M. Lane, of Lane Research issued a "Flash Note" regarding Tupperware's results and statements concerning the third quarter of 2021. Lane noted that "a sharper sales drop and a larger operating profit decline than we forecast, notwithstanding that our forecast included the beauty businesses which are now in discontinued operations." On November 4, 2021 D.A. Davidson called the quarter "disappointing," specifically noting in its discussion of declining gross margins that "[g]ross margin was -340bp [basis points] Y/Y to 65.8% (consensus was -70bp), due partly to higher resin and manufacturing costs (-240bp)...." D.A. Davidson explained that Defendants "intentionally built inventory in 1H21 and will now be taking manufacturing downtimes to reduce inventory."

**ANSWER:**  Defendants admit that Paragraph 151 purports to quote from public statements made by certain analysts, but deny the allegations

80

because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 151.

152.   However, analysts continued to be misled by Defendants' false and misleading statements. On February 24, 2022, D.A. Davidson issued a report to Tupperware investors that parroted Defendants' false statements that Defendants had taken price increases. Specifically, the D.A. Davidson report stated that "TUP started taking broad-based price increases in late-4Q21, and is continuing with that implementation in 1Q22."

**ANSWER:**   Defendants admit that Paragraph 152 purports to quote from and characterize public statements made by D.A. Davidson, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to that document for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 152.

153.   On May 4, 2022, Defendants issued a second set of partially corrective disclosures contained within the May 4, 2022 Press Release and on the May 4, 2022 Earnings Call. This second set of corrective disclosures reveal, *inter alia,* Tupperware's failure to timely take promised price increases, the negative impact of delay in taking price increases on financial results including gross margin percentage, and unaddressed issues in the direct selling business that dramatically impacted profitability.

**ANSWER:**   Defendants admit that the Company issued a press release on May 4, 2022, and that an earnings call was held the same day. Defendants

81

respectfully refer the Court to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 153.

154.  In response to Defendants' second set of corrective disclosures, the price of Tupperware common stock fell significantly, dropping 32.16%, or $5.76 per share, thereby further partially removing the artificial inflation from Defendants' false and misleading statements and causing economic loss to investors who had purchased Tupperware common stock during the Class Period.

**ANSWER:**  Denied.

155.  Analysts were surprised. In a May 4, 2022 Flash Note, Lane Research expressed that it "would have liked the company to have been more proactive in its pricing initiatives. . ." Additionally, in response to Defendants' partially corrective disclosures, on May 5, 2022 D.A. Davidson downgraded its rating to "neutral" on "murkier turnaround outlook," observing that "[p]rofitability was impacted by cost inflation (largely plastic resin and freight) ***and the delay in implementing price increases …"***

**ANSWER:**  Defendants admit that Paragraph 155 purports to quote from and characterize public statements made by certain analysts, but deny the allegations because they selectively quote, inaccurately quote, reference out of context, add emphasis to, or mischaracterize the statements. Defendants respectfully refer to those documents for their complete and accurate contents. Defendants deny the remaining allegations in Paragraph 155.

156.  The decline in the price of Tupperware common stock after the corrective disclosures came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price decline in Tupperware common stock negates any inference that the losses suffered by Plaintiffs and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct.

**ANSWER:**  Denied.

157.    The economic loss *(i.e.,* damages) suffered by Plaintiffs and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Tupperware common stock and the subsequent significant declines in the value of Tupperware common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**ANSWER:**  Denied.

## PRESUMPTION OF RELIANCE

158.    Plaintiffs are entitled to a presumption of reliance under the fraud-on-the-market doctrine. As alleged herein, Defendants publicly issued a series of misleading and material misrepresentations throughout the Class Period. At all relevant times, the market for the Company's securities was an efficient market that promptly digested current information related to the Company from all publicly available sources and reflected such information in the prices of the Company's securities, by virtue of the following non-exhaustive factors:

1. Tupperware met the requirements for listing and was actively listed on the NYSE throughout the class period;
2. Tupperware filed periodic public reports with the SEC;
3. Tupperware was followed by at least 5 analysts;
4. Defendants regularly communicated with public investors via established market communication mechanisms, including regularly disseminated press releases on the national circuits of major newswire services;
5. Tupperware stock traded at a mean daily volume of 832,528 during the Class Period;
6. Tupperware's market capitalization reached a Class Period high of 1.43 billion;
7. Tupperware had between 45.67 million and 49.89 million shares outstanding at all times during the Class Period;

**ANSWER:**  Defendants    admit    that    Tupperware    stock    met    the

requirements for listing, and was listed on the NYSE; that Tupperware filed

periodic public reports with the SEC; that securities analysts followed the

Company; and that Tupperware released information via press releases. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158(5)–(7), and for that reason deny those allegations. Defendants deny the remaining allegations in Paragraph 158.

