# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA (ORLANDO DIVISION)

| | | |
|---|---|---|
| MICHAEL EDGE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 6:22-cv-1518-RBD-LHP |
| vs. | ) ) ) | Judge Roy B. Dalton, Jr. Magistrate Judge Leslie Hoffman Price |
| TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

# TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................2

    A.    Plaintiffs' Shifting Allegations and Procedural History. ........................2

    B.    Plaintiffs. ................................................................................................4

II.   ARGUMENT ............................................................................................8

    A.    Plaintiffs are Not "Typical" of the Class. ..............................................9

        1.    The Assignment Precludes Typicality. ....................................10

        2.    Plaintiffs' Share Purchases are Atypical of the Proposed Class. ..........................................................................................14

    B.    Plaintiffs Cannot Adequately Represent the Absent Class Members. ...............................................................................................16

        1.    Plaintiffs Lack Knowledge of the Case. ..................................17

        2.    Estep is Not an Adequate Fiduciary for Absent Class Members. ................................................................................18

III.  CONCLUSION .......................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*,
2015 WL 11051056 (S.D. Fla. Aug. 26, 2015) ....................................................17

*Butterworth v. Quick & Reilly, Inc.*,
171 F.R.D. 319 (M.D. Fla. 1997) .........................................................................17

*In re Caremark Int'l, Inc. Sec. Litig.*,
1996 WL 351182 (N.D. Ill. June 24, 1996) .........................................................16

*Christie v. Bank of Am., N.A.*,
2014 WL 805882 (M.D. Fla. Feb. 28, 2014) .......................................................11

*Colucci v. Health First, Inc.*,
2022 WL 18926772 (M.D. Fla. Dec. 22, 2022) ...................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................................................8

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) .........................................................................15

*Eslava v. Gulf Tel. Co.*,
2007 WL 2298222 (S.D. Ala. Aug. 7, 2007) .......................................................17

*Halliburton Co. v. Erica P. John Fund Inc.*,
573 U.S. 258 (2014) ..............................................................................................1

*In re HealthSouth Corp. Sec. Litig.*,
213 F.R.D. 447 (N.D. Ala. 2003) ..........................................................................9

*Hively v. Northlake Foods, Inc.*,
191 F.R.D. 661 (M.D. Fla. 2000) .........................................................................18

*Liberty Nat. Ins. Holding Co. v. Charter Co.*,
734 F.2d 545, 555 (11th Cir. 1984) .....................................................................11

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ..................................................................... 17, 18

iii

*Luczak v. Nat'l Beverage Corp.*,
548 F. Supp. 3d 1256 (S.D. Fla. 2021)..............................................................*passim*

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................12

*Lundy v. Ideanomics, Inc.*,
2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ...................................................14

*Piazza v. Ebsco Indus., Inc.*,
273 F.3d 1341 (11th Cir. 2001)................................................................ 8, 9, 13

*Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc.*,
2014 WL 12531512 (S.D. Fla. June 20, 2014) ..................................................19

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000)........................................................................ 9, 13

*Rothenberg v. Sec. Mgmt. Co.*,
667 F.2d 958 (11th Cir. 1982) .........................................................................17

*RR Restoration, LLC v. Empire Indem. Ins. Co.*,
2024 WL 1328448, at *4 (M.D. Fla. Mar. 28, 2024) ........................................11

*Sanchez v. Velocity Invs., L.L.C.*,
2015 WL 12777990 (N.D. Ga. Dec. 11, 2015)..................................................17

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007).......................................................................12

*Shroder v. Suburban Coastal Corp.*,
729 F.2d 1371 (11th Cir. 1984).......................................................................16

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009)................................................................ 12, 13

*Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*,
2021 WL 4896949 (M.D. Fla. July 27, 2021) ....................................................9

*Vincent v. Money Store*,
304 F.R.D. 438 (S.D.N.Y. 2015), *aff'd* 649 F. App'x 103 (2d Cir.
2016) .............................................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................9

iv

Plaintiffs' Motion[1] seeks to certify a class that bears little resemblance to the class proposed in the original Complaint. The original plaintiff, Michael Edge, did not seek appointment as lead plaintiff, and all but disappeared from the case—but has now reappeared as a proposed class representative. The class period that he alleged in his Complaint has also changed—but he was unaware of that when he was deposed. The two co-lead plaintiffs, Michael Dennehy and Ralph Estep, alleged a completely different theory of liability in their consolidated Complaint, materially changing the proposed class period and alleging harm based on different alleged misstatements and different disclosures (Edge testified he did not know about these changes either). Moreover, Estep (a part-time, unregistered investment advisor) apparently solicited his clients (including Dennehy) to have them assign their interests to him—although, as he has testified, he has since been told that some of those assignments (specifically, Dennehy's) have been revoked. The result is a Motion that cobbles together a proposed class led by three atypical proposed class representatives, two of whom do not agree about which is the proper plaintiff to seek the losses they allege.

"Plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund Inc.*, 573 U.S. 258, 275 (2014). Plaintiffs cannot meet this standard. Neither their factual circumstances nor their claims are typical of

---

[1] Plaintiffs' Motion for Class Certification (Dkt. 103) is referred to as the "Motion." Defendant Tupperware Brands Corporation is referred to as "Tupperware" or the "Company," and, collectively with Miguel Fernandez and Cassandra Harris, "Defendants."

the class they seek to represent. Edge and Dennehy did not buy or sell Tupperware securities during the first half of the class period and prior to the first corrective disclosure they allege. They do not have standing, let alone an incentive, to assert claims relating to losses from this purported corrective disclosure.

For his part, Estep is not an adequate or appropriate class representative. Estep has a long-documented history of flouting legal and ethical requirements. Just weeks before he sought appointment as lead plaintiff, the Delaware Investor Protection Director issued a cease and desist order to Estep, instructing him to stop acting as an unlicensed investment advisor. Undeterred by that order or any of his prior encounters with the law—including sanctions for the unauthorized practice of law and the revocation of his CPA license—Estep had two of his "investment advisory" clients sign purported assignments of their interests to him so he could serve as lead plaintiff.

Stated simply, there is a reason why Plaintiffs' counsel has reshuffled different proposed plaintiffs in this case over the last two years—none are proper class representatives to prosecute this case. Plaintiffs' Motion should be denied.

## I.     BACKGROUND

### A.     Plaintiffs' Shifting Allegations and Procedural History.

On June 14, 2022, Edge filed this putative class action under the Private Securities Litigation Reform Act ("PSLRA"). Dkt. 1, Compl. Edge alleged that Defendants made false or misleading statements between November 3, 2021 and May 3, 2022 by failing to disclose that Tupperware was "facing significant challenges in maintaining its earnings and sales performance." *Id.* ¶ 3. When such information was

revealed, he claimed it negatively impacted Tupperware's stock price. *Id.* Notably, Edge did not allege that the Company made any false or misleading statements prior to November 3, 2021 about its product pricing strategy or profitability. Instead, Edge alleged that he and the putative class were harmed by the drop in Tupperware's stock price because it withdrew its earnings guidance (i.e., the information that a publicly-traded company issues regarding its expected future actions). *Id.* ¶ 4, 6.

On November 30, 2022, the First Amended Complaint ("FAC") was filed. Dkt. 44, FAC. The FAC dropped Edge as a plaintiff and set forth an entirely different theory of liability with a different class period focused on a different set of misstatements made between May 5, 2021 and May 4, 2022. The statements are alleged to be false because, although Tupperware purportedly represented to the market that it had raised prices or planned to raise prices to maintain profitability in the face of inflationary headwinds, Tupperware was instead focused on selling-through inventory. It alleges that investors first learned the "truth" on November 3, 2021, when the Tupperware purportedly "revealed" that it had not offset rising costs with price increases (the "First Partial Disclosure"). *Id.* ¶ 103. The FAC alleges that the rest of the "truth" was revealed on May 4, 2022 (the "Second Partial Disclosure"). *Id.* ¶ 118.

On February 13, 2024, Plaintiffs again changed course, filing their Second Amended Complaint ("SAC") and adding Edge back in as a plaintiff. Dkt. 105, SAC. The allegations of the SAC are otherwise unchanged.

### B.   Plaintiffs.

*Michael Edge.* Plaintiff Michael Edge did not purchase any Tupperware stock until February 9, 2022. Compl. at 24; Ex. 1, EDGE000001. He bought these shares well after the vast majority of the purported misrepresentations were made (in fact, all but one were made before he was a Tupperware shareholder), and months after the First Partial Disclosure. In other words, he did not suffer any of the losses purportedly attributable to this First Partial Disclosure. *See* SAC ¶ 149; Dkt. 1, Edge Disclosure. Edge bought these shares just after watching a television interview where they were recommended by "legendary value investor" Bill Miller. Ex. 2, Deposition Tr. of Michael Edge ("Edge Tr.") at 18:19-19:17. In 2023, after he filed this case, he continued to buy Tupperware shares because he thought he saw opportunities to buy at a low price. *See id.* at 47:8-48:6.

