# EXHIBIT 4

## BEFORE THE DELAWARE BOARD OF ACCOUNTANCY

IN RE:                   )      **CASE NOS. 04-04-09**

                               )

**RALPH V. ESTEP**        )

                               )      **DECISION AND ORDER**

**LICENSE NO. PA-0000023**    )

## NATURE OF THE PROCEEDINGS

Pursuant to due notice, a hearing was held before the Delaware Board of Accountancy ("Board") on May 18, 2011 at 9:00 a.m. concerning a disciplinary complaint against Ralph V. Estep ("Mr. Estep") at the Cannon Office Building, 861 Silver Lake Blvd, Dover, Delaware. In the complaint, the State of Delaware alleged that Mr. Estep conducted public accounting through his firm without a permit in violation of 24 *Del. C.* § 111(a) and continued to advertise his services as a public accountant despite his license being suspended in violation of 24 *Del. C.* §§ 106(b) and 110(a) and Board Rules 8.3 and 8.4. The State requested in the complaint that Mr. Estep's accounting license be revoked for the above violations.

Barbara Gadbois, Deputy Attorney General, presented the State's case. Mr. Estep was present and represented by Melvyn A. Woloshin, Esquire. Daniel M. Stevenson, Deputy Attorney General, advised the Board.

## SUMMARY OF THE EVIDENCE

### The State's Evidence

### State's Exhibit 1

|  | Page |
|---|---|
| State's Complaint | 1 |
| Division of Professional Regulation Complaint | 3 |
| Respondent's Response to the Complaint | 6 |
| Ralph Estep Firm License Information | 7 |
| Ralph Estep License Information | 8 |

|                          |                                                        |    |
|--------------------------|--------------------------------------------------------|----|
|                          | 2010-2011 Telephone Book Advertisement                 | 9  |
|                          | Printouts from Respondent's Website in August 2010      | 10 |
|                          | Statutes and Regulations                               | 42 |

**State's Exhibit 2**    Wilmington Yellow book with advertisement
**State's Exhibit 3**    Board of Accounting Order suspending Mr. Estep's License
**State's Exhibit 4**    Copy of Yellow book website page for Accountants
**State's Exhibit 5**    Customer Contract terms and conditions for Yellow Book

In addition to the documentary evidence, the Board considered the sworn testimony of live witnesses. The State's first witness was Ralph V. Estep. Mr. Estep was sworn and testified that his accounting license was suspended for a year by the Board of Accounting on September 17, 2009. He stated that he owns the firm of Ralph V. Estep which was issued a firm permit in July of 1986. He admitted that from 1999 through 2011, his firm's permit was lapsed. Mr. Estep added that he renewed his firm's permit in 2011 once he discovered that it had lapsed. Mr. Estep initially denied that he had practiced public accounting during the period that his firm's permit was lapsed. The definition of "public accounting" was read into the record:

> means the performance, or offer to perform, for a client or a potential client, by a person or firm holding itself out to the public as a permit holder, or 1 or more kinds of services involving the use of accounting or auditing skills, including the issuance of reports or financial statements, or of 1 or more kinds of management advisory, financial advisory or consulting services, or the preparation of tax returns or the furnishing of advice on tax matters.

Once the definition was read to him, Mr. Estep admitted that the work he was doing during the time his firm's permit was lapsed is included in that definition. Mr. Estep also admitted that he continued to advertise for the 2010-2011 term in the Wilmington Delaware Yellowbook which was admitted as State's Exhibit 2. When shown the advertisement on page 3 of the Yellowbook, Mr. Estep acknowledged that it

2

was his advertisement. He was also shown page 4 of the same Yellowbook and he admitted again that his name was included in the list of public accountants. Mr. Estep testified that he usually spent between fifteen and eighteen thousand dollars a year in advertising with Yellowbook. He went on to state that he advertises every year and that the current year's charge was fourteen thousand dollars. Mr. Estep stated that he did attempt to correct the advertisements, but the changes that he requested were not made by Yellowbook.

The State turned to State's Exhibit 1 at page 6 which was Mr. Estep's letter to the Division of Professional Regulation concerning the lapse of his firm's permit. Mr. Estep admitted that in the letter he stated the lapse was an oversight on his part. He also admitted that the date of the letter was July 10, 2009, it was on his letterhead, has the words "public Accountants" on it and had the abbreviations E.A. and P.A. on the letter. He further admitted that the letter listed the same complaint number as today's hearing. At the request of the State, Mr. Estep also read from the bottom of his letter which he admitted indicated he was an enrolled agent to represent taxpayers before the IRS, accredited business accountant, accredited tax advisor and accredited tax professional.

The State next turned to State's Exhibit 3 which was the written order from the Board of Accounting that suspended Mr. Estep's accounting license. The order was dated September 16, 2009. Mr. Estep admitted that the order suspended his license and spelled out that he could not engage in acts discreditable to the profession of accountancy or violate any of the provisions of Chapter 24, the Board of Accountancy Rules, or the Rules of Conduct of the Code of Professional Ethics of the American Institute of Certified Public Accountants.

3

The State turned to State's Exhibit 1 at page 10 through 41 which Mr. Estep identified as his business website on August 4, 2010. He also admitted that the abbreviations E.A. and P.A. were behind his name on the website. Mr. Estep was then asked to read the first paragraph of his website into the record which read:

> Ralph V. Estep E.A. P.A Accountants is a full service Delaware Accounting firm specializing in tax preparation and LLC/corporation formation. Unlike other smaller firms who specialize in only individual tax work or some small businesses, we offer a firm with over 40 years of experience and accept a much wider variety of clients. Our services include: tax planning services both domestic and international, tax preparation, bookkeeping, payroll, forensic accounting, probate accounting services, management services, and much more. We can assist you with computer automation services and website development.

Mr. Estep stated that those areas of accounting are covered by his firm. Mr. Estep described State's Exhibit 1 at pages 11 through 15 as his firm's offer to provide tax services for a variety of clients such as corporations, partnerships, international tax services and personal tax preparations. Mr. Estep admitted that as of August 4, 2010, he would have been the sole provider of these services with the exception of his employee, David Long, who has experience with foreign clients as well.

Mr. Estep stated that the paragraph on tax planning refers to planning and advice, not to the preparation of the documents in a transaction. He further stated he has gone out of house to get certain work done in this field if he is not qualified to do it. He also stated that his daughter, who is an employee of the firm, David Long, and himself can do tax planning.

Mr. Estep testified that the page concerning his advertising as a forensic accountant concerns testifying in court concerning accounting matters. He further

4

explained that he has testified in Superior and Family Court when accounting principles need to be explained, like in a divorce proceeding.

Mr. Estep testified that although he does advertise to do auditing, he has never done an audit in his career. Upon questioning, he admitted that he would have done auditing work back on August 4, 2010. Mr. Estep further explained that the paragraph on his website regarding financial statements concerned work done by his daughter back on August 4, 2010, but today both of them can do the work.

The State then referred to State's Exhibit 4. Mr. Estep admitted that this was a copy of the Yellowbook internet page with his name listed third from the top under accountants. He also admitted that this advertisement is the same as the current year.

**Respondent's Evidence**

Mr. Estep submitted the following documents into evidence:

**Respondent's Exhibit 1**     Corrected copy of advertisement in Yellowbook
**Respondent's Exhibit 2**     Corrected copy of 2nd advertisement in Yellowbook
**Respondent's Exhibit 3**     Settlement agreement between Yellowbook and Mr. Estep

In addition to the documentary evidence, the Board heard and considered sworn testimony on behalf of Mr. Estep. Ralph Estep himself was the first witness to testify in the Respondent's case. Mr. Estep remained under oath and testified that he did go to his website and attempted to take out any references to public accounting including taking anything out that used the abbreviation P.A.. However, Mr. Estep's opinion was that P.A. stands for Professional Association and not Public Accountant. He also believed that he could perform work such as forensic accounting and financial statements without

5

being a public accountant. However, Mr. Estep did admit that the P.A. should have been removed to do audits after his suspension.

Mr. Estep questioned about his firm permit lapsing. He testified that he is not sure how the oversight happened. He further stated that he never received any notice from the Board of Accounting, but when he discovered the lapse he corrected it. He went on to testify that it was not his intent to go without a permit.

Mr. Estep was directed to the Yellowbook advertisement in State's Exhibit 2. He testified that the advertisement in the book is not the one he requested. He then referred to Respondent's 1 which was the changes he requested when he spoke with the Yellowbook representative Larry Berman. Mr. Estep described Respondent's 1 as the changes he requested with Larry Berman with his signature at the bottom of the page. He explained that the lines crossing out P.A. and E.A. after his name and removing "probate accounting services" was his attempt to correct his advertisement concerning his year long suspension.

Mr. Estep next described Respondent's 2 as the other Yellowbook advertisement with the abbreviations E.A. and P.C. crossed out and the words "Accounting Resource Center" replacing the word "Accountants. " He went on to testify that he did not intend to violate the law with this advertisement and he believes that if his corrected advertisement was run, it would not have violated the code.

The next witness for the Respondent was Larry Berman. Mr. Berman was sworn and testified that he has worked for Yellowbook for 19 years. He went on to testify that he is the salesman who handles Mr. Estep's account with Yellowbook. He further testified that he was contacted by Mr. Estep concerning revising his advertisement. Mr.

6

Berman admitted that the changes Mr. Estep requested did not make it into the actual advertisement. Mr. Berman stated that he failed to take out the crossed out words in Respondent's 1 and 2. He also went onto to state that he did not show Mr. Estep a final version of the advertisement before he ran it. He stated that when Mr. Estep complained about the advertisement, he admitted to the company that it was his fault and that Mr. Estep should be refunded part of his money, which was done. Mr. Berman described Respondent's 3 as the written settlement for the mistake made by Yellowbook on Mr. Estep's advertisement.

Mr. Berman was questioned concerning the significance of listing Mr. Estep in the list of CPA's in the Yellowbook. Mr. Berman testified that the order of the list and the size of the font used would not have been anything Mr. Estep would have had any control over. Mr. Berman further stated that because Mr. Estep runs a large advertisement in the book, his name is automatically added to that list.

Under cross examination, Mr. Berman admitted that Mr. Estep never crossed out the words "public accountants" like he did other words on the corrected advertisement. Mr. Berman also admitted that he had no knowledge that Mr. Estep did not have an accounting license. He also admitted that Mr. Estep's account was a major account with him. Mr. Berman disagreed with the State's contention that Mr. Estep's listing was "a top placement" in reference to State's Exhibit 4. Mr. Berman stated that Mr. Estep's name is higher on the list due to his having a large ad and not top placement, which cost more to place.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

7

The Board has considered the sworn testimony and exhibits presented. The State has the burden of proving the claims set forth in the Complaint by a preponderance of the evidence.

In paragraph 4 of the Complaint, the State alleged that Mr. Estep had conducted public accounting through his firm without a permit in violation of 24 *Del.C.* § 111(a). The Board finds that the State met its burden of proof with respect to paragraph 4. As noted herein, Mr. Estep admitted that he had inadvertently allowed his firm's permit to lapse. Mr. Estep admitted this lapse both in a letter to the Division of Professional Regulation and in his testimony in this hearing.

In paragraph 5, the State alleged that Mr. Estep continued to advertise his services as a public accountant in the Wilmington Yellowbook for 2010-2011 despite his suspended permit in violation of 24 *Del. C.* §§ 106(b), 110(a) and Board Rules 8.3 and 8.4. The Board finds that the State has met its burden of proof with respect to paragraph 5. In support of this finding, the Board relies on Mr. Estep's admissions of his permit being suspended and the advertisement with the words "Public Accountants" under his name. The Board was not persuaded by Mr. Estep's attempt to change the advertisement because he did not cross out the words "Public Accountant" as he did other words in the form he gave Larry Berman. The Board finds that although Mr. Estep tried to correct the advertisement, he did not make a professional attempt and it fell short of correcting the advertisement. The Board finds that this was a lack of due diligence on Mr. Estep's part.

In paragraph 6, the State alleged that Mr. Estep continued to advertise his public accounting services of his firm in the Wilmington Yellowbook for 2010-2011 despite the lapse in his firm's permit for more than ten years in violation of 24 *Del.C.* § 111 (a) and

8

Board Rules 8.3 and 8.4.  The Board finds that the State has met its burden of proof with respect to paragraph 6. Again, the Board bases its finding on Mr. Estep's admissions of a lapsed permit and the fact that he attempted to correct his advertisement, but did not. Again, the Board finds this to be a lack of due diligence.

In paragraph 7, the State alleged that Mr. Estep advertised his services as a public accountant on his website despite the fact that his license was suspended in violation of 24 *Del. C.* § 106(b) and § 110(a) and Board Rules 8.3 and 8.4.  The Board finds that the State has met its burden of proof with respect to paragraph 7.  The Board bases this finding on Mr. Estep continuing to use the abbreviation P.A. after his name, representing himself as a Public Accountant during the time when his license was suspended.  Again, the Board was not persuaded by Mr. Estep's testimony regarding his attempts to correct his website because with due diligence, it could have been corrected.

In paragraph 8, the State alleged that Mr. Estep advertised the public accounting services of his firm on his website despite the ten year lapse in the firm's permit in violation of 24 *Del. C.*§ 111(a) and Board Rules 8.3 and 8.4.  The Board finds that the State has met its burden of proof with respect to paragraph 8.  Again, the Board finds that the website's continued use of P.A. behind Mr. Estep's name and his admitted lapse in firm permit were enough to meet the burden of proof.

Finally, in paragraph 9, the State alleged that Mr. Estep violated the Board's previous order by continuing to advertise his services as a public accountant during his period of suspension.  The Board finds that the State has met its burden of proof in regard to paragraph 9.  The Board finds that Mr. Estep violated section B of the previous order by violating provisions of Title 24 and the Board Rules of the Board of Accountancy

9

during his time of suspension. The Board also finds that Mr. Estep violated section F of the previous order by engaging in acts discreditable to the profession of accountancy. The Board finds this violation due to the unprofessional and sloppy manner in which Mr. Estep has attempted to comply with the previous order, which does speak well of a profession that is very much driven by precision and making sure things are correct.

Having found that the State met its burden of proof with respect to the various claims against Mr. Estep, it is incumbent up the Board to determine the appropriate sanctions. The Board took several factors into its decision concerning the proper sanction. First, the Board considered that Mr. Estep's accounting license has already been suspended in the previous order. Second, the Board considered Mr. Estep's failure to properly ensure that his advertisements where consistent with the suspension, which the Board finds to be sloppy and a serious lack of due diligence. The business of accounting is very exacting and depends on getting things correct. The fact that Mr. Estep's behavior was not a professional attempt at getting his advertisements into compliance gives the Board reason to be concerned about the threat Mr. Estep's practice may impose on the public. Given those factors, the Board finds that revocation of the accounting license of Mr. Estep is the only appropriate method that ensures the public will be protected.

## APPEAL RIGHTS

29 *Del. C.* § 10142 provides:

(a) Any party against whom a case decision has been decided may appeal such decision to the Court.

(b) The appeal shall be filed within 30 days of the day the notice of the decision was mailed.

(c) The appeal shall be on the record without a trial de novo. If the Court determines that the record is insufficient for its review, it shall remand the case to the agency for further proceedings on the record.

(d) The court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.

13

## ORDER

Having considered the evidence presented, and by a unanimous vote of the present members, the Delaware Board of Accountancy hereby orders as follows:

1.    The Board finds that the State did meet its burden of proof in the matter of Ralph V. Estep concerning the violations of Title 24 and the Board of Accountancy Rules.

2.    The Board has determined that the proper sanction for these violations is revocation of Ralph V. Estep's Accounting License.

IT IS SO ORDERED this 20th day of July, 2011.

DELAWARE BOARD OF ACCOUNTANCY

_____
Robert Mosch, Secretary (Presiding)
President

_____
Sharron Cirillo

_____
James A. Cohee

_____
Michael D. Wollaston

_____
Judith Scarborough

_____
Robert Paretta

11

Gary Pippen

Carmetah Murray

Carmetah Murray

Date mailed:_____

12

## <u>APPEAL RIGHTS</u>

29 *Del. C.* § 10142 provides:

(a) Any party against whom a case decision has been decided may appeal such decision to the Court.

(b) The appeal shall be filed within 30 days of the day the notice of the decision was mailed.

(c) The appeal shall be on the record without a trial de novo. If the Court determines that the record is insufficient for its review, it shall remand the case to the agency for further proceedings on the record.

(d) The court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.

13