# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS,<br><br>Defendants. | Case No. 6:22-cv-1518-RBD-LHP |

## CO-LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL

## ARGUMENT

Defendants agree that class treatment is proper. Their sole quibble is whether Plaintiffs are proper representatives. However, Defendants' attacks on typicality and adequacy defy binding precedent. Even if such arguments were cognizable, Co-Lead Counsel must be granted leave to find appropriate class representatives. *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1336, 1342 n. 11 (11th Cir. 2003) (reversing decertification based on class representative's inadequacy when the district court failed to allow substitution). Plaintiffs respectfully submit that Defendants' objections, which seek to delay certification rather than defeat it, should be overruled.

### I.    Plaintiffs Are Typical

**Edge is typical.** *Defendants defy Eleventh Circuit precedent* by suggesting Edge is atypical because he purchased his shares later in the Class Period—between corrective disclosures (DB14).[1] *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014) ("*Local 703*") (affirming typicality where plaintiff "purchased its shares late in the class period"). "Every investor who purchases at an inflated price – whether at the beginning, middle, or end of the inflationary period" are at risk of loss "when the truth underlying the misrepresentation comes to light." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011).[2] Edge is typical because his purchases before the final

---

[1] "DB" refers to Defendants' brief opposing class certification. ECF No. 116. "Edge," "Dennehy," and "Estep" refer to Plaintiffs Michael Edge, Michael J. Dennehy, and Ralph Estep, respectively. All emphasis is added and citations omitted unless otherwise noted.

[2] *See also In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *4 (S.D.N.Y. Sept. 29, 2015)

disclosure render him "similarly situated to those class members who purchased before that date." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 619 (M.D. Fla. 2006) (purchases after first corrective disclosure not atypical).

Defendants do not proffer a single case that holds otherwise. *Lundy v. Ideanomics, Inc.*, evaluated competing **lead plaintiff** motions and acknowledged that "post-disclosure purchases" do not "per se bar" a typicality finding, but held, prudentially, there was "no need to subject the class to these *potential* issues where there is *another* appropriate movant[.]" 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020); *contra Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *9 (S.D. Fla. Mar. 16, 2016) (transaction timing "does not…create fundamentally divergent interests with the putative class"). *Luczak v. Nat'l Bev. Corp.*, found typicality was unsatisfied because "[p]laintiff sold all his NBC shares … months before the series of partial corrective disclosures at issue," 548 F. Supp. 3d 1256, 1266 (S.D. Fla. 2021). Edge retained his shares through the end of the Class Period.[3]

**Dennehy is typical.** Dennehy's purchase of 20,000 Tupperware shares between

---

(the court is not "aware" of any case "holding that a lead plaintiff seeking class certification in a securities fraud suit fails to establish adequacy or typicality where that plaintiff made securities purchases after an alleged partial corrective disclosure but before the final corrective disclosure"); *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1061 (N.D. Cal. 2018) ("The weight of authority…'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.'") (collecting cases).

[3] Any concern about potential conflicts with Class members who purchased earlier in the Class Period is obviated because Estep's claims involve purchases made early in July 2021, before the first corrective disclosure. *See In re Internap Network Servs. Corp. Secs. Litig.*, 2012 U.S Dist. LEXIS 197368, at *12 (N.D. Ga. Aug. 22, 2012) (rejecting argument "that factual variation in the timing of stock purchases negates typicality"). Defendants' contention that Co-Lead Plaintiffs lack incentive to prove "misstatements preceding" the first corrective disclosure (DB12 n.4) is belied by Co-Lead Plaintiffs' expanded the Class Period to include those very statements.

the first and second corrective disclosures (which Defendants agree were not sold until after the Class Period) likewise does not render him atypical. *See* §I.A, *supra*.

**Defendants again defy Eleventh Circuit precedent** by asserting that Dennehy's use of an investment advisor is atypical. DB16. "The Eleventh Circuit [has] found that the use of investment advisors…d[oes] not defeat typicality." *Pub. Employees' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at \*5 (N.D. Ga. Nov. 28, 2022) (citing *Local 703*, 762 F.3d at 1260 ("neither representative's use of investment advisers warrants reversal"); *In re Vesta Ins. Grp. Sec. Litig.*, 1999 WL 34831475, at \*9-10 (N.D. Ala. Oct. 25, 1999) (using outside portfolio managers not atypical).[4] Cases appointing class representatives who relied on investment advisors are innumerable.

Defendants next posit that Dennehy's assignment revocation may be invalid which "may" render him atypical. DB13. As non-parties to the assignment Defendants lack "standing to challenge" it. *BAC Home Loans Servicing v. Albertson,* 2014 WL 637659, at \*1 (Del. Super. Ct. Feb. 10, 2014). Their challenge also fails as improperly speculative. *See Recoton*, 248 F.R.D. at 620. Moreover, the assignment was revoked.

---

[4] Defendants' two out-of-circuit cases concern **lead plaintiff** motions (not class certification) and are off point. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (purchase occurred after SEC investigation announced and the securities fraud complaint was filed, and plaintiff's investment advisor was Enron's largest institutional investor and designated a member to Enron's board). *Compare In re Caremark Int'l, Inc. Sec. Litig.*, 1996 WL 351182, at \*6 (N.D. Ill. June 24, 1996) (investor was inadequate because he relied on a third-party investment pool to purchase the stock) *with Local 703*, 762 F.3d at 1260 (use of investment advisers does not render class representative atypical); *see also Lagrasta v. First Union Secs., Inc.*, 2005 U.S. Dist. LEXIS 20207, at \*25-26 (M.D. Fla. Aug. 8, 2005) (appointing representative who understood his role and responsibilities and "relied upon the advice and recommendations of his brokers, and did no independent research before investing"). These cases are also inapposite because the investment advisor – Estep – will be a class representative. Defendants do not assert that Estep's reasons for purchasing Tupperware stock was atypical.

Dennehy and Estep are long-time business associates. Dennehy authorized Estep to make investments on his behalf, including stock purchases. When they became aware of this action, Dennehy assigned to Estep his rights to prosecute claims based on the purchases Estep had made on Dennehy's behalf. Later, Dennehy decided he wished to actively litigate his claims and filed a lead plaintiff application (quintessential class representative behavior). ECF No. 10. Once informed of that motion, Estep agreed to revoke the assignment. *See* Dennehy Tr. at 107:7-108:10; 109:8-110:7. Co-Lead Counsel then filed a joint stipulation stating that Dennehy and Estep wished to be co-lead plaintiffs, which Dennehy testified was a written revocation of the assignment. *Id.* at 108:14-25; ECF No. 26.[5] While Estep did not recall all specifics, he testified the assignment was revoked and "whatever documentation would be required, it was done." Estep Tr. at 69:4-11. Estep also understood the joint stipulation permitted Dennehy to prosecute his claims. *Id.* at 181:15-182:24.[6]

In short, Estep and Dennehy both agree the assignment was properly revoked prior to their appointment and that Dennehy is prosecuting his own claims. *See State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 2008 WL 11338611, at *4 (M.D. Fla. Apr. 1, 2008) (assignment "revoked by [parties'] mutual agreement"); *Wade Williams Distribution, Inc. v. ABC*, 2005 WL 774275, at *4 (S.D.N.Y. Mar. 29, 2005)

---

[5] *Prado v. Bush,* 221 F.3d 1266 (11th Cir. 2000) (DB13) is inapposite: where *Bush* vacated certification because certain "subclaims" in the class definition required class representatives typical of each subclaim, here *all three* class representatives have standing for the *same* Sections 10(b) and 20(a) claims.
[6] Many writings evidence that Dennehy is pursuing his claims *See* ECF Nos. 44 (FAC), 105 (SAC), 103 (Class Certification Mot.), 103-3 (Estep Decl.), 103-4 (Dennehy Decl.). And Plaintiffs are prepared, if need be, to submit communications between Co-Lead Counsel to the Court *in camera* confirming the assignment was revoked prior to the filing of the joint stipulation.

(assignor plaintiff could pursue lawsuit if assignment occurs before trial, there is no dispute between parties as to who may bring the claim, and defendant not prejudiced); *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) (same).[7]

Further, even if the Court determined Dennehy did not have standing at the time filed his lead plaintiff motion, he undeniably has standing under the operative complaint, *i.e.*, now, when the Court must determine standing for class certification.[8]

**Estep is typical**. On July 19, 2021, Estep purchased 4,000 Tupperware shares individually, and 300 shares on behalf of Michael Ward.[9] Estep sold his 4,000 shares on December 31, 2021, following Defendants' first partial corrective disclosure and additional misstatements. Estep held the 300 shares he purchased for Mr. Ward throughout the Class Period. Because Estep purchased shares that were held through corrective disclosures, he has standing to bring his claims.

Defendants do not dispute this.[10] Instead, they argue Estep cannot be a class

---

[7] Defendants' out-of-circuit case is inapposite. In *In re SLM Corp. Sec. Litig.*, the court held an investment advisor, who had been appointed lead plaintiff, lacked standing to bring its clients' claims because those rights had not been assigned at the time the advisor was appointed. 258 F.R.D. 112, 116 (S.D.N.Y. April 1, 2019). Here, Dennehy's assignment was revoked as of their September 2, 2022 stipulation at the latest—well before Dennehy was appointed a lead plaintiff on September 16, 2022. ECF Nos. 26, 29. Moreover, Defendants' conjecture that Estep "likely" lacked standing at the time of appointment (DB12) is baseless as Estep had standing to bring claims on behalf of other Tupperware shares, wholly separate from Dennehy's. *See* §I.C, *infra*.

[8] The cases Defendants cite for the proposition that standing is evaluated at the time the original complaint is filed, DB12, are distinguishable as they all involve situations in which the plaintiff did not have standing under the operative complaint. Here, there is no dispute that Dennehy (and Estep) had standing when they filed the FAC and have standing now.

[9] Mr. Ward validly assigned his claims to Estep, which Defendants do not dispute.

[10] Defendants concede Estep's records confirm he purchased 4,000 shares on July 19, 2021. DB15 fn. 5. Yet, they ask the Court to pretend the purchase never occurred because, they claim, Estep's lead plaintiff submission did not identify these shares. Defendants are wrong. The submission *did* identify that the 4,000 shares were purchased before November 3, 2021. ECF No. 17-2. Further, Estep's lead

5

representative under the operative complaint because he purportedly lacked standing when he was appointed Lead Plaintiff because he sold all the shares he purchased during the initial class period prior to any corrective disclosure. DB11-14.

*Defendants again defy Eleventh Circuit precedent*. In *MacPhee v. MiMedx Grp., Inc.*, the district court was reversed for erroneously holding the plaintiff lacked Article III standing because it sold its stock before the alleged corrective disclosure. 73 F.4th 1220, 1240 (11th Cir. 2023) (district court conflated an inadequately alleged "element of a cause of action and thus a failure to state a claim with the nonexistence of a 'Case' or 'Controversy' for purposes of Article III standing. But they are not the same").

Most importantly, Estep undisputedly had standing when the FAC expanded the start of the class period to May 5, 2021 – meaning, he has standing now, when the Court will actually determine who can be a class representative. Moreover, Defendants do not contest that this action has had an unbroken line of plaintiffs with standing (Edge before the FAC was filed, and Co-Lead Plaintiffs afterward). Thus, there is no risk Estep's standing creates unique defense or will be the focus of the litigation.

## II.   Plaintiffs Are Adequate

Edge understands the allegations, each Defendants' identity and position, how the fraud was revealed, the losses suffered by the Class, and his responsibilities as a

---

plaintiff motion was filed when the class period began on November 3, 2021, so the July 19, 2021 purchases were outside the relevant period. Moreover, Estep's trade confirmations produced during discovery, and discussed at length at deposition, prove that he made the purchase on July 19, 2021. "Plaintiff does not lack standing simply because of a scrivener's error." *Pucs, Inc. v. Hulu, Inc.*, 2021 WL 4780576, at *3 (C.D. Cal. Aug. 18, 2021).

class representative. Edge Tr. at 11:14-13:4; 16:22-18:4; 82:15-83:5. He reviewed his initial complaint either on the day it was filed (June 14, 2022) or before, consistent with his certification. *Id.* at 55:6-59:25. He regularly communicates with his attorneys, reviews case related documents and sat for his deposition. *Id.* at 66:11-67:25; 83:14-85:17; 145:6-16. He is aware of the case's procedural posture and relevant deadlines (*id.* at 83:14-85:17) and is prepared to testify at trial. *Id.* at 83:1-9.

Dennehy understands the allegations, each Defendants' identity and position, the case's procedural posture, his responsibilities as a class representative, and is prepared to testify at trial. Dennehy Tr. at 18:14-21:12; 24:4-23; 119:6-120:18; 127:25-128:17; 134:21-135:7; 137:14-16; 232:6-13. He reviewed the initial complaint before moving to be lead plaintiff, and the amended complaints and other case-related documents throughout the litigation. *Id.* at 48:11-20; 49:12-23; 50:15-24; 115:2-14; 232:14-233:11; 111:17-19 (when attorneys sent documents, "I would review them in a timely basis."). He has communicated with his attorneys throughout the litigation and sat for deposition. *Id.* at 116:21-117:6; 122:6-123:1; 129:11-130:13; 228:19-229:15.

Estep understands the allegations, each Defendants' identity and role, and the case's procedural history—including that Defendants filed a motion to dismiss and "Judge Roy Dalton did not accept it, ruled in our favor." Estep Tr. at. Estep Tr. at 11:22-13:18; 54:21-55:6; 55:1425. He read and is familiar with each of the three complaints. *Id.* at 41:6-25, 45:9-17, 52:8-13; *see* ECF No. 17-4 (certifying he read the initial Complaint prior to moving for lead plaintiff). Though Estep could not recall when he read the FAC, he testified that "Mr. Wernke has been very good at sending

7

me copies of everything before it's filed so I presume I did" and "I've asked questions about them certainly." Estep Tr. at 46:14-47:11. He also maintains a folder with all relevant case documents, including "copies of the complaints…interrogatories…our responses." *Id.* at 42:24-43:3. Estep knows the Class Period, that it was expanded in the FAC, and that the SAC was filed "to bring Michael Edge back into it as a plaintiff." *Id.* at 44:1-15, 52:18-22. He has regularly communicated with his attorneys, *id.* at 46:16-18, and sat for his deposition. Estep Tr. at 179:3-180:5. He understands his responsibilities as a class representative. *Id.* at 53:12-54:12.[11]

Plaintiffs are adequate. *In re Ins. Mgmt. Solutions Group, Inc., Sec. Litig.*, 206 F.R.D. 514, 516-18 (M.D. Fla. April 1, 2018) (reviewing complaint, discussions with attorneys, attending deposition, and providing discovery responses sufficient); *Shiqiong Huang v. Trinet HR III Inc.*, 2022 WL 13631836, at *9 (M.D. Fla. Oct. 21, 2022) (same).

Defendants claim (without citation) that Plaintiffs are inadequate because they did not personally investigate the case, speak to the confidential witness cited in the complaint, or independently verify their attorneys' work. DB17-18. That is not what the law requires. Where the class is represented by competent and zealous counsel, class certification should only be denied where the plaintiff's "participation is so minimal that they virtually have abdicated" the case to counsel. *Kirkpatrick v. J.C.*

---

[11] Defendants' cited cases are inapposite. DB17 citing *Eslava v. Gulf Tel. Co.*, 2007 WL 2298222, at *3 (S.D. Ala. Aug. 7, 2007) (plaintiffs lacked basic understanding of the levied violations); *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322 (M.D. Fla. 1997) (similar); *A Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*, 2015 WL 11051056, at *4 (S.D. Fla. Aug. 26, 2015) (similar).

*Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987). "[A] lack of specific knowledge about the claims will generally not warrant the denial of class certification where the representative's counsel can capably handle the litigation." *Haines v. Fid. Nat'l Title of Fla.*, 2022 WL 1095961, at *13 (M.D. Fla. Feb. 17, 2022) (collecting cases); *see Lyttle v. Trulieve, Inc.*, 2021 WL 3602996, at *7 (M.D. Fla. Aug. 13, 2021) ("relying on counsel to prosecute an action does not render a plaintiff inadequate."); *In re January 2021 Short Squeeze Trading Litig.,* 2023 WL 9035671, at *18 ("[c]lass representatives need not be psuedo-laywers"); *Benson v. Enter. Leasing Co.*, 2021 WL 2138781, at *7 (M.D. Fla. May 11, 2021) (plaintiff adequate where she met with her attorneys, sat for a deposition and understood "a lot of us were wronged").[12]

Defendants argue that Estep is inadequate because his "testimony might not be credible," citing certain disciplinary actions concerning allegations that Estep's tax advisory business was providing legal advice. DB18. Contrary to Defendants' mischaracterization, those actions resulted from a good faith dispute about work performed by attorneys under Estep's employ. Estep Tr. at 157:5-158:9; 162:17-165:1; 169:19-177:20. While Estep stipulated to a cease-and-desist to avoid further litigation, a court ruled that cease-and-desist violation resulted from a third-party's negligence. *Id*. at 157:5-158:9; 167:13-168:4; 172:24-173:25.

"Most courts have rejected the contention that a proposed representative is

---

[12] Relying on *Shiring v. Tier Techs., Inc.,* 244 F.R.D. 307 (E.D. Va. 2007), Defendants baldly assert the PSLRA "require[s]" plaintiffs to update their certifications. *Shiring* specified no such requirement, and is otherwise inapposite because in *Shiring*, unlike here, the plaintiff's certification completely misrepresented the dates and prices of his stock purchases. *Id.* at 317.

9

inadequate because of prior unrelated unsavory, unethical, or even illegal conduct." *See Newberg on Class Actions* § 3.68 (5th ed. 2015); *Gonzalez v. Cano Health, Inc.*, 2022 WL 18832150, at *4 (S.D. Fla. Dec. 22, 2022) (felony conviction did not defeat adequacy). Such inadequacy typically hinges on whether the representative has been criminally convicted of "serious financial crimes or crimes involving dishonesty." *Id*. Estep has not been accused of fraud, much less criminally convicted. Defendants offer no case in which a class representative was deemed inadequate due to a professional disciplinary action or identify how Estep's credibility could pose a unique defense. *See Turner v. Off. Depot, Inc.*, 2019 WL 11277045, at *3 (M.D. Ala. Oct. 25, 2019) ("[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class") (citation omitted).[13] The critical issue for an investor class representative in a fraud-on-the-market case is whether he purchased his shares during the Class Period. That is demonstrably true for Estep and Defendants to not dispute it.

### CONCLUSION

Co-Lead Plaintiffs respectfully request that the Court grant their motion.

---

[13] Defendants' cases are inapposite. *Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc.*, 2014 WL 12531512, at *3-4 (S.D. Fla. June 20, 2014) (plaintiff criminally prosecuted for Medicaid fraud, in danger of going bankrupt, and gave inconsistent statements during depositions); *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 669 (M.D. Fla. 2000) (plaintiffs lied on their applications, lied about their criminal record and admitted that they were fired after "flipping off" a customer); *Vincent v. Money Store*, 304 F.R.D. 438, 445 (S.D.N.Y. 2015) (plaintiff filed six bankruptcies including "bad faith" filings)

Dated: June 10, 2024

Respectfully submitted,

By:    */s/ Cullin Avram O'Brien*
Cullin Avram O'Brien
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: (561) 676-6370
Email: cullin@cullinobrienlaw.com

*Liaison Counsel for Plaintiffs and the Class*

Shannon L. Hopkins*
Gregory M. Potrepka*
Morgan M. Embleton*
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (212) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com

Jeremy A. Lieberman*
Michael Wernke*
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mjwernke@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165

11

Tel.: (212) 667-6484
Fax: (212) 667-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiff Ralph Estep*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East Suite 600
Los Angeles, CA 90067
Tel.: (310) 6928883
Email: lesley@portnoylaw.com

*Additional Counsel for Michael Edge*

*\*pro hac vice* forthcoming or submitted

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 10, 2024, I electronically filed the foregoing document with the Clerk of Court CM/ECF, which will send notice of this filing to counsel of record.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien

12