# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS, <br><br> Defendants. | Case No. 6:22-cv-1518-RBD-LHP |

# PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INCORPORATED MEMORANDUM OF LAW .........................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ...................................3

    A.    Procedural History Of The Litigation.................................................3

    B.    Summary Of Key Terms Of The Proposed Settlement ...................6

        1.    Conditional Class Certification ...............................................6

        2.    Relief to Class Members and Release of Claims ..................7

        3.    Class Notice and Settlement Administration ........................8

            a)    Notice .........................................................................8

            b)    Administration ...........................................................9

        4.    Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Awards .................................9

        5.    Objections ..............................................................................10

        6.    Opt Outs..................................................................................10

        7.    Termination of the Settlement...............................................11

        8.    No Admission of Liability .....................................................11

III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE............................................................................11

    A.    Courts Favor Settlements Of Complex Class Actions....................11

    B.    The Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations.................................14

    C.    The Settlement Amount is Fair, Adequate, and Reasonable .........................17

    D.    The Outcome of the Litigation Is Uncertain .................................18

IV.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE..................................................................20

V.    PROPOSED SCHEDULE OF EVENTS...................................................23

VI.   CONCLUSION......................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrens v. Wometco Enterprises*,
  899 F.2d 21 (11th Cir. 1990) ............................................................... 15

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fl. 1988) ...................................................... 2, 15

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .................................................... 13, 14

*Canupp v. Liberty Behavioral Health Corp.*,
  417 F. App'x. 843 (11th Cir. 2011) ..................................................... 14

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) .............................................................................. 12

*Cook v. Gov't Emples. Ins. Co.*,
  2020 U.S. Dist. LEXIS 111956 (M.D. Fl. Jun. 22, 2020) ................... 12

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ............................................................ 18

*Faught v. Am. Home Shield Corp.*,
  661 F.3d 1040 (11th Cir. 2011) .......................................................... 14

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ............................................... 13

*Francisco v. Numismatic Guar. Corp. of Am.*,
  2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ........................................ 15

*Fresco v. Auto Data Direct, Inc.*,
  No. 0361063, CIV-MARTINEZ, 2007 WL 2330895 (S.D. Fla. May
  14, 2007) ............................................................................................. 13

*Great Neck Cap. Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers,
  LLP*,
  212 F.R.D. 400 (E.D. Wisc. 2002) ...................................................... 20

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................................20

*Gutter v. E.I. Dupont De Nemours & Co.*,
1:95-cv-02152-ASG, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May
30, 2003) ...........................................................................................................18

*Hall v. Bank of Am., N.A.*,
2014 U.S. Dist. LEXIS 177155 (S.D. Fl. Dec. 17, 2014) ....................................19

*Hessefort v. Super Micro Computer, Inc.*,
2023 WL 7185778 (N.D. Cal. May 5, 2023)......................................................18

*Holman v. Student Loan Xpress, Inc.*,
2009 WL 4015573 (M.D. Fla. 2009) ..................................................................6

*In re Charter Commc'ns, Inc. Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) .....................................................2

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011) ............................................................... 15, 16

*In re Checking Account Overdraft Litig.*,
No. 10-163S, 2012 WL 4173458 (S.D. Fla. Sept. 19, 2012)...............................13

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)................................................................15

*In re Health Ins. Innovations Secs. Litig.*,
2021 WL 10486665 (M.D. Fl. Oct. 21, 2020) ...................................................17

*In re Health Ins. Innovations Secs. Litig.*,
2021 WL 1341881 (M.D. Fl. Mar. 23, 2021) ....................................................19

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
1994 WL 114580 (N.D. Ala. Apr. 1, 1994)........................................................13

*In re Skinner Grp., Inc.*,
206 B.R. 252 (Bankr. N.D. Ga. 1997) ...............................................................12

*In re Smith*,
926 F.2d 1027 (11th Cir. 1991).........................................................................14

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ..........................................................................12

*Leverso v. SouthTrust Bank*,
  18 F.3d 1527 (11th Cir. 1994) ............................................................. 12

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ..................................................... 12

*Millstein v. Holtz*,
  2022 U.S. Dist. LEXIS 233782 (S.D. Fl. Dec. 30, 2022) ..................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................. 21

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ......................................................... 18

**Statutes**

15 U.S.C. § 78u-4(a) ......................................................................... 9, 22

28 U.S.C. § 1775 .................................................................................... 9

Private Securities Litigation Reform Act of 1995 ........................ 9, 21, 23

Securities Exchange Act of 1934 ...................................................... 3, 18

**Rules**

Fed. R. Civ. P. 23 ......................................................................... *passim*

**Other Authorities**

*Manual For Complex Litigation* (Fourth) (2004) ............................... 20

*Newberg on Class Action* (4th ed. 2002) ................................ 11, 14, 16

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Michael J. Dennehy and Ralph Estep ("Lead Plaintiffs") and Plaintiff Michael Edge (collectively with Lead Plaintiffs, "Plaintiffs"), individually and on behalf of all Settlement Class Members[1], respectfully move for preliminary approval of a $21.75 million cash settlement (the "Settlement") resolving all claims in this securities fraud class action filed on behalf of all persons and entities that purchased or otherwise acquired Tupperware Brands Corporation ("Tupperware") Securities between May 5, 2021 and May 4, 2022, inclusive (the "Settlement Class Period"). This motion is supported by the accompanying memorandum of law, and the Joint Declaration of Michael J. Wernke and Gregory M. Potrepka (the "Joint Decl.").

## I.  <u>INCORPORATED MEMORANDUM OF LAW</u>

The Settlement Stipulation setting forth the terms of the Settlement is the result of extensive arms' length negotiations between highly experienced counsel, which included a full day mediation session before David Murphy of Phillips ADR Enterprises and ongoing settlement discussions for weeks thereafter. Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached to the Settlement Stipulation as Exhibit A: (1) preliminarily approving the

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, dated April 10, 2025 ("Settlement Stipulation"). Joint Declaration of Michael J. Wernke and Gregory M. Potrepka in Support of Preliminary Approval of Class Action Settlement ("Joint Decl."), Ex. 1.

proposed Settlement as set forth in the Settlement Stipulation; (2) appointing Epiq Class Action & Claims Solutions ("Epiq") as Claims Administrator; (3) approving the proposed form and manner of disseminating notice to the Settlement Class; (4) setting deadlines for the dissemination of notice, submission of proofs of claim, submission of requests for exclusion, submission of objections, the filing of Plaintiffs' motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for a compensatory award; and (5) setting a date for the final approval hearing.

The proposed $21.75 million Settlement is fair, reasonable, and adequate, representing approximately 11.4% of highest possible estimated damages. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542-543 (S.D. Fl. 1988); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at * 6 (E.D. Mo. June 30, 2005). The Parties reached the Settlement after almost three years of litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts; (ii) drafted three complaints, including the operative Second Amended Class Action Complaint ("SAC"); (iii) successfully briefed Defendants' motion to dismiss the SAC; (iv) pursued fact discovery, which included serving and responding to party discovery requests; (v) managing a team of attorneys who reviewed and analyzed approximately 535,000 pages of documents produced by Defendants and third parties; (vi) successfully moved for class certification; (vii) engaged and conducted extensive consultations in expert discovery, including consultation with experts on the issues of

consumer pricing, profitability, damages, loss causation, and the market efficiency of Tupperware's stock; (viii) retained specialized bankruptcy counsel to protect the Settlement Class's claims in connection with Tupperware's bankruptcy petition; (ix) drafted detailed mediation statements, which included voluminous exhibits addressing both liability and damages; (x) participated in a formal full day in-person mediation session before David Murphy of Phillips ADR Enterprises, and engaged in ongoing settlement discussions for several weeks thereafter; (xi) engaged in negotiations regarding the terms of the proposed Settlement; and (xii) worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly. The Settlement is, therefore, the result of arm's-length negotiations, conducted by well-informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members.

While Plaintiffs believe the merits of the case are strong, the proposed Settlement is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial and post-trial proceedings. Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Settlement Class Members, who will have a right to be heard at the Final Approval Hearing to be scheduled by the Court.

## II. SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History Of The Litigation

On June 14, 2022, Michael Edge filed a complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act for alleged

misstatements between November 3, 2021 and May 4, 20222. On September 16, 2022, the Court appointed Michael J. Dennehy and Ralph Estep as Lead Plaintiffs, and approved Pomerantz LLP and Levi & Korsinsky, LLP as Lead Counsel. Lead Plaintiffs filed their First Amended Class Action Complaint ("FAC") on November 30, 2022, which expanded the class period to May 5, 2021 to May 4, 2022. Specifically, the FAC alleged that Defendants made misleading statements concerning Tupperware's ability to maintain gross margins through price increases in the face of increasing costs. According to Lead Plaintiffs, the truth was partially revealed on November 3, 2021, when Tupperware announced Q3 2021 gross profits of only $247.9 million, or 65.5% of net sales, indicating that the Company had failed to increase prices to offset inflationary pressures. On this news, Tupperware's common stock price declined $4.54 or 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 on November 3, 2021. The stock price declined an additional 3.9% the following trading day to close at $18.19 for a total two-day decline of 22.5%. Plaintiffs further allege that the truth was revealed on May 4, 2022, when the Company announced its Q1 2022 results showing "eroded gross and operating margins" and Tupperware admitted that (i) "[p]rofitability was significantly impacted by persisting inflationary pressures and the latency between rising input costs and our decision to increase prices" and (ii) that the majority of the Company's price increases would not become effective until the second quarter and it "is the first time we've taken pricing actions in quite some time [in North America]." On this news, Tupperware stock plummeted 32.16%.

4

From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages. Defendants filed a motion to dismiss the FAC, which the Court denied on September 28, 2023 (ECF No. 85). On February 13, 2024, Plaintiffs filed the SAC, which added Michael Edge as an additional Plaintiff (ECF No. 105). Also on February 13, 2024, Plaintiffs filed their motion for class certification (ECF No. 103), which was fully briefed as of June 12, 2024.

In discovery, Plaintiffs served forty-three requests for production and three interrogatories on Defendants and thirty-five subpoenas *duces tecum* on third parties. As a result of these, Plaintiffs have received and reviewed more than 502,160 pages of documents from Tupperware, and over 35,620 pages of documents from third parties. Further, Defendants served forty-five requests for production and fourteen interrogatories on Plaintiffs, to which Plaintiffs responded.

On September 20, 2024, the Court granted Plaintiffs' motion for class certification, appointing Michael Edge as a class representative and requesting additional briefing on the adequacy and typicality of Plaintiffs Ralph Estep and Michael Dennehy (ECF No. 131). Also on September 20, 2024, Tupperware filed a notice of suggestion of bankruptcy (ECF No. 130). As a result of this filing and subsequent filings by the Settling Parties, the Court stayed this Action pending the Settling Parties' mediation. Later on September 20, 2024, the Court vacated its order granting class certification in light of the automatic stay triggered by Tupperware's notice of bankruptcy (ECF No. 132).

On February 5, 2025, the Settling Parties participated in a full-day in-person

mediation session presided over by David Murphy of Phillips ADR Enterprises. In advance of that session, the parties submitted lengthy opening and responsive mediation statements that were accompanied by appendices of exhibits. The session ended without any agreement being reached. The Settling Parties continued discussions with the mediator over the following weeks. On February 27, 2025, the mediator issued a double-blinded proposal to settle the Action and set a deadline for the Settling Parties to provide the mediator with their respective responses. On March 3, 2025, the Settling Parties agreed to the mediator's proposal, which was memorialized in a term sheet executed and finalized on March 7, 2025, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers.

### B.     Summary Of Key Terms Of The Proposed Settlement

#### 1.     Conditional Class Certification

"A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *2 (M.D. Fla. 2009). As noted above, the Court granted Plaintiffs' motion for class certification, thereafter vacating it on the technicality of Tupperware's bankruptcy. In connection with the Settlement, Plaintiffs seek—and Settling Defendants have consented to— certification conditioned on final approval of the Settlement, of the following Settlement Class:

> All Persons and entities who purchased or otherwise acquired Tupperware Securities between May 5, 2021 and May 4, 2022 inclusive. Excluded from the Settlement Class

are: (a) the Settling Defendants; (b) members of the immediate families of the Settling Defendants; (c) the subsidiaries and affiliates of the Settling Defendants; (d) any person who is an officer, director or controlling person of Tupperware; (e) any entity in which any Settling Defendant has a controlling interest; (f) the Settling Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class will be any person or entity who or which timely and validly seeks exclusion from the Settlement Class.

Consistent with the Court's prior order granting class certification, Plaintiffs contend that each of the elements of Rule 23(a) and (b)(3) have been satisfied, conditional findings for which are set forth in the Preliminary Approval Order.

### 2.    Relief to Class Members and Release of Claims

Defendants have agreed to pay $21,7500,000, as described more fully in the Settlement Stipulation, in return for which all claims that have been or could have been asserted in this Action against Defendants and "Released Parties" will be dismissed, barred, and released.

The monies will be deposited in an escrow account maintained by Huntington National Bank and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury.

If the Settlement is approved, none of the monies will revert to Settling Defendants or their insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than costs of notice will revert.

### 3.    Class Notice and Settlement Administration

#### a)    Notice

Within twenty-one (21) calendar days of Preliminary Approval, Lead Counsel, through the Claims Administrator, shall cause the Postcard Notice, substantially in the form annexed to the Settlement Stipulation, to be mailed, by first class mail, postage prepaid, to all Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through the Claims Administrator.  Within twenty-eight (28) calendar days of Preliminary Approval, Lead Counsel, through the Claims Administrator, will cause the Publication Notice to be published electronically once over a national newswire service, since the Internet is the medium most frequently accessed by investors, and is the most cost-effective.

The Long Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Long Notice, Proof of Claim, and Settlement Stipulation will also be posted on a website maintained by the Claims Administrator within twenty-one (21) calendar days following Preliminary Approval.

The Long Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. Plaintiffs respectfully request that the Court schedule the Final Approval Hearing for 100 days after entry of the Preliminary Approval Order. This will allow

8

mailing to be completed within twenty-one (21) days; Settlement Class Members to have approximately sixty (60) days to consider their options and, if they choose, to file objections or opt out of the Settlement Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the Parties to respond to such objections. Moreover, the Long Notice will set the date by which claims must be filed on the Settlement Fund.

### b) Administration

Following issuance of a Request for Proposal and competitive bids submitted by well-regarded class action claims administrators, Lead Counsel selected Epiq to administer the notice and process the claims for the Settlement. Epiq is well known and highly experienced in the administration of securities fraud class action settlements.

### 4. Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Awards

No later than thirty-five (35) calendar days prior to the Final Approval Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiffs' Compensatory Awards.[2] Those papers will detail reasons why the Settlement should be approved, as well as the extensive efforts Lead Counsel has undertaken on behalf of the Class (including a breakdown of the time and hourly rates of each attorney who

---

[2] The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to any "representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4).

contributed to the outcome). Papers will also be filed setting forth the time and efforts undertaken by Plaintiffs that also contributed to the outcome.

No less than seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for a compensatory award to Plaintiffs.

### 5. Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so twenty-one (21) calendar days prior to the Final Approval Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Any Settlement Class Member who does not file a timely written objection to the Settlement Stipulation shall be foreclosed from seeking any adjudication or review of the Settlement Stipulation by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in Tupperware Securities, as well as submit to the jurisdiction of this Court for possible deposition. These measures are intended to thwart "professional objectors" who appear from time to time in these actions.

### 6. Opt Outs

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Tupperware transaction documentation, postmarked no later than twenty-one days prior to the Final Approval Hearing. The opt out must be sent

to Lead Counsel, Settling Defendants' Counsel, and the Claims Administrator (but not the Court).

### 7.    Termination of the Settlement

Settling Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of shares elect to opt out of the Settlement Class. The threshold amount is set forth in a Supplemental Agreement that will not be filed with the Court unless Settling Defendants choose to exercise their right of withdrawal.

In the event the Court does not approve the Settlement or the Settlement does not become Final due to any appeals or Defendants' withdrawal from the Settlement, the Settling Parties will return to their respective positions prior to the Settlement, and the litigation will proceed apace.

### 8.    No Admission of Liability

By entering into the Settlement Stipulation, Settling Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.    Courts Favor Settlements Of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement,

they must request and obtain the Court's approval.  *See* Fed. R. Civ. P. 23(e).  Approval of a proposed settlement is within the Court's discretion and is to be exercised in conformity with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Indeed, "securities fraud class actions readily lend themselves to settlement." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).

Because this Circuit expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve a class settlement if the terms are "fair, adequate, reasonable, and not the product of collusion." *Cook v. Gov't Emples. Ins. Co*., 2020 U.S. Dist. LEXIS 111956, *16 (M.D. Fl. Jun. 22, 2020) (citing *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994)). Under Rule 23(e)(2), settlements may be approved if, as here, the class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C). *Id.*

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action. To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – first, requiring preliminary approval to determine whether to disseminate notice to the class and, second, holding a final approval hearing. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61

(Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The preliminary approval process requires the Court to determine whether: (1) the settlement has no obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Fresco v. Auto Data Direct, Inc.*, No. 0361063, CIV-MARTINEZ, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement") (internal citations omitted); *In re Checking Account Overdraft Litig.*, No. 10-163S, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

After preliminary approval, the class is notified of the settlement and the final approval hearing. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that notice issue and should schedule a final approval hearing.") (internal quotation omitted); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing at future date after class has

13

received notice). The preliminary approval process is not as rigorous and formal as the final approval process.[3]

This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (*Second*) (1985)). The proposed Settlement has no obvious deficiencies and falls within the reasonable range of possible approval. First, the Settlement is the culmination of vigorous arm's-length negotiations, which included both a formal mediation with an experienced and impartial mediator and extensive negotiations between well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation supports preliminary approval of the proposed Settlement. Therefore, the proposed Settlement satisfies Rule 23(e) and should be preliminarily approved.

**B.    The Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations**

When considering approval of a settlement, courts place considerable weight on the opinion of experienced and informed counsel. *See Canupp v. Liberty Behavioral*

---

[3] In the second step, the final approval of a class action settlement pursuant to Rule 23(e), the court "must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal citation omitted). Factors to consider are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming lower court's *Bennett* analysis). A district court's evaluation of the *Bennett* factors "will be overturned only upon a clear showing of abuse of discretion." *Id.* In evaluating the settlement, the court may rely on the judgment of experienced counsel in the case. *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

*Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988) aff'd sub nom. *Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (The court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel.) (internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of fairness" for settlements negotiated at arm's length by informed and experienced counsel. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Moreover, the Settling Parties reached the Settlement only after vigorously litigating and conducting discovery.  This was a hard-fought case, with three complaints, a motion to dismiss, and a contested motion for class certification.  The Settlement was reached only after the case was well into the discovery process, and after Defendants had produced over 500,000 pages of documents.  Thus, Lead Counsel and Plaintiffs were well aware of the claims, defenses and litigation risks by the time the Settlement was reached. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed

judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts).

Further, the Settlement has no obvious deficiencies.[4] The proposed Settlement was the result of arm's-length negotiations between highly experienced Lead Counsel and Settling Defendants' Counsel with the assistance of an experienced mediator. The Settling Parties engaged in a full day formal mediation and extensive subsequent settlement negotiations. In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Joint Decl., Exs. 2 and 3. In Lead Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted.

The adversarial process supports preliminary approval. *See Checking Account,* 275 F.R.D. at 662 (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

---

[4] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (4th ed. 1992).

### C.      The Settlement Amount is Fair, Adequate, and Reasonable

The proposed Settlement provides for an immediate, all cash recovery of $21.75 million to the Settlement Class. This favorable result is well-within the zone of reasonableness to warrant preliminary approval. Plaintiffs' damages expert estimates that if Lead Plaintiff fully prevailed on his alleged claims at both summary judgment and trial, and if the Court and jury accepted Plaintiffs' damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period, Plaintiffs' ***best case scenario***—the maximum aggregate, theoretical damages— would be approximately $190.6 million in damages. Under Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents approximately an approximately 11.4% recovery, which is well within the zone of reasonableness for a complex securities class action like this one. *See* Joint Decl., Ex at 4 (2024 NERA Report: median settlement for cases between 2015 and 2024 with NERA-defined investor losses between $50 and $99 million was 3.8%); Ex. 5, at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%); *In re Health Ins. Innovations Secs. Litig.*, 2021 WL 10486665, *23 (M.D. Fl. Oct. 21, 2020) (finding an 10% recovery to be a "within the range of reasonableness" to support preliminary approval of a securities class action settlement).

Additionally, all Settlement Class Members, including Plaintiffs, will be treated fairly and in a similar manner—each recovering their pro rata share of the Net Settlement Fund. Pro rata distribution "has frequently been determined to be fair,

adequate, and reasonable" in securities class actions like this one. *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, *7 (N.D. Cal. May 5, 2023) (collecting cases).

### D.    The Outcome of the Litigation Is Uncertain

Plaintiffs believe that the claims asserted in the SAC are meritorious and that the evidence developed to date supports their claims. However, Plaintiffs also acknowledge that continuing the Action poses significant risks and additional costs. "Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  This case involves complex issues of securities law pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (including, for example, market efficiency, loss causation, and damages).

Specifically, while Plaintiffs are confident that they could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the Settlement Class.  For example, Plaintiffs would need to prove that, during the Class Period, Defendants intended to mislead investors about Tupperware's ability to maintain gross margins through price increases in the face of increasing costs. Settling Defendants have argued, and would likely continue to argue, that Plaintiffs have not and cannot establish either an actionable false or misleading statement or omission or scienter when making the related alleged misstatements.  *See Gutter v. E.I. Dupont De Nemours & Co.*, 1:95-cv-02152-ASG, 2003 U.S. Dist. LEXIS

27238, at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement").

The Settlement provides the Settlement Class with certain relief, without the delay, expense, and uncertainty of further discovery, summary judgment, trial and post-trial proceedings all of which would have further reduced the remaining available insurance. The costs and risks associated with litigating this Action to a verdict, not to mention through the inevitable appeal, would have been high, and the process would require many hours of the Settling Parties and the Court's time and resources. *Millstein v. Holtz*, 2022 U.S. Dist. LEXIS 233782, *9-10, 18 (S.D. Fl. Dec. 30, 2022) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain…It is important to weigh the benefits Settlement Class Members will receive from the Settlement against the risks of moving forward and recovering nothing"); *In re Health Ins. Innovations Secs. Litig.*, 2021 WL 1341881, *8 (M.D. Fl. Mar. 23, 2021) ("despite Lead Plaintiff's confidence regarding the ultimate outcome, there is an inherent risk in any litigation but particularly so in securities class action litigation"); *Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, *16 (S.D. Fl. Dec. 17, 2014) ("even if plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years").

Furthermore, the fact that Tupperware filed for bankruptcy necessarily injects risks and uncertainty that could have jeopardized a recovery to the Settlement Class if this action was litigated through trial and appeals. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, *8 (S.D.N.Y. Dec. 18, 2019) ("the courts have repeatedly recognized that a defendant's bankruptcy in securities cases adds substantially to the difficulties and risks facing plaintiff's counsel in achieving a recovery for a class") (citing cases). Even if Plaintiffs had been successful in adjudicating the alleged fraud, there was risk any remaining Directors & Officers' insurance coverage could be disclaimed and that the Individual Defendants would not be able to satisfy a judgment. *See Great Neck Cap. Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wisc. 2002) ("plaintiffs face the risk that the source of the recovery, the directors' and officers' liability insurance once available to the individual defendants, could disappear if plaintiffs proved that the individual defendants' acts were intentional rather than reckless or negligent.").

Accordingly, the Settlement Amount provides a certain and favorable recovery for the Settlement Class in light of the risk and uncertainty of continued litigation.

## IV.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004).

To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, Lead Counsel through the Claims Administrator shall cause the dissemination of the Postcard Notice to all Persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through: (a) Tupperware's transfer records; and (b) via nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Lead Counsel through the Claims Administrator will also cause the Settlement Stipulation with exhibits, the Preliminary Approval Order, the Long Notice, and the Proof of Claim to be posted on the Claims Administrator's website and will disseminate the Publication Notice on a national news wire. The Long Notice, Publication Notice, and Postcard Notice are attached to the Settlement Stipulation as Exhibits B, C, and D.

The proposed Long Notice contains all of the information that Rule 23 of the Federal Rules of Civil Procedure and by the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires. Accordingly, in granting preliminary approval of the proposed Settlement, Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice to the Settlement Class. As the PSLRA requires, the Long Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages

per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make ... an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

The Long Notice also defines the Settlement Class, describes the Plan of Allocation, summarizes the nature, history and status of the Action, identifies the claims and issues in this Action, discusses the rights of persons who fall within the definition of the Settlement Class, and explains why Plaintiffs and Lead Counsel are proposing the Settlement. Further, the Long Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. For those Settlement Class Members who wish to participate in the Settlement, the Long Notice provides instructions on the timing and process for completing and submitting the Proof of Claim. The Publication Notice also informs Settlement Class Members that copies of the Long Notice and Proof of Claim may be obtained by writing the Claims Administrator or by accessing the documents on the Claims Administrator's website. Finally, the Long Notice sets forth the date, time, and place of the Final

Approval Hearing, the procedures for commenting on the Settlement, and the postal address for the Court, Lead Counsel, and Settling Defendants' counsel.

Thus, the proposed Long Notice provides all of the information the PSLRA requires.  The Court should approve the proposed form of Long Notice and direct that notice be given to the Settlement Class as proposed herein.

## V.  PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Final Approval Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Final Approval Hearing. | At least one hundred (100) calendar days after the Court preliminarily approves the Settlement |
| Mailing of Postcard Notice. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order. (the "Notice Date") |
| Publication of Summary Notice. | No later than twenty (28) calendar days after the Notice Date |
| Filing deadline for requests for exclusion. | Postmarked no later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than thirty-five (35) calendar days prior to the Final Approval Hearing. |
| Filing deadline for objections. | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Claims to be Filed | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application | Seven (7) calendar days prior to the Final Approval Hearing. |

| for attorneys' fees and reimbursement of expenses. | |
|---|---|

## VI.  CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class for Settlement purposes only; (3) certifying Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; and (4) setting a date for a Final Approval Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and Compensatory Awards to Plaintiffs.


Dated: April 14, 2025

Respectfully submitted,

By:    */s/ Cullin Avram O'Brien*
Cullin Avram O'Brien
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: (561) 676-6370
Email: cullin@cullinobrienlaw.com

*Liaison Counsel for Plaintiffs and the Class*

Shannon L. Hopkins*
Gregory M. Potrepka*
Morgan M. Embleton*
P. Cole von Richthofen*
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403

Stamford, CT 06905
Tel: (212) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com
Email: cvrichthofen@zlk.com

Jeremy A. Lieberman*
Michael Wernke*
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mjwernke@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel.: (212) 667-6484
Fax: (212) 667-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiff Ralph Estep*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East Suite 600
Los Angeles, CA 90067
Tel.: (310) 6928883
Email: lesley@portnoylaw.com

*Additional Counsel for Michael Edge*

*\*pro hac vice* forthcoming or submitted

## Local Rule 3.01(g) Certification

Plaintiffs conferred with the Defendants by email on Friday, April 11, 2025, and represent that Defendants do not oppose this motion.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2025, I electronically filed the foregoing document with the Clerk of Court CM/ECF, which will send notice of this filing to counsel of record.

<u>*/s/ Cullin Avram O'Brien*</u>
Cullin Avram O'Brien

28