159. As a result of the foregoing, the market for Tupperware securities promptly integrated current information related to the Company from all publicly available sources and reflected such information in the prices of the Company's securities. Under such circumstances, the presumption of reliance available under the "fraud-on-the market" theory applies. Thus, Class members are presumed to have indirectly relied upon the misrepresentations and omissions for which Defendants are each responsible.

**ANSWER:** Denied.

160. Plaintiffs and other Class members justifiably relied on the integrity of the market price for the Company's securities and were substantially damaged as a direct and proximate result of their purchases of Tupperware common stock at artificially inflated prices and the subsequent decline in the price of those securities when the truth was disclosed.

**ANSWER:** Denied.

161. Plaintiffs and the other Class Members are also entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States,* 406 U.S. 128 (1972), because claims asserted in this complaint against the 10(3) Defendants are predicated upon omissions of material fact for which there was a duty to disclose.

**ANSWER:** Paragraph 161 contains a legal statement to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 161.

162. Had Plaintiffs and other members of the Class known of the material adverse information not disclosed by Defendants or been aware of the truth behind Defendants' material misstatements, they would not have purchased Tupperware common stock at artificially inflated prices.

84

**ANSWER:** Denied.

## NO SAFE HARBOR

163. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

**ANSWER:** Denied.

164. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**ANSWER:** Denied.

165. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of the Company who knew that the statement was false when made.

**ANSWER:** Denied.

## CLASS ALLEGATIONS

166. Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil procedure on behalf of a class consisting of all persons and entities who purchased or otherwise acquired Tupperware common stock during the Class Period and were damaged as a result (the "Class"). Excluded from the Class are: (a) Defendants; (b) members of the immediate families of Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person who is an officer, director or controlling person of Tupperware; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any

affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party.

**ANSWER:** Defendants admit that Plaintiffs purport to bring this action pursuant to Rule 23(a) and (b)(3), and that Plaintiffs purport to exclude the entities listed in Paragraph 166 from the putative class, but deny that any class may be properly certified. Defendants deny the remaining allegations in Paragraph 166.

167. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are thousands of members in the proposed Class. Indeed, as of May 4, 2022, Tupperware had 45.67 million outstanding shares of common stock.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' beliefs and the number of outstanding shares on May 4, 2022, and for that reason Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 167.

168. Members of the Class may be identified from records maintained by Tupperware or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

**ANSWER:** Defendants admit that Tupperware maintains certain records, but are without knowledge as to how Plaintiffs intend to identify and notify potential putative class members. Defendants deny the remaining allegations in Paragraph 168.

169.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including:

     a) whether the federal securities laws were violated by Defendants' respective acts as alleged herein;

     b) whether the statements made were materially false or misleading, or omitted material facts.

     c) whether Defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

     d) whether Defendants engaged in a scheme to defraud investors;

     e) whether the price of Tupperware's securities during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

     f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

**ANSWER**: Denied.

170.    Plaintiffs' claims are typical of the claims of other members of the Class and the other members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal law as alleged in this complaint.

**ANSWER:** Denied.

171.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation. Plaintiffs have no interests antagonistic to, or in conflict with, those of the Class.

**ANSWER:** Denied.

172.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER:** Denied.

173.   Plaintiffs will rely, at least in part, on the presumption of reliance established by the fraud-on-the-market doctrine. All purchasers of Tupperware securities during the Class Period suffered similar injuries, including injury through their purchase of the securities at artificially inflated prices. A presumption of reliance therefore applies.

**ANSWER:** Denied.

## COUNTS

## Count I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

174.   Plaintiffs restate and reallege each allegation as fully set forth herein.

**ANSWER:** Defendants incorporate and restate each and every response contained above as if fully set forth herein.

175.   This claim is brought under §10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against all Defendants.

**ANSWER:** Defendants admit that Plaintiffs purport to bring this suit pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5. Defendants deny the remaining allegations in Paragraph 175.

176. Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs and the Class, in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**ANSWER:** Denied.

177.    Defendants individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal non-public, adverse material information about the Company's outlook and condition, as reflected in the misrepresentations and omissions set forth above.

**ANSWER:** Denied.

178.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. Defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

**ANSWER:** Denied.

## Count II

### For Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

179.    Plaintiffs restate and reallege each allegation as fully set forth herein.

**ANSWER:** Defendants incorporate and restate each and every response contained above as if fully set forth herein.

180.    This claim is brought under §20(a) of the Exchange Act, 15 U.S.C. § 78t, against the Individual Defendants.

89

**ANSWER:** Defendants admit that Plaintiffs purport to bring this suit pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t. Defendants deny the remaining allegations in Paragraph 180.

181. The Individual Defendants, by reason of their status as senior executive officers of Tupperware, directly or indirectly controlled the conduct of the Company's business and its representations to Plaintiffs and the Class, within the meaning of §20(a) of the Exchange Act.

**ANSWER:** Denied.

182. The Individual Defendants directly or indirectly controlled the content of the Company's SEC statements and press releases related to Plaintiffs' and the Class's investments in Tupperware securities within the meaning of §20(a) of the Exchange Act. Therefore, the Individual Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

**ANSWER:** Denied.

183. The Individual Defendants controlled and had the authority to control the content of the Company's SEC statements and press releases. Because of their close involvement in the everyday activities of the Company, and because of their wide-ranging supervisory authority, the Individual Defendants reviewed or had the opportunity to review these documents prior to their issuance or could have prevented their issuance or caused them to be corrected.

**ANSWER:** Denied.

184. The Individual Defendants knew or recklessly disregarded the fact that Tupperware's representations were materially false and misleading and/or omitted material facts when made. In so doing, the Individual Defendants did not act in good faith.

**ANSWER:** Denied.

185. By virtue of their high-level positions and their participation in and awareness of Tupperware's operations and public statements, the Individual Defendants were able to and did influence and control Tupperware's decision-making, including controlling the content and dissemination of the

documents and statements that Plaintiffs and the Class contend contained materially false and misleading information and on which Plaintiffs and the Class relied.

**ANSWER:** Denied.

186. The Individual Defendants had the power to control or influence the statements made, giving rise the securities violations alleged herein, as set forth more fully above.

**ANSWER:** Denied.

187. As set forth herein, the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5, thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are also liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchase of Tupperware securities.

**ANSWER:** Denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.    Declaring that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as Class Representatives and Lead Counsel as Class Counsel;

B.    Awarding Plaintiffs and each Class compensatory damages;

C.    Awarding Plaintiffs and each Class pre judgment and post judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs;

D.    Granting Plaintiffs leave to amend the complaint to conform to the evidence; and

E.    Awarding such other and further relief as this Court may deem just and proper.

**ANSWER:** Defendants deny that Plaintiffs are entitled to any relief in

this case, including the relief sought in their prayer for relief.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class demand a trial by jury.

**ANSWER:** Defendants admit that Plaintiffs have requested a trial by jury.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses against Plaintiffs and any members of the putative class, as applicable. Defendants may assert that resolving one or more of these defenses would require individualized analyses of the defenses as to individual class members, making class certification improper. By asserting these defenses, Defendants are not waiving Plaintiffs' burden of proving all elements of their claims (including but not limited to falsity, the non-application of the statutory safe harbor for forward-looking statements, scienter, causation, reliance, and damages)[1] or of proving that class certification is proper. Defendants expressly reserve the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

---

[1] This Second Amended Complaint pleads the same substantive allegations as Plaintiffs' First Amended Complaint. For the reasons set forth in Defendants' Motion to Dismiss the First Amended Complaint and the Reply in support of the same, Defendants believe that Plaintiffs have failed to allege the elements of their claims under the Private Securities Litigation Reform Act and the Federal Rules of Civil Procedure. (Dkt. 56; Dkt. 71).

1.      Plaintiffs' and the putative class members' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, acquiescence, and/or ratification.

2.      Plaintiffs' and the putative class members' claims are barred, in whole or in part, because they voluntarily assumed the risk of the losses alleged in the Complaint.

3.      Defendants deny that Plaintiffs or any putative class member was injured in the nature and to the extent claimed.

4.      Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, to the extent they proximately caused, contributed to, or failed to mitigate any losses.

5.      Plaintiffs' and the putative class members' claims are barred, in whole or in part, or are subject to offset to the extent that the conduct complained of conferred a benefit upon Plaintiffs or the putative class members.

6.      Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, by the relevant statutes of limitations.

7.      The damages sought by Plaintiffs and the putative class exceed those permitted under the Securities Exchange Act of 1934, the Private Securities Litigation Reform Act, common law, or any other applicable statute, rule or regulation.

93

8.     To the extent Plaintiffs or putative class members executed a waiver or release of claims, some or all of their claims are barred by that waiver or release.

WHEREFORE, Defendants request that judgment be entered in their favor and against Plaintiffs, that Defendants be awarded their costs and attorneys' fees, and that Defendants be awarded any other appropriate relief.

Dated:  February 27, 2024                      Respectfully submitted,

*/s/ Ian M. Ross*
Ian M. Ross (Bar No. 091214)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL  33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email:  iross@sidley.com

James W. Ducayet (IL Bar No. 6236997)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036
Email:  jducayet@sidley.com

*Counsel for Defendants*

94

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to the counsel of record for Plaintiff.

*/s/ Ian M. Ross*
Ian M. Ross