*Ralph V. Estep, Sr.* Plaintiff Ralph V. Estep, Sr. is a self-described "Portfolio Manager" and accountant, even though his CPA license was suspended and then terminated. Dkt. 17-5 ¶ 2; Ex. 3, *In Re Estep*, Case No. 04-08-07 (Del. Bd. Acct. Sept. 16, 2009); Ex. 4, *In Re Estep*, No. 04-04-09 at 10 (Del. Bd. Acct. July 20, 2011). His portfolio management services are only a small part of his practice. Ex. 5, Deposition Tr. of Ralph V. Estep, Sr. ("Estep Tr.") at 106:2-12 (less than 10%). Nonetheless, as part of his attempt to acquire more shares to be lead plaintiff in this action, Estep contacted his clients, including putative co-lead plaintiff Dennehy, to ask them to assign shares to him. Estep purchased Tupperware shares on Dennehy's behalf

in his role as Dennehy's investment advisor. Ex. 6, Deposition Tr. of Michael J. Dennehy ("Dennehy Tr.") at 14:9-15, 87:10-21; Estep Tr. at 108: 4-9, 145:19-25.

Estep has been sanctioned repeatedly by Delaware governmental authorities for, among other things, acting as an unregistered investment advisor, engaging in the unauthorized practice of law, and violating multiple certified public accountant rules, leading to the revocation of his license. In July 2022, just a few weeks before he filed a motion to be lead plaintiff, the Delaware Investor Protection Unit (IPU) ordered Estep to cease-and-desist acting as an unregistered investment advisor. Ex. 7, *Ralph V. Estep Firm and Ralph V. Estep, Respondents*, Investor Protection Matter No. 22-0044 (Del. IPU, Jul. 20, 2022); Estep Tr. at 169:19-171:18; *see also id.* at 159:20-25 (Estep stating he has never been a registered investment advisor or securities professional). He ignored this order and presented himself to this Court less than a month later as a "portfolio manager" who "advised clients who purchased Tupperware securities." Dkt. 17-5 ¶ 2. He continues to provide investment advice to clients, Estep Tr. 106:13-16 (testifying that he currently has ten investment advisory clients).

Estep also has been sanctioned by the Delaware Supreme Court and other Delaware authorities. In 2006, the Delaware Supreme Court found that he engaged in the "unauthorized practice of law." Ex. 8, *In re Estep*, 931 A.2d 1006 (Del. 2006); Estep Tr. at 174:18-25, 175:1-6. After the order, Estep continued directing substantive legal work, leading the Court to sanction him the following year after the court found that Estep's conduct was "contemptuous," "blatant," and a "transparent, nefarious attempt to circumvent the Cease and Desist Order and continue with 'business as

usual.'" Ex. 9, *In re Estep*, 933 A.2d 763, 764, 771 (Del. 2007). The Supreme Court found Estep in contempt, ordered disgorgement, and fined him. *Id.* at 773-74.

In 2009, the Delaware Board of Accountancy suspended Estep's accountancy license for a year, followed by two years of probation, as a consequence of the Supreme Court's contempt order. Estep Tr. at 175:9-12, 176:8-10. Despite the suspension of his accounting license, Estep continued to advertise his accounting practice, which led to the Board permanently revoking his license and concluding that his conduct was "sloppy" and reflected "a serious lack of due diligence" that gave the Board "reason to be concerned about the threat Estep's practice may impose on the public." Ex. 4; Estep Tr. at 157:5-13. The Delaware Superior Court upheld the revocation. Ex. 10, *Estep v. Bd. of Acct.*, 2012 WL 5432367 (Del. Super. Ct. Oct. 2, 2012). Estep still continued to represent himself to the public as a licensed accountant, causing the Board to again issue him a cease-and-desist order and directing legal counsel to seek an injunction. Ex. 11, *In Re Ralph Estep Unlicensed Practice*, No. 04-01-12 (Del. Bd. Acct. Jan. 16, 2013); *see also* Estep Tr. at 166:8-23 (discussing other transgressions, including an arrest for threatening to kill his wife).

Estep purchased Tupperware shares during the Class Period on his own behalf and on behalf of others he advised as a portfolio manager. In his sworn declarations, Estep identifies purchases of Tupperware stock in three separate accounts:

In Account 1, which Estep has since revealed is Dennehy's account, Estep purchased 20,000 shares on November 4, 2021—after the First Partial Disclosure. Dkt. 45; Ex. 12, Estep Interrog. Resp. No. 1 and Verification. Although these are not his

shares, Estep claims that he was assigned all rights and interests in these shares by Dennehy. *See* Dkt. 17-1; *see also* Estep Tr. at 61:1-20, 62:19-63:17, 64:6-65:10. Dennehy, however, testified that he orally revoked this assignment. Dennehy Tr. at 105:12-20. Estep said Dennehy never told him that but that he remembers being "told" (presumably by counsel) that the assignment had been revoked. Estep Tr. at 68:18-24; 70:1-73:4. He said that he never agreed to, or accepted, the revocation because he "[didn't] think [he] had any choice in the matter." *Id.* at 71:10-13. The assignment says that it only can be revoked in writing with Estep's consent. Dkt. 17-1. There is no such writing. Estep Tr. at 71:7-9; Dennehy Tr. at 108:14-110:22.

In Account 2, Estep traded in Tupperware stock on his own account. Dkt. 17-2; Ex. 12. Notably, Estep's sworn declaration reflects that all Tupperware stock in Account 2, for which he asserts claims in this case, was purchased after the First Partial Disclosure on November 3, 2021 and sold by December 31, 2021, prior to the Second Partial Disclosure on May 4, 2022.[2] Dkt. 55-1. Estep testified that he had all but given up on Tupperware's stock by then—although he never told his clients that they should do the same. Estep Tr. at 77:10-78:7.

Account 3 belongs to an individual named Michael Ward. Ex. 12. Estep allegedly purchased 300 shares on Mr. Ward's behalf on July 19, 2021. *Id.*; Dkt. 55-1; Estep Tr. at 66:2-68:17. He was not assigned these shares at the time he filed his motion

---

[2] Although Estep testified that his amended certification lists "all" of his Tupperware transactions during the putative class period, his produced E*TRADE account record shows he may have purchased an additional 4,000 TUP shares on July 19, 2021—a trade that does not appear anywhere in his amended certification. Estep Tr. at 147: 21-24. Estep could not recall whether made a July 2021 purchase. *Id.*

to serve as lead plaintiff. Instead, he secured the assignment from Ward well after the fact in December 2022. Ex. 13, ESTEP000013.

*Michael Dennehy.* Plaintiff Michael J. Dennehy purports to act on behalf of the class based on the 20,000 shares of TUP stock that Estep, his investment advisor, purchased for him on November 4, 2021. Dkt. 12-2; Dkt. 45; Ex. 14, DENNEHY000014; Dennehy Tr. at 181:14-18. As described above, Plaintiffs produced an assignment reflecting that Dennehy assigned his claims based on the November 2021 purchase to Estep in August 2022. *See* Dkt. 17-1. Dennehy now states that the assignment was orally revoked at some unspecified time. Dennehy Tr. at 107:1-19. When Estep made his trade (without telling Dennehy in advance), he invested 70% of Dennehy's entire retirement savings in Tupperware. *Id.* at 75:18-19. Estep claimed that he had no idea that he had invested this large of a percentage of Dennehy's savings. Estep Tr. at 131:20-24. This purchase was made after the alleged First Partial Disclosure. *See* SAC ¶ 149.

## II.    ARGUMENT

Class certification is no routine matter. It is the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The certification of a class action is governed by Rule 23 of the Federal Rules of Civil Procedure. "A class action may be maintained only when it satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b)." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351-52 (11th Cir. 2001).

Plaintiffs bear the burden to "affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The important inquiry is whether the proposed class representatives' claims have the same essential characteristics as those of the proposed class." *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 458 (N.D. Ala. 2003). "Rule 23 does not set forth a mere pleading standard," and the Court must engage in a "rigorous analysis" of the evidence bearing on Rule 23's requirements, even if that "overlap[s] with the merits." *Wal-Mart Stores, Inc.*, 564 U.S. at 350-52. Plaintiffs have failed to carry their burden to demonstrate that their claims are typical of the proposed class or that they would be adequate representatives.

### A.    Plaintiffs are Not "Typical" of the Class.

Typicality under Rule 23(a)(3) "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "To meet the typicality requirement, plaintiffs must show that the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class as a whole." *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. at 458. "The important inquiry is whether the proposed class representatives' claims have the *same essential characteristics* as those of the proposed class." *Id.* A "class representative must possess the same interest and suffer the same injury as the class members in order to be typical." *Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*, 2021 WL 4896949, at *5 (M.D. Fla. July 27, 2021). This inquiry "encompasses the question of the named plaintiff's standing." *Piazza*, 273 F.3d

9

at 1346; *see also Colucci v. Health First, Inc.*, 2022 WL 18926772, at *1 n.1 (M.D. Fla. Dec. 22, 2022). A plaintiff is atypical if subject to unique defenses that threaten to become the focus of the litigation. *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1266 (S.D. Fla. 2021).

Here, each Plaintiff is subject to individualized defenses that defeat typicality and warrant denial of Plaintiffs' motion for class certification. *First*, the issues surrounding the assignment of Dennehy's claims to Estep present unique issues regarding their standing to pursue claims at all. *Second*, the trading history of each of the named Plaintiffs makes them atypical of the unnamed class members, and Estep's past is likely to become a focus and unnecessary distraction.

### 1.   *The Assignment Precludes Typicality.*

The assignment between Dennehy and Estep creates unique and individualized defenses that preclude them from being typical class representatives. Their respective sworn certifications reflect that they are each asserting claims based on the same purchase of 20,000 Tupperware shares on November 4, 2021. *See* Dkt. 45 (Dennehy purchases); Dkt. 55-1 (Estep purchases). But Dennehy and Estep cannot both recover for the same alleged loss. Only one person has standing to pursue claims based on the 20,000 shares purchased for Dennehy's account, and the issue of which lead plaintiff has standing to pursue claims based on these shares is a critical threshold legal issue that threatens to eclipse issues common to the class.

As a general matter, "[u]nder a valid assignment, the assignee of a claim becomes the real party in interest for that claim," while "the assignor retains no interest

on which to base an action." *Christie v. Bank of Am., N.A.*, 2014 WL 805882, at *1 n.2 (M.D. Fla. Feb. 28, 2014) (quoting Moore's Federal Practice, Vol. 4 § 17.11(1)(a) (3d ed. 2013); *see also RR Restoration, LLC v. Empire Indem. Ins. Co.*, 2024 WL 1328448, at *4 (M.D. Fla. Mar. 28, 2024) ("Once an interest has been assigned, the assignor no longer has a right to enforce th[at] interest because the assignee has obtained all rights to the thing assigned." (internal quotation marks omitted; alteration in original)). Accordingly, if the original assignment was valid, Dennehy would not have had standing to pursue a claim based on the 20,000 shares purchased on November 4, 2021 at the time he filed his application to serve as lead plaintiff. And if the assignment is *not* valid, Estep does not have standing. *Liberty Nat. Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 555 (11th Cir. 1984) ("It is settled law that one who has been defrauded in connection with the purchase or sale of securities has an implied right of action under section 10(b) and rule 10b-5 *if he was a party to the purchase or sale*, that is, a buyer or seller.") (emphasis added)).[3]

However, Dennehy now claims that the assignment was revoked. Dennehy Tr. at 91:10-16. Dennehy does not recall *when* the assignment was revoked, but he claims that he told Estep in a later telephone conversation that he wanted to pursue his own claims. *Id.* at 105:12-24. Estep has a different recollection, testifying that Dennehy had never asked for the assignment to be revoked, Estep Tr. at 69: 15-18, but that he had

---

[3] Notably, these are only general principles—there are also significant choice of law questions as to which jurisdiction's law would apply to the assignment, given that the signatories are from different states (Estep residing in Delaware, and Dennehy in Florida) and the duties to be performed by Estep presumably would be performed in Delaware.

11

"heard it several times in various conversations" that the assignment was, in fact, revoked, *id.* at 70:1-9. The assignment itself states that it "may not be revoked without the written consent of Ralph Estep." Dkt. 17-1. Both Dennehy and Estep acknowledge that there is no such writing. Estep Tr. at 71:7-9; Dennehy Tr. at 108:14-16. Estep denies that he consented to the revocation at all. Estep Tr. at 73:1-4.

If the revocation of the assignment was effective, Estep would no longer have had standing with respect to the 20,000 shares at the time he was appointed lead plaintiff.[4] This likely would have divested Estep of standing entirely. Standing is determined at the inception of the lawsuit. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992). For actions under the PSLRA, like the one presently before the Court, standing is determined at the time a party is appointed as lead plaintiff. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding that a plaintiff "no longer satisfies the adequacy or typicality requirement" where it lacked standing "at the time [the] Court appointed it lead plaintiff" because an assignment was not valid for the plaintiff's claim as to the litigation and plaintiff accordingly "faces unique legal issues that other class members do not").

---

[4] Notwithstanding Estep's acknowledgment that Dennehy intended to revoke the assignment, he has not updated his sworn certifications or other filings to reflect that change. *See* Dkt. 16 at 1 n.1; Dkt. 55-1. Likewise, his verified discovery responses served on February 15, 2024 suggested that he was still pursuing claims based on the Dennehy stock purchases. Ex. 12, Estep Interrog. Resp. No. 1 and Verification. Neither Dennehy nor Estep has updated their certifications to reflect the assignment as is required by the PSLRA, further undermining their adequacy to serve as class representatives. *See Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (finding Plaintiff's "inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that, in conjunction with his other deficiencies, counsel against a finding of adequacy").

At the time of the revocation, Estep was asserting claims based on (1) Dennehy's 20,000 shares; and (2) shares purchased on his own account. Dkt. 17-2; Estep Tr. 145:17-21. His lead plaintiff filing reflected that he had closed his entire position in Tupperware prior to the end of the operative Class Period and accordingly he cannot pursue claims based on his own purchases. Dkt. 17-2. The only shares Estep claimed he "retained" were Dennehy's. Dkt. 16 at 1 (noting that Estep "purchased 61,000 Tupperware shares . . . *retained 20,000 of his Tupperware shares*, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $395,205") (emphasis added)). If the assignment had been revoked at the time he was appointed lead plaintiff, Estep lacked standing to pursue claims against Defendants. Likewise, a valid revocation would not necessarily restore standing to Dennehy. If the revocation was not effective at the time he was appointed lead plaintiff, he may not have standing to pursue any claims against Defendants. *In re SLM Corp.*, 258 F.R.D. at 116.

One or both of these Plaintiffs lacks standing on the basis of the assignment. "[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Bush*, 221 F.3d at 1279; *see also Luczak*, 548 F. Supp. 3d at 1262 (same). "Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Piazza*, 273 F.3d at 1347; *see also Bush*, 221 F.3d at 1279. At a minimum,

13

the issue of standing is unique to Dennehy and Estep and would require resolution of both factual and legal questions about the validity of the assignment, the efficacy of the revocation, and whether either Plaintiff had standing at the outset of the action. Resolution of those issues will distract from the issues common to the class and creates adversity between two lead plaintiffs. Dennehy and Estep are atypical on this basis.

### 2.    *Plaintiffs' Share Purchases are Atypical of the Proposed Class.*

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical." *Luczak*, 548 F. Supp. 3d at 1265. Although typicality does not require identical claims or defenses, a plaintiff is atypical if "the factual position of the representative markedly differs from that of other members of the class." *Id.*

Neither Edge nor Dennehy are typical class members here because both purchased Tupperware stock only after the First Corrective Disclosure. *See Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (holding plaintiff who only made purchases after a partial disclosure was not an appropriate lead plaintiff as "[t]here is no need to subject the class to [the several] potential issues" that stem from a post-disclosure purchase). Edge's and Dennehy's testimony and claims will focus exclusively on the impact of the Second Partial Disclosure, and neither has any incentive to prove that the misstatements preceding and related to the First Corrective Disclosure were false or misleading or caused their losses. *Luczak*, 548 F. Supp. 3d at 1266. Edge and Dennehy "will be required to prove that their losses were caused by distinct and separate events, potentially fomenting a disunified class and

14

placing the interests of the Class in significant jeopardy." *Id.* Their claims are thus atypical.

Estep's purchase history on his own behalf is similarly atypical and further undermines his standing to pursue these claims. Estep's sworn declaration suggests that he is pursuing claims based entirely on purchases and sales made *between* the two alleged corrective disclosures. Dkt. 55-1.[5] That means that Estep was not injured as a result of these purchases. Even assuming that the alleged misstatements caused inflation in Tupperware's stock price, that inflation would not have been removed at the time Estep sold all of his shares. Because Estep was able to sell his shares at an inflated price, he could not have been injured by the alleged misstatements. *Luczak*, 548 F. Supp. 3d at 1263-64, 1266.

Dennehy's unusual trading practices raise additional unique defenses that make him an inappropriate class representative. Dennehy testified that the November 2021 stock purchases were made by Estep, who was serving as Dennehy's investment advisor. This too renders his claims "atypical of and antagonistic to those of the rest of the class arising out of its purchases of [TUP] stock pursuant to its investment advisor." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002) ("[The petitioning plaintiff]'s purchase of Enron stock . . . after the initial public disclosure

---

[5] As noted *supra*, Estep's E*TRADE account reflects a purchase of 4,000 shares in July 2021. This purchase not reflected in Estep's sworn declaration. Nonetheless, at a minimum, more than 90% of Estep's Tupperware shares—41,000 of the 45,000 he purchased—were bought and sold after the First Partial Disclosure and before Second Partial Disclosure.

regarding Enron's overstatement of its assets and partnership liabilities . . . creates a conflict of interest with those who purchased stock before the disclosure.").

Dennehy's relationship with Estep also raises a unique defense concerning Dennehy's reliance on the alleged misrepresentations. Dennehy testified that he gave Estep full authority to trade on his account and executed a power of attorney and written agreement to that effect. Dennehy Tr. at 156:16-24. Dennehy did not expect Estep to tell him in advance of making trades, and Estep did not do so. *Id.* at 157:11-24. Estep did not consult Dennehy before using 70% of Dennehy's retirement savings to purchase Tupperware stock, *id.* at 75:18-19, and Dennehy was not aware of the transaction until after the fact, *id.* at 185:9-12. Dennehy's lack of involvement in the underlying transaction renders him atypical of the proposed class. *See In re Caremark Int'l, Inc. Sec. Litig.*, 1996 WL 351182, at *6 (N.D. Ill. June 24, 1996) (declining to certify an individual plaintiff as the lead plaintiff because his claims were atypical because he "had no input into the decision to purchase the [defendant] stock and learned of [the transaction] only after it had occurred").

### B.   Plaintiffs Cannot Adequately Represent the Absent Class Members.

Courts must "undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment." *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1374 (11th Cir. 1984). "[T]he adequacy of a proposed class representative is not presumed . . . the burden of proof is on the plaintiff, not on the defendants, to show that [plaintiff] is an adequate class representative."

16

*Sanchez v. Velocity Invs., L.L.C.*, 2015 WL 12777990, at \*5 (N.D. Ga. Dec. 11, 2015). Further, "meeting the[] requirements [of Rule 23] might still be insufficient if the 'named plaintiffs . . . do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.'" *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003).

### 1.   *Plaintiffs Lack Knowledge of the Case.*

To adequately represent the class, Plaintiffs must have sufficient familiarity with the litigation and their roles as class representatives. *See Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 (11th Cir. 1982). Indeed, "[c]lass representatives should not only have a working knowledge of the case but should possess a level of understanding of the case to be capable of controlling or prosecuting the litigation." *Eslava v. Gulf Tel. Co.*, 2007 WL 2298222, at \*3 (S.D. Ala. Aug. 7, 2007) (internal citations omitted); *see also Sanchez*, 2015 WL 12777990, at \*4-5. If Plaintiffs have virtually "abdicated to their attorneys the conduct of the case[,] then the class must not be certified." *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322 (M.D. Fla. 1997) (internal quotation marks omitted); *see also Rothenberg*, 667 F.2d at 961-62 (concluding that plaintiff was an inadequate class representative where her knowledge "derived largely from conversations with her attorney"); *A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*, 2015 WL 11051056, at \*4 (S.D. Fla. Aug. 26, 2015) (same).

Plaintiffs' testimony makes clear that they lack knowledge of the case, have failed to monitor the litigation, and are inadequate class representatives. None of the Plaintiffs even reviewed the relevant complaints before they were filed, despite

verifying that they did so. *See* Dennehy Tr. at 47:25-51:1; Estep Tr. at 46:9-13; Edge Tr. at 55:19-25, 60:1-19. No Plaintiff could identify who the confidential witness is, nor did they have any knowledge regarding the witness and his statements or whether any allegations in the complaint were based on confidential witness statements. Dennehy Tr. at 132:15-133:21; Estep Tr. at 50:21-23, 51:7-25; Edge Tr. at 78:11-13, 79:9-24. Nor could any plaintiff identify the meaningful substantive differences between the complaints. Dennehy Tr. at 51:4-8; Estep Tr. at 45:24-46:2; Edge Tr. at 53:3-24, 69:8-11. Estep and Edge disavowed any responsibility to ensure the accuracy of their claims, Estep Tr. at 100:16-21; Edge Tr. at 65:4-66:6, and Dennehy testified that the only work he has done on the case is to speak with his attorneys, Dennehy Tr. at 131:7-14. Edge, Dennehy, and Estep have abdicated responsibility for this case to their attorneys, and they therefore fail to satisfy the adequacy requirement.

### 2.    *Estep is Not an Adequate Fiduciary for Absent Class Members.*

Named plaintiffs may lack adequacy where they "do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *London*, 340 F.3d at 1254. "Within the Court's sound discretion, class certification can be denied if there is a strong indication that one or more of the Plaintiffs' testimony might not be credible." *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668 (M.D. Fla. 2000) (internal quotation marks omitted). Plaintiffs' credibility is "especially important in the context of a fraud claim." *Vincent v. Money Store*, 304 F.R.D. 438, 445 (S.D.N.Y. 2015), *aff'd* 649 F. App'x 103 (2d Cir. 2016). Plaintiffs who lack credibility cannot "fulfill [their] fiduciary role and vigorously represent the class"

18

and "would materially prejudice other class members" at trial. *Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc.*, 2014 WL 12531512, at *4 (S.D. Fla. June 20, 2014).

Estep's credibility at trial clearly would be in question, raising issues about both his ability to serve as a fiduciary as well as threatening to become an unnecessary distraction. Estep engaged in the unauthorized practice of law, causing the Delaware Supreme Court to issue both a cease-and-desist order and a contempt order against him. Ex. 8 at 1006; Ex. 9. Estep's dishonesty and legal issues persisted in his role as an accountant. The contempt order resulted in his accountancy license being suspended for twelve months. Ex. 3 at 30. The Delaware Board of Accountancy also found that one of his clients executed a power of attorney whereby Estep then sold her house to various buyers, including to himself, unbeknownst to the client. *Id.* at 20. The Board found that "throughout the[se] transactions, he was acting in his best interests, and not in the best interest of his clients," and that he "entirely disregarded [their] instructions, wishes and interests . . ." *Id.* at 27. Yet after that, Estep again demonstrated his blatant disregard for the law and continued to display advertisements for his accounting practice, resulting in a revocation of his accountancy license. Ex. 10. True to form, Estep disregarded the Board and Superior Court's rulings which resulted in *another* cease-and-desist order being issued against him. Ex. 11.

Of particular importance to this case, Estep has touted himself as an investment advisor without ever registering as one. The Delaware IPU accordingly ordered him to cease-and-desist acting as an unregistered investment advisor in July 2022. Ex. 7. Estep ignored this order and continues to identify himself as an investment advisor

19

today, even making such misrepresentations to the Court. In his August 15, 2022 declaration—filed less than a month after the IPU's order—Estep identified himself as a "portfolio manager" and stated that he "advised clients who purchased Tupperware securities." Dkt. 17-5 ¶ 2. Estep's role in this case is based primarily on his unlawful practice as an investment advisor.

Not only does Estep's repeated disregard of his ethical and legal obligations demonstrate that he cannot serve as an adequate representative of absent class members, his dubious past conduct would be the subject of extensive cross examination at trial and threaten to become a major (and entirely unnecessary) distraction, which makes him unfit to serve as a class representative. *Luczak*, 548 F. Supp. 3d at 1266.

## III.    CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiffs' Motion to Certify the Class.

Dated:  April 23, 2024                              Respectfully submitted,

                                                    */s/ James W. Ducayet*

Ian M. Ross (Bar No. 091214)        James W. Ducayet (IL Bar No.
SIDLEY AUSTIN LLP                   6236997)
1001 Brickell Bay Drive, Suite 900  SIDLEY AUSTIN LLP
Miami, FL  33131                    One South Dearborn Street
Telephone: (305) 391-5100           Chicago, IL  60603
Email:  iross@sidley.com            Telephone:  (312) 853-7000
                                    Email:  jducayet@sidley.com

                                    *Counsel for Defendants*

20