## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS,<br><br>Defendants. | Case No. 6:22-cv-1518-RBD-LHP |

## PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.  INCORPORATED MEMORANDUM OF LAW .........................................1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT.......................3

   A.  Procedural History ..............................................3

   B.  Summary of Key Terms of the Proposed Settlement............................7

      1.  Relief to Class Members and Release of Claims ........................7

      2.  Class Notice and Settlement Administration ............................8

         a)  Notice ..................................................8

         b)  Administration ...........................................9

      3.  Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Plaintiffs' Compensatory Awards ................9

      4.  Objections ................................................9

      5.  Opt Outs ................................................10

      6.  Termination of the Settlement................................10

      7.  No Admission of Liability .....................................10

III.  PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION AND MOVE FOR SETTLEMENT APPROVAL .................................11

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .........................................................14

   A.  Rule 23(e)(2)(A) and (B): The Settlement Has No Obvious Deficiencies and is the Result of Vigorous Representation and Good Faith, Arm's-Length Negotiations by Experienced Counsel ...................................16

   B.  The Proposed Settlement Satisfies all *Bennett* Factors and Rule 23(e)(2) Requirements, and is Fair, Adequate, and Reasonable ......................18

      1.  *Bennett* Factors 1 and 4: The Likelihood of Success at Trial and Risks of Litigation Support Approval .......................................18

      2.  *Bennett* Factors 2 and 3, and Rule 23(e)(2)(D): The Range of Recovery, Point at Which a Settlement is Fair, Adequate and Reasonable, and the Equitable Treatment of Class Members Support Approval ................................................21

      3.  *Bennett* Factor 4 and Rule 23(e)(2)(C)(i): The Complexity, Expense, and Duration of Litigation Support Approval............22

      4.  *Bennett* Factor 5: The Settlement Class's Reaction ....................22

5.      *Bennett* Factor 6: The Stage of Proceedings Supports Approval .23

6.      Rule 23(e) (2)(C)(ii): The Proposed Distribution Method Is
Effective ...................................................................................23

7.      Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees .........24

8.      Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be
Identified...................................................................................25

V.      THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY
CERTIFIED .............................................................................................26

A.      The Settlement Class Meets Rule 23(a)'s Requirements.....................27

B.      The Settlement Class Meets Rule 23(b)(3)'s Requirements .................31

C.      Settlement Class Counsel Meets Rule 23(g)'s Requirements ..............32

VI.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND
METHOD OF CLASS NOTICE ...............................................................33

VII.    CONCLUSION .........................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................... 26, 31

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 15, 16

*Canupp v. Liberty Behavioral Health Corp.*,
   417 F. App'x. 843 (11th Cir. 2011) ....................................................................16

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ........................................................

*Cook v. Gov't Emples. Ins. Co.*,
   2020 U.S. Dist. LEXIS 111956 (M.D. Fl. Jun. 22, 2020) .....................................14

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986)...........................................................................27

*Dukes v. Air Can.*,
   2019 WL 8358700 (M.D. Fla. Sept. 6, 2019) *report and recommendation
   adopted*, 2019 WL 8358712 (M.D. Fla. Sept. 26, 2019) .......................................23

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007)...................................................................

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011)...........................................................................29

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
   644 F.3d 1263 (11th Cir. 2003)......................................................................11, 12

*Francisco v. Numismatic Guar. Corp. of Am.*,
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008)...........................................................16

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) .......................................................15

*Gonzalez v. Cano Health, Inc.*,
   2022 WL 18832150 (S.D. Fla. Dec. 22, 2022) .....................................................30

*Gordon v. Vanda Pharms. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ............................................. 23, 26

*Great Neck Cap. Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, LLP*,
  212 F.R.D. 400 (E.D. Wisc. 2002) ....................................................... 20

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................... 20

*Gutter v. E.I. Dupont De Nemours & Co.*,
  2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) ....................................... 19

*Hall v. Bank of Am., N.A.*,
  2014 WL 7184039 (S.D. Fl. Dec. 17, 2014) ...........................................................

*Hanley v. Tampa Bay Sports & Ent. LLC*,
  2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ....................................................... 25

*Hessefort v. Super Micro Computer, Inc.*,
  2023 WL 7185778 (N.D. Cal. May 5, 2023) ...........................................................

*In re Checking Account Overdraft Litig.*,
  2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) ....................................................... 15

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) ........................................................, 18

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005) .................................................................. 17

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*,
  2021 WL 1186838 (M.D. Fla. Mar.

*In re HealthSouth Corp. Sec. Litig.*,
  257 F.R.D 260 (N.D. Ala. 2009) ....................................................... 31

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) ....................................................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2018 WL 3475465 (S.D.N.Y. July 18, 2018) ....................................................... 31

*In re MacPhee*,
    73 F.4th 1220 (11th Cir. 2023) ................................................................ 11, 12, 13

*In re Recoton Corp. Sec. Litig.*,
    248 F.R.D. 606 (M.D. Fla. 2006) ...........................................................................27

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
    1994 WL 114580 (N.D. Ala. Apr. 1, 1994) .........................................................16

*In re XL Fleet Corp. Sec. Litig.*,
    2024 U.S. Dist. LEXIS 80758 (S.D.N.Y. April 30, 2024) ...................................25

*Intimo, Inc. v. Briefly Stated, Inc.*,
    948 F. Supp. 315 (S.D.N.Y. 1996) ......................................................................13

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014).................................................................................

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ....................................................................14

*Meza v. Marstiller*,
    2023 WL 2648180 (M.D. Fla. Mar. 27, 2023) .........................................................

*Millstein v. Holtz*,
    2022 WL 18024840 (S.D. Fl. Dec. 30, 2022) ......................................................19

*Monroe Cty. Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019)........................................................................28,

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...........................................................................................33

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................

*Pierre-Val v. Buccaneers, L.P.*,
    2015 WL 3776918 (M.D. Fla. June 17, 2015)....................................................15

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
    2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) .............................................27, 28

*Rensel v. Centra Tech, Inc.*,
   2 F.4th 1359 (11th Cir. 2021) ...................................................................

*Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,
   2024 WL 4003330 (N.D. Ala. Jan. 17, 2024) ........................................25

*State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*,
   2008 WL 11338611 (M.D. Fla. Apr. 1, 2008).......................................13

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005)...........................................................18

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016) .....................29

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016).......................................22

*Turner v. Off. Depot, Inc.*,
   2019 WL 11277045 (M.D. Ala. Oct. 25, 2019)......................................

*Wade Williams Distribution, Inc. v. ABC*,
   2005 WL 774275 (S.D.N.Y. April 5, 2005) ..........................................13

*Williams v. Mohawk Indus.*,
   568 F.3d 1350 (11th Cir. 2009)..............................................................28

*Wolff v. Cash 4 Titles*,
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012).......................................25

**Statutes**

15 U.S.C. § 78u-4(a)(4) .................................................................................9

15 U.S.C. §78u-4(a)(3)(B) ............................................................................4

15 U.S.C. §78u-4(a)(7) ...............................................................................34

28 U.S.C. § 1715.............................................................................................8

**Other Authorities**

*Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004) ...............33

*Newberg on Class Actions* § 3.68 (5th ed. 2015) ..........................................................30

**Rules**

Fed. R. Civ. P. 23(e) ........................................................................passim

Fed. R. Civ. P. 23(g) ..............................................................................27

Fed. R. Civ. P. 23(g)(1) ..........................................................................32

Rule 23(b)(3) .......................................................................... 26, 31, 32

## TABLE OF PROPOSED DEADLINES

| Event | Deadline for Compliance |
|-------|-------------------------|
| Date for Final Approval Hearing. | At least one hundred (100) calendar days after the Court preliminarily approves the Settlement |
| Mailing of Postcard Notice. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order (the "Notice Date") |
| Publication of Publication Notice. | No later than twenty (28) calendar days after the Notice Date |
| Filing deadline for requests for exclusion. | Postmarked no later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation, and for application for attorneys' fees and reimbursement of expenses. | No later than thirty-five (35) calendar days prior to the Final Approval Hearing. |
| Filing deadline for objections. | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Proof of Claim forms to be filed | No later than twenty-one (21) calendar days prior to the Final Approval Hearing. |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Approval Hearing. |

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Michael J. Dennehy and Ralph Estep ("Lead Plaintiffs") and Plaintiff Michael Edge (with Lead Plaintiffs, "Plaintiffs"), individually and on behalf of all Settlement Class Members consisting of all Persons and entities that purchased or otherwise acquired Tupperware Brands Corporation ("Tupperware") Securities between May 5, 2021 and May 4, 2022, inclusive (the "Settlement Class Period"),[1] respectfully move for preliminary approval of a $21.75 million cash settlement (the "Settlement").[2] This motion is supported by the memorandum of law below, the Joint Declaration of Michael J. Wernke and Gregory M. Potrepka (the "Joint Decl."), and exhibits thereto ("Ex.").

## I. <u>INCORPORATED MEMORANDUM OF LAW</u>

On July 9, 2025, the Court denied Plaintiffs' initial motion for preliminary Settlement approval, without prejudice, and with instruction to supplement and/or clarify matters in the papers. ECF 158 (the "July 9 Order"). Plaintiffs carefully considered the issues raised in the July 9 Order, applicable federal and local civil rules, and governing case law and renew their request for preliminary approval. The amended Settlement Stipulation filed herewith also corrects typographical errors.

Plaintiffs again believe the proposed $21,750,000 all-cash Settlement of a class

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Amended Stipulation of Settlement, dated July 21, 2025 ("Settlement Stipulation" or "Stip."). All emphasis is added and internal citations and quotations omitted unless otherwise noted.

[2] Excluded from the Settlement Class are: (a) the Settling Defendants; (b) members of the immediate families of the Settling Defendants; (c) the subsidiaries and affiliates of the Settling Defendants; (d) any person who is an officer, director or controlling person of Tupperware; (e) any entity in which any Settling Defendant has a controlling interest; (f) the Settling Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class will be any person or entity who or which timely and validly seeks exclusion from the Settlement Class.

action involving a bankrupt corporate defendant representing approximately 11.4% of highest possible estimated damages is an excellent result for the Settlement Class.

Moreover, the Settling Parties reached the Settlement after almost three years, with a full understanding of the benefits and risks of further litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts; (ii) drafted three complaints, including the operative Second Amended Class Action Complaint ("SAC"); (iii) successfully opposed Defendants' motion to dismiss; (iv) pursued fact discovery, which included serving and responding to party discovery requests; (v) managing a team of attorneys who reviewed and analyzed approximately 535,000 pages of documents; (vi) moved for class certification; (vii) engaged and consulted with experts on the issues of consumer pricing, profitability, damages, loss causation, and stock market efficiency; (viii) retained specialized bankruptcy counsel to protect the Settlement Class's claims in connection with Tupperware's bankruptcy petition; (ix) prepared detailed mediation statements, with voluminous exhibits, addressing both liability and damages; (x) participated in a formal full day in-person mediation session before David Murphy of Phillips ADR Enterprises, and continued discussions for several weeks thereafter; (xi) negotiated the terms of the proposed Settlement; and (xii) prepared the proposed Plan of Allocation in consultation with an experienced damages expert.

Plaintiffs submit the Settlement should be approved by the Court as it fairly, reasonably, and adequately balances the objective of securing the highest possible

recovery against the significant risk of a smaller recovery, or no recovery, if the Action continued. Thus, Plaintiffs seek entry of the proposed Preliminary Approval Order which will start the process of obtaining final approval of the settlement by:

1.     Preliminarily approving the proposed Settlement as set forth in the Settlement Stipulation dated July 21, 2025;

2.     Certifying the Settlement Class, and appointing Plaintiffs as class representatives and Lead Counsel as class counsel, for settlement purposes only;

3.     Approving the retention of Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Claims Administrator;

4.     Approving the proposed form, content, and method of dissemination of the Long Notice, Publication Notice, Postcard Notice, and Claim Form, substantially in the same form as Exs. B-E. annexed to the Settlement Stipulation as the best notice practicable and holding they comply with due process, Rule 23, and the PSLRA;

5.     Setting a schedule for: (i) providing notice to the Settlement Class; (ii) filing of Plaintiffs' motion for final approval of the Settlement and Lead Counsel's Fee and Expense Application, inclusive of any requested award to Plaintiffs; (iii) permitting Settlement Class Members to submit a claim, request to be excluded, or object to any part of the Settlement or Lead Counsel's Fee and Expense Application; and (iv) a date certain for the Final Approval Hearing.

## II.  SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History

On July 19, 2021, Estep purchased 4,000 Tupperware shares individually, and

300 shares for Michael Ward.[3] ECF 55-1; Joint Decl., Ex. 6. On November 4, 2021, Michael Dennehy purchased 20,000 Tupperware shares. ECF 12-1 and 12-2; Joint Decl., Ex. 7. Estep made Dennehy's purchase, with Dennehy's authorization, in his role as Dennehy's investment manager. ECF 116-13 at PageID 1519. On February 9, 2022, Michael Edge purchased 7,000 Tupperware shares. ECF 1; Joint Decl., Ex. 8.

On June 14, 2022, Michael Edge filed a complaint in the Southern District of New York against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") for alleged misstatements between November 3, 2021 and May 3, 2022. ECF 1. Pursuant to 15 U.S.C. §78u-4(a)(3)(B), Edge caused notice to be published via newswire service announcing commencement of the Action and notifying potential class members of the deadline to move for appointment as lead plaintiff pursuant to the PSLRA. ECF 12-3, 17-3. The case was transferred to this District on August 17, 2022. ECF 21.

On August 12, 2022, Dennehy assigned his claims relating to his investments in Tupperware securities to Estep. ECF 17-1; Joint Decl., Ex. 10. Subsequently, Dennehy decided to actively litigate his claims. On August 15, 2022, Dennehy and Estep filed motions for appointment as lead plaintiffs. ECF 10, 14. On September 2, 2022, counsel for Estep confirmed in writing to counsel for Dennehy that the assignment was void. Joint Decl. ¶3. Later on September 2, 2022, Dennehy and Estep filed a joint stipulation stating that they both desired to be appointed co-lead plaintiffs. ECF 26. On September

---

[3] Mr. Ward assigned his claims to Estep. *See* ECF 116-14; Joint Decl., Ex. 9.

16, 2022, the Court appointed Dennehy and Estep as Lead Plaintiffs, and approved Pomerantz LLP and Levi & Korsinsky, LLP as Lead Counsel. ECF 29.

Lead Plaintiffs filed their First Amended Class Action Complaint ("FAC") on November 30, 2022, expanding the class period to May 5, 2021 to May 4, 2022. ECF 44. The FAC alleges Defendants misrepresented Tupperware's ability to maintain gross margins through price increases in the face of increasing costs. *Id.* at ¶¶81-98, 107-16. The FAC alleges the truth was partially revealed on November 3, 2021, when Tupperware announced Q3 2021 gross profits of only $247.9 million, or 65.5% of net sales, indicating prices did not offset inflation. *Id.* at ¶¶100, 103. On this news, Tupperware's common stock price declined 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 on November 3, 2021. *Id.* at ¶106. Plaintiffs allege that the truth was further revealed on May 4, 2022, when Tupperware's Q1 2022 results showed "eroded gross and operating margins" and Defendants admitted that (i) "[p]rofitability was significantly impacted by persisting inflationary pressures and the latency between rising input costs and our decision to increase prices" and (ii) that most price increases would not become effective until the second quarter which was "the first time we've taken pricing actions in quite some time [in North America]." *Id.* at ¶¶117-25.  On this news, Tupperware stock plummeted 32.16%. *Id.* at ¶126.

From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages. Defendants filed a motion to dismiss the FAC, which the Court denied on September 28, 2023. ECF 85. On February 13, 2024, Plaintiffs filed the SAC, adding Michael Edge as a Plaintiff. ECF 105. Plaintiffs moved

for class certification the same day. ECF 103. Plaintiffs simultaneously submitted declarations stating, *inter alia*, that they understood they and their co-Plaintiffs were moving to be appointed class representatives, that they had no conflicts with any member of the class, and that they were committed to taking all steps necessary for the continued prosecution of this case for the benefit of absent class members. Joint Decl., Exs. 11-13.

In discovery, Plaintiffs served forty-three requests for production and three interrogatories on Defendants and thirty-five subpoenas *duces tecum* on third parties. As a result of these, Plaintiffs have received and reviewed more than 502,160 pages of documents from Tupperware, and over 35,620 pages of documents from third parties. Stip. at 3. Further, Defendants served forty-five requests for production and fourteen interrogatories on Plaintiffs, to which Plaintiffs responded. *Id*. at 3-4. Defendants also noticed the depositions of all three Plaintiffs, which Plaintiffs prepared and sat for.

On September 20, 2024, the Court granted Plaintiffs' motion for class certification, appointing Michael Edge as a class representative and requesting additional briefing on Lead Plaintiffs' adequacy and typicality. ECF 131. Also on September 20, 2024, Tupperware filed a suggestion of bankruptcy (ECF 130), triggering an automatic stay. Later on September 20, 2024, the Court vacated its order granting class certification in light of Tupperware's bankruptcy. ECF 131-132. As a result of subsequent filings by the Settling Parties, the Court also stayed this Action as to the Settling Defendants pending mediation. ECF 140, 144, 146, 148.

On February 5, 2025, the Settling Parties participated in a full-day in-person

mediation session presided over by David Murphy of Phillips ADR Enterprises. Stip. at 4. Before that session, the Settling Parties submitted lengthy opening and responsive mediation statements. *Id.* The session ended without any agreement. *Id.* The Settling Parties continued discussions with the mediator over the following weeks. *Id.* On February 27, 2025, the mediator issued a double-blinded proposal to settle the Action and set a deadline for the Settling Parties to provide the mediator with their respective responses. *Id.* On March 3, 2025, the Settling Parties agreed to the mediator's proposal, and subsequently negotiated and executed the Settlement Stipulation. *Id.* at 5.

On April 14, 2025, Plaintiffs moved for preliminary approval of the Settlement. ECF 153. On July 9, 2025, the Court denied the motion, without prejudice, and with instruction to address "all issues" in its July 9 Order and any others "relevant to the resolution of a motion for preliminary approval of a class action settlement[.]" ECF 158 at 5. Plaintiffs now renew their motion in compliance with the July 9 Order, and submit an amended Settlement Stipulation and exhibits thereto correcting typographical errors such as internal references to the "Settling Defendants."

## B. Summary of Key Terms of the Proposed Settlement

### 1. Relief to Class Members and Release of Claims

The Settling Defendants agreed to pay $21,750,000, all cash, in return for a release of claims that have been or could have been asserted in this Action. The Settlement is "non-reversionary"—if the Settlement is approved, no amount of the Settlement Amount will revert to Settling Defendants or their insurance carriers.

7

**2. Class Notice and Settlement Administration**

    **a) Notice**

Within twenty-one (21) calendar days of the Preliminary Approval Order, the Claims Administrator shall cause the Postcard Notice, substantially in the form annexed to the Settlement Stipulation, to be mailed to all Settlement Class Members who can be identified with reasonable effort. Within twenty-eight (28) calendar days of Preliminary Approval, Lead Counsel shall cause the Publication Notice to be published electronically once over a national newswire service, since the Internet is the medium most frequently accessed by investors, and is the most cost-effective.

The Long Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed Compensatory Awards. A copy of the Long Notice, Proof of Claim, and Settlement Stipulation will be posted on a website maintained by the Claims Administrator.

The Long Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to, or opting out of, the Settlement. Plaintiffs request that the Court schedule the Final Approval Hearing for 100 days after entry of the Preliminary Approval Order. This will allow: mailing to be completed within twenty-one (21) days; Settlement Class Members to have approximately sixty (60) days to submit a Claim, object, opt out, or do nothing; CAFA notice pursuant to 28 U.S.C. § 1715; and briefing for final approval and the Fee and Expense Application.

### b) Administration

Following issuance of a Request for Proposal and competitive bids submitted by well-regarded class action claims administrators, Lead Counsel selected Epiq to administer the notice and process the claims for the Settlement. Joint Decl. ¶2. Epiq is a highly experienced class action settlement administrator. Joint Decl., Exs. 14–15.

### 3. Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Plaintiffs' Compensatory Awards

No later than thirty-five (35) calendar days prior to the Final Approval Hearing, Plaintiffs will move for final approval of the Settlement and Plan of Allocation and Lead Counsel will submit their Fee and Expense Application, inclusive of any proposed Compensatory Award to Plaintiffs.[4] Those papers will detail reasons why the Settlement should be approved, as well as the extensive efforts Lead Counsel (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome). No less than seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel may submit reply papers in further support of such motions.

### 4. Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so twenty-one (21) calendar days prior to the Final Approval Hearing and send copies of such objections to the Court and designated counsel for the Settlement Class and the Settling Defendants. Any Settlement Class Member who does not file a

---

[4] The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to any "representative party serving on behalf of [the] class." 15 U.S.C. § 78u-4(a)(4).

timely written objection to the Settlement Stipulation shall be foreclosed from seeking any adjudication or review of the Settlement Stipulation by appeal or otherwise. To ensure the legitimacy of any such objections, Settlement Class Members must file documents evidencing transactions in Tupperware Securities.

### 5. Opt Outs

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Tupperware transaction documentation, postmarked no later than twenty-one days (21) prior to the Final Approval Hearing. The opt out must be sent to Lead Counsel, Settling Defendants' Counsel, and Epiq (but not the Court).

### 6. Termination of the Settlement

Settling Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a negotiated threshold of Tupperware's outstanding shares elect to opt out of the Settlement Class. The threshold amount is set forth in a Supplemental Agreement that will not be filed with the Court unless Settling Defendants choose to exercise their right of withdrawal. In the event the Court does not approve the Settlement or the Settlement does not become effective, the Settling Parties will return to their respective positions prior to the Settlement.

### 7. No Admission of Liability

By entering into the Settlement Stipulation, Settling Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

### III. PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION AND MOVE FOR SETTLEMENT APPROVAL

To establish standing under Article III of the United States Constitution, a plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *In re MacPhee*, 73 F.4th 1220, 1239 (11th Cir. 2023) (finding plaintiff's standing in securities class action). Courts assess standing "at the time which the plaintiff's complaint is filed." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 644 F.3d 1263, 1275 (11th Cir. 2003). In securities fraud claims brought under the Exchange Act, a plaintiff's allegation that "it suffered a decrease in the value" of its securities caused by or fairly traceable to an alleged misstatement satisfies Article III. *MacPhee*, 73 F.4th at 1240.

Here, all three Plaintiffs alleged, in each complaint they filed, purchases of Tupperware securities during the Settlement Class Period at prices artificially inflated by the Defendants' false and misleading statements, and that they were damaged thereby. *See* ECF 1 at ¶¶11, 47, 50; ECF 44 at ¶¶19-20, 147; ECF 105 at ¶¶19-21, 148; *see also* Joint Decl., Exs. 6-8, 16-17 (detailing Plaintiffs' transactions). Under *MacPhee*, Plaintiffs' allegations in all three complaints must be accepted as true and suffice to establish Article III standing at the time the respective complaints were filed.

Edge's standing has never been challenged in this litigation. However, in an abundance of caution and to assure the Court of Plaintiffs' standing, Plaintiffs address a point of confusion that arose at class certification regarding the assignment of claims

that was signed by Dennehy (ECF 17-1; Joint Decl., Ex. 10), and then revoked by Estep, prior to when Lead Plaintiffs filed the FAC (and, therefore by necessity, before Plaintiffs filed the operative SAC). The assignment was executed by Dennehy in favor of Estep on August 12, 2022. *Id.* At class certification, Defendants focused on language in the assignment stating that it "may not be revoked without written consent of Ralph Estep." ECF 17-1; Joint Decl., Ex. 10. Defendants contended that if the assignment had not been timely revoked, then Dennehy "may not have standing[.]" ECF 116 at 13. Defendants (wrongly) contended that the time period to assess standing is when a lead plaintiff motion is filed. *Id.* at 12-13. Conversely, Defendants contended that if the revocation was effective, Estep lacked standing because the only other shares asserted in Estep's initial Certification Pursuant to the Federal Securities Laws (ECF 17-4) were sold before an alleged corrective disclosure. ECF 116 at 13. Defendants ignored 400 shares that Estep bought for Mr. Ward during the Settlement Class Period. Defendants' standing challenges were misguided for two reasons.

**First**, Defendants' focus on lead plaintiff motions was legal error. Courts evaluate standing "as of the time" a plaintiff's "complaint is filed." *MacPhee*, 73 F.4th at 1239; *Focus on the Family*, 344 F.3d at 1275.[5] When lead plaintiff motions were filed, Edge was the only plaintiff of record and only class member to have filed a complaint. Edge's standing cannot be, and never has been, disputed. *MacPhee*, 73 F.4th at 1240.

---

[5] Although standing must exist when a complaint is filed, it "does not have to be maintained throughout all stages of litigation." *MacPhee*, 73 F.4th at 1239.

When each amended complaint was filed, the assignment had been revoked, and Dennehy had standing to pursue his claims. For the avoidance of doubt, on September 2, 2022, Pomerantz LLP, as Estep's attorney-in-fact, confirmed in writing to Levi & Korsinsky, LLP, counsel for Dennehy, that the assignment was void. Joint Decl. ¶3. Then, later on September 2, 2022, co-lead counsel filed a joint stipulation stating that Dennehy and Estep wished to be co-lead plaintiffs. ECF 26. Dennehy and Estep also jointly filed the FAC (and the SAC) together, thereby acknowledging that each was entitled to prosecute his respective rights individually and on behalf of the class. Accordingly, Estep fully revoked the assignment in multiple writings and Dennehy had standing when filing the FAC, the SAC, and now. *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 2008 WL 11338611, at *4 (M.D. Fla. Apr. 1, 2008) (assignment "revoked by [parties'] mutual agreement[]"); *Wade Williams Distribution, Inc. v. ABC*, 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005) (assignor plaintiff could pursue lawsuit if assignment occurs before trial, there is no dispute between parties as to who may bring the claim, and defendant not prejudiced); *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) (same).

**Second**, Defendants' standing analysis for Estep disregarded the shares from Mr. Ward which were purchased during the Settlement Class Period and held through both corrective disclosures (and Mr. Ward assigned his claims to Estep). Even if Defendants had been correct—that Estep sold all shares before an alleged corrective disclosure—their argument that this divested him of standing contravened *MacPhee*.

*MacPhee*, 73 F.4th at 1240. *MacPhee* analyzed this exact assertion and rejected it because it conflates the "failure to adequately allege an element of a cause of action" (here, purportedly, loss causation) with "the nonexistence of a Case or Controversy for purposes of Article III standing." *Id.* Thus, Estep has standing.

## IV.  <u>PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE</u>

Federal Rule of Civil Procedure 23(e) requires court approval to settle a class action. Fed. R. Civ. P. 23(e). "Public policy strongly favors the pretrial settlement of class action lawsuits." *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009). Further, "securities fraud class actions readily lend themselves to settlement." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988).

"Because this Circuit expresses a strong preference towards settlement of class litigation, if compliant with the requirements of Rule 23, courts should approve a class settlement if the terms are fair, adequate, reasonable, and not the product of collusion." *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, at *16 (M.D. Fl. Jun. 22, 2020). Under Rule 23(e)(2), settlements are approved if, as here, the class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C). *Id.*

Rule 23(e) requires that class members be provided notice of the proposed dismissal or compromise of a class action. Thus, courts take a "two-step" approach: first, requiring preliminary approval to determine whether to disseminate notice to the

class and, second, holding a final approval hearing. *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step settlement process is appropriate).

The preliminary approval process requires the Court to determine whether: (1) the settlement has no obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (settlement "should be preliminarily approved if it is within the range of possible approval" meaning "there is probable cause to notify the class of the proposed settlement"); *In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) (approval appropriate where settlement resulted from "good faith negotiations," "there are no obvious deficiencies" and "falls within the range of reason.").

When determining whether to approve a class action settlement, courts in the Eleventh Circuit generally also consider the following six factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. A full analysis of these factors is unnecessary at preliminary approval. Although some courts hold that *Bennett* does not apply, *see, e.g., Pierre-Val v. Buccaneers, L.P.*, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness

15

of the proposed settlement on the basis of the written submissions"), based on the Court's ruling, Plaintiffs review the *Bennett* factors herein for completeness.

After preliminary approval, the class is notified of the settlement and the final approval hearing is set. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation" is granted "the court should direct that notice issue and should schedule a final approval hearing."); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing after notifying the class).

The Settlement here warrants preliminary approval as it is free from obvious deficiencies and is the culmination of vigorous arm's-length negotiations, including both a full-day adversarial mediation before an experienced and impartial mediator and extensive negotiations between well-informed and experienced counsel. The Settlement is also fair, reasonable, and adequate because, as discussed more below, it satisfies the remaining Rule 23(e)(2) factors and the *Bennett* factors.

**A. Rule 23(e)(2)(A) and (B): The Settlement Has No Obvious Deficiencies and is the Result of Vigorous Representation and Good Faith, Arm's-Length Negotiations by Experienced Counsel**

When considering settlement approval, courts place considerable weight on opinions of experienced and informed counsel. *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011) ("absent fraud, collusion, or the like, a district court should be hesitant to substitute" its judgment for counsel's); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable

provides strong evidence" in favor of settlement approval giving "great weight" to experienced counsel's recommendations). Thus, "a presumption of fairness" attaches for settlements negotiated at arm's length by informed and experienced counsel. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Here, the Settling Parties reached the Settlement only after vigorous litigation and discovery. This was a hard-fought case, with three complaints, a contested motion to dismiss, and a contested motion for class certification. The Settlement was reached only after the case was well into the discovery process, and after Defendants had produced over 500,000 pages of documents. *See In re Health Ins. Innovations Secs. Litig.*, 2020 WL 10486665, at *7 (M.D. Fl. Oct. 21, 2020) *report and recommendation adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020) ("*Health Ins. Innovations I*") (finding "the first prong, Rule 23(e)(2)(A), [] satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class"). As such, Lead Counsel and Plaintiffs were well aware of the claims, defenses and litigation risks when agreeing to the Settlement. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents and consultation with relevant experts).

The Settlement also has no obvious deficiencies. The proposed Settlement was the result of arm's-length negotiations between highly experienced Lead Counsel and Settling Defendants' Counsel with the assistance of an experienced mediator. The Settling Parties engaged in a full day formal mediation and extensive subsequent settlement negotiations. *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*,

2023 WL 7180604, at *2 (N.D. Ala. Aug. 25, 2023) (mediation with Mr. Murphy supported proposed settlement's adequacy). In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Joint Decl., Exs. 2 and 3. In Lead Counsel's view, the Settlement provides an excellent result for the Settlement Class, especially considering the risk of recovering even less as the litigation continued and the insurance policies were further depleted. Moreover, the adversarial process further supports preliminary approval. *See Checking Account,* 275 F.R.D. at 662 (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties" and able counsel through a qualified mediator).

Accordingly, the Settlement satisfies Rule 23(e)(2)(A) and (B).

**B. The Proposed Settlement Satisfies all *Bennett* Factors and Rule 23(e)(2) Requirements, and is Fair, Adequate, and Reasonable**

**1. *Bennett* Factors 1 and 4: The Likelihood of Success at Trial and Risks of Litigation Support Approval**

Plaintiffs believe the SAC's claims are meritorious and the evidence adduced to date supports their claims. However, Plaintiffs also acknowledge that continuing the Action poses significant risks and additional costs. "[T]here is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005). This case involves complex issues of securities law, an extensive record, and a bankrupt defendant. It is extremely risky.

Specifically, while Plaintiffs are confident that they could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for the Settlement Class. For example, Plaintiffs would need to prove that, during the Settlement Class Period, Defendants intended to mislead investors about Tupperware's ability to maintain gross margins through price increases in the face of increasing costs. Settling Defendants have argued, and would likely continue to argue, that Plaintiffs have not and cannot establish either an actionable false or misleading statement or omission or scienter when making the related alleged misstatements. *See Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement").

The Settlement provides certain relief, without the delay, expense, and uncertainty of further discovery, summary judgment, trial and post-trial proceedings all of which would have further reduced the remaining available insurance. The risks and costs (both in time and money) associated with litigating this Action to a verdict, and an inevitable appeal, would have been inordinately high. *Millstein v. Holtz*, 2022 WL 18024840, at *3, *6 (S.D. Fl. Dec. 30, 2022) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks" could "overwhelm any potential benefit the class could hope to obtain…It is important to weigh the benefits Settlement Class Members will receive from the Settlement against the risks of moving forward and recovering nothing"); *In*

*re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ("*Health Ins. Innovations II*") ("despite Lead Plaintiff's confidence regarding the ultimate outcome, there is an inherent risk in any litigation but particularly so in securities class action litigation"); *Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *4 (S.D. Fl. Dec. 17, 2014) ("even if plaintiffs were to prevail, class certification proceeding, a class trial and the appellate process could go on for years").

Furthermore, the fact that Tupperware filed for bankruptcy necessarily injects risks and uncertainty that could have jeopardized a recovery to the Settlement Class if this action was litigated through trial and appeals. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *8 (S.D.N.Y. Dec. 18, 2019) ("the courts have repeatedly recognized that a defendant's bankruptcy in securities cases adds substantially to the difficulties and risks facing plaintiff's counsel in achieving a recovery for a class") (citing cases). Even if Plaintiffs had been successful in adjudicating the alleged fraud, there was risk any remaining Directors & Officers' insurance coverage could be disclaimed and that the Settling Defendants would not be able to satisfy a judgment. *See Great Neck Cap. Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wisc. 2002) ("plaintiffs face the risk that the source of the recovery, the directors' and officers' liability insurance once available to the individual defendants, could disappear if plaintiffs proved" fraud rather than negligence).

Accordingly, the Settlement Amount provides a certain and favorable recovery for the Settlement Class in light of the risk and uncertainty of continued litigation.

**2.** *Bennett* **Factors 2 and 3, and Rule 23(e)(2)(D): The Range of Recovery, Point at Which a Settlement is Fair, Adequate and Reasonable, and the Equitable Treatment of Class Members Support Approval**

The proposed Settlement provides for an immediate, all cash recovery of $21.75 million to the Settlement Class. This favorable result is well within the zone of reasonableness to warrant preliminary approval. Plaintiffs' damages expert estimates that if Lead Plaintiffs fully prevailed on their alleged claims at both summary judgment and trial, and if the Court and jury accepted Lead Plaintiffs' damages theory (including proof of loss causation, which would be hotly contested) over the entire Settlement Class Period, Plaintiffs' ***best case scenario***—the maximum aggregate, theoretical damages—would be approximately $190.6 million in damages. Under Plaintiff's estimated best-case scenario, assuming a 100% claims take rate and no disaggregation of confounding information, the Settlement represents an approximately 11.4% recovery, which is three times that of similarly sized cases and, therefore, well within the zone of reasonableness for a complex securities class action like this one. *See* Joint Decl., Ex. 4 at 26 (2024 NERA Report: median settlement for cases between 2015 and 2024 with investor losses between $50 and $99 million was 3.8%); Ex. 5 at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%); *Health Ins. Innovations I*, 2020 WL 10486665, at *8 (10% recovery was "within the range of reasonableness").

Additionally, consistent with Rule(e)(2)(D), all Settlement Class Members, including Plaintiffs, will be treated fairly and in a similar manner—each recovering their *pro rata* share of the Net Settlement Fund. *Pro rata* distribution is "fair, adequate,

and reasonable" in securities class actions. *Hessefort v. Super Micro Computer, Inc.*, 2023 WL 7185778, at *7 (N.D. Cal. May 5, 2023) (collecting cases).

### 3. *Bennett* Factor 4 and Rule 23(e)(2)(C)(i): The Complexity, Expense, and Duration of Litigation Support Approval

The complexity, expense, and likely duration of securities fraud actions like this one weigh heavily in favor of settlement. *See e.g., Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008) ("Securities litigation generally involves complex issues of fact and law, and this case is no exception.") *id.* ("The reaction of a jury to [] expert testimony [in securities cases] is highly unpredictable"). If the Settling Parties were to continue litigating this matter, it would require addressing complex legal issues such as scienter and loss causation, the latter of which involves highly technical concepts like market efficiency and price impact, and would necessitate costly expert testimony. *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (granting final approval and noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class."). Thus, this factor supports approval.

### 4. *Bennett* Factor 5: The Settlement Class's Reaction

As the Settlement Class has yet to receive notice of the Settlement, it is premature to evaluate their reaction. However, no putative Settlement Class Member objected to Plaintiff's first motion for preliminary approval, and no Settlement Class Member has indicated to Plaintiffs that they intend to oppose the Settlement.

**5. *Bennett* Factor 6: The Stage of Proceedings Supports Approval**

Before agreeing to the Settlement, Plaintiffs had conducted extensive investigation and discovery, each had been deposed, and Lead Counsel had noticed sixteen depositions. Plaintiffs' Motion for Class Certification was also fully briefed and would have been granted in part but for Tupperware's Bankruptcy (*see* §II.A, *supra*). Moreover, Lead Counsel had consulted extensively with merits and damages experts to prepare for expert discovery. The stage of this litigation favors settlement approval. *Dukes v. Air Can.*, 2019 WL 8358700, at *2 (M.D. Fla. Sept. 6, 2019) *report and recommendation adopted*, 2019 WL 8358712 (M.D. Fla. Sept. 26, 2019) (settlement was "early enough" that "significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.").

**6. Rule 23(e) (2)(C)(ii): The Proposed Distribution Method Is Effective**

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the method of distributing relief. The Settlement, like most securities class action settlements, will be distributed with the assistance of an established and experienced claims administrator, Epiq. *See, e.g., Health Ins. Innovations II*, 2021 WL 1341881, at *9 (approving Epiq as claims administrator for a securities class action settlement and finding reasonable the proposed method of distributing notice); *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (same).

Here, Epiq will employ a well-established securities class action distribution process. Namely, potential Settlement Class Members will submit the Court-approved Claim Form that provides simple instructions to potential claimants concerning the

necessary information they must present to process their claims and the deadlines by which they must do so. Based on the trade information provided by Claimants, the Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss, as defined in the Plan of Allocation included in the Notice. *See* Stip. at ¶6. After the Settlement reaches its Effective Date (*Id.* at ¶1.8) and in accordance with the Settlement Stipulation's terms, the Plan of Allocation, or any further necessary order(s) of the Court, the Net Settlement Fund shall be distributed to Authorized Claimants. *Id.* at ¶6.5. If there are un-claimed funds after the initial distribution, the Claims Administrator will make further distributions until it is no longer feasible. *Id.*

Here, Lead Counsel through the Claims Administrator shall cause the dissemination of the Postcard Notice to all Persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from: (a) Tupperware's transfer records; and (b) via nominees which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Lead Counsel through the Claims Administrator will also cause the Settlement Stipulation with exhibits, the Preliminary Approval Order, the Long Notice, and the Proof of Claim to be posted on the Claims Administrator's website and will disseminate the Publication Notice on a national newswire.

### 7. Rule 23(e)(2)(C)(iii): Terms of Proposed Attorneys' Fees

As set forth in the Notice, Lead Counsel intends to seek an award of attorney's fees pursuant to the common fund doctrine of no more than one-third of the

Settlement Fund, a Compensatory Award to Plaintiffs collectively not to exceed $50,000, and out-of-pocket expenses not to exceed $700,000, inclusive of an award to Plaintiffs. These requests are in line with fee awards in this Circuit and around the country in securities and other complex class actions. *See, e.g., Health Ins. Innovations II*, 2021 WL 1341881, at *12 (33% "fee award is reasonable and consistent" with other securities class actions); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (awarding a one-third fee which is "consistent with what courts routinely award in class actions" and granting each class representative a $50,000 compensatory award); *Sheet Metal Workers Loc. 19 Pension Fund v. ProAssurance Corp.*, 2024 WL 4003330, at *1 (N.D. Ala. Jan. 17, 2024) (awarding 33% for a $28 million settlement); *In re XL Fleet Corp. Sec. Litig.*, 2024 U.S. Dist. LEXIS 80758, at *5-6 (S.D.N.Y. April 30, 2024) (awarding 33-1/3% for a $19.5 million settlement).

This factor supports approval as Eleventh Circuit courts "routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) *citing Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *1 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions).

### 8. Rule 23(e)(2)(C)(iv): Any Other Agreement Required to Be Identified

The Settling Parties have also entered into a confidential Supplemental Agreement regarding requests for exclusion, dated April 10, 2025. *See* Stip. at ¶2.15.[6]

---

[6] This Supplemental Agreement shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court.

The Supplemental Agreement sets forth the conditions under which the Settling Defendants may terminate the Settlement if requests for exclusion from the Settlement Class exceed a certain amount (the "Opt-Out Threshold"). As is standard in securities class actions, such agreements are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. *See, e.g., Health Ins. Innovations II*, 2021 WL 1341881, at *7 (finding Rule 23(e)(2)(C) is satisfied taking into account a similar "Confidential Supplemental Agreement"); *Gordon*, 2022 WL 4296092, at *5 (similar). The Supplemental Agreement and the Settlement Stipulation are the only agreements concerning the Settlement entered into by the Settling Parties.

## V.   <u>THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED</u>

In connection with settlement approval, the Court determines if the proposed Settlement Class can be certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class must satisfy Rule 23(a)'s requirements of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* at 614. However, the Court need not decide whether, if tried, intractable management problems would arise, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the Settlement Class meets all Rule 23(a) and Rule 23(b)(3) requirements. The Settling Defendants stipulated, for settlement purposes, that the Settlement Class should be so certified. Stip. at ¶3. Moreover, Judge Dalton previously agreed that

Rules 23(a)(1), 23(a)(2), and 23(b)(3) were satisfied for all Plaintiffs, and that at least Edge satisfied Rule 23(a)(3), and that at least Edge and Dennehy satisfied Rule (a)(4). ECF 131. While that Order was vacated because of the technicality of Tupperware's bankruptcy, Plaintiffs respectfully submit Judge Dalton's conclusions were sound.

This Circuit also requires a showing that membership in the proposed class be "ascertainable." *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021). However, such "ascertainability" requirement is easily satisfied in securities class actions where claimants will submit transaction records reflecting class membership. *Id.* at 1370; *Health Ins. Innovations I*, 2020 WL 10486665, at *7.

Finally, given their work, experience, and resources committed to date, Lead Counsel should be appointed Class Counsel. *See also* Fed. R. Civ. P. 23(g).

**A. The Settlement Class Meets Rule 23(a)'s Requirements**

**Numerosity**: A class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is usually met if there are more than 40 class members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Numerosity is "generally assumed to have been met in class action suits involving nationally traded securities." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 617 (M.D. Fla. 2006); *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) (same).

Here, Tupperware's securities traded publicly on the NYSE to investors all over the world. SAC, ¶22. During the Settlement Class Period, Tupperware had between 45.67 and 49.89 million shares outstanding, a market capitalization of $1.43 billion

and a mean trading volume of 832,528 shares. *Id.* at ¶158. Although the exact number of class members is not known at this time, there are likely thousands of members. *See Recoton*, 248 F.R.D. at 617 (13 million shares outstanding supported numerosity); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (8.8 million shares outstanding supported numerosity requirement). Thus, numerosity is met.

**Commonality**: Commonality demands "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This is a "minimal standard" that "merely requires an identity of some factual or legal matter among members of the class." *Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 378 (N.D. Ga. 2019). Here, common questions of law and fact relating to Plaintiffs' claims are plentiful, including whether: (1) Defendants omitted or misrepresented material facts; (2) Defendants acted with scienter; and (3) the price of Tupperware's securities were artificially inflated or maintained during the Settlement Class Period; and (4) whether Defendants' misrepresentations and omissions caused economic loss to Settlement Class Members. *See Mohawk Indus., Inc.*, 2022 WL 17920570, at *4 ("Generally" in securities class actions, "the element of commonality is met").

**Typicality**: Typicality is satisfied where, as here, the proposed class representative "possess[es] the same interest and suffer[ed] the same injury" as other class members. *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1357 (11th Cir. 2009). This is so even "despite substantial factual differences" between the representative and the class "when there is a strong similarity of legal theories." *Id.* Plaintiffs assert identical

claims, based on identical alleged misrepresentations, as all Settlement Class Members. Typicality is satisfied. *Health Ins. Innovations I*, 2020 WL 10486665, at *5.

At class certification before settlement, Defendants argued that Edge and Dennehy's purchases after the first corrective disclosure rendered them atypical. Judge Dalton correctly rejected that argument. ECF 131 at 7-8 (citing cases), n.2; *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (affirming typicality where plaintiff "purchased its shares late in the class period"); *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011) ("Every investor who purchases at an inflated price – whether at the beginning, middle, or end of the inflationary period" are at risk of loss "when the truth underlying the misrepresentation comes to light.").

Defendants' arguments regarding Estep's typicality—that he sold shares before any alleged corrective disclosure—sounded in loss causation. However, courts reject arguments that potential loss causation defenses jeopardize class certification. *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 33637, *21-*22 (S.D. Fla. Mar. 16, 2016). Further, Defendants' arguments disregarded the 300 shares purchased on behalf of Mr. Ward which were held through the alleged corrective disclosures.

Thus, all three Plaintiffs are typical of the Settlement Class.

**Adequacy**: As explained in Section II.A., *supra*, Plaintiffs vigorously pursued this litigation for nearly three years before moving for settlement. Adequacy is satisfied under Rule 23(a)(4) because Plaintiffs' "interests in establishing Defendants' liability and maximizing the recovery" align with the interests of the Settlement Class.

*S. Co.*, 332 F.R.D. at 379. Plaintiffs also retained experienced and qualified counsel, who have vigorously pursued the Action. *See Meza v. Marstiller*, 2023 WL 2648180, at *11 (M.D. Fla. Mar. 27, 2023) (adequacy means a common interest with class members and retention of "qualified counsel" who "vigorously prosecute the interests of the class"). Thus, Plaintiffs are adequate representatives.

Although Settling Defendants have stipulated to the appointment of Plaintiffs as class representatives (including their typicality and adequacy) for purposes of the settlement, Defendants asserted at class certification that Estep is not adequate because of certain disciplinary actions concerning allegations that Estep's tax advisory provided legal advice. Those actions resulted from a good faith dispute about work performed by attorneys in Estep's employ. Joint Decl., Ex. 18 (Estep Tr.) at 157:5-158:9; 162:17-165:1; 169:19-177:20. While Estep stipulated to a cease-and-desist to avoid further litigation, a court ruled that the cease-and-desist violation resulted from a third-party's negligence. *Id*. at 157:5-158:9; 167:13-168:4; 172:24-173:25.

In any event, "[m]ost courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct." *See Newberg on Class Actions* § 3.68 (5th ed. 2015); *Gonzalez v. Cano Health, Inc.*, 2022 WL 18832150, at *4 (S.D. Fla. Dec. 22, 2022) (felony conviction did not defeat adequacy). Such inadequacy typically hinges on whether the representative was criminally convicted of "serious financial crimes or crimes involving dishonesty." *Id*. Estep has not been accused of fraud, much less criminally convicted. And given the very favorable Settlement result, the concerns underlying

the adequacy prong do not exist. *See Turner v. Off. Depot, Inc.*, 2019 WL 11277045, at *3 (M.D. Ala. Oct. 25, 2019) ("[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class").

Moreover, courts hold that even if a proposed class representative was found to be inadequate at the class certification stage, they were adequate for purposes of approving a settlement where – as here – they were accompanied by a representative that the Court had found to be adequate. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465, at *1 (S.D.N.Y. July 18, 2018) ("As to adequacy of representation, any concerns regarding Berkshire Bank's inadequacy are addressed by the participation of an additional named plaintiff…in the settlement process").

Accordingly, Plaintiffs are adequate representatives for the Settlement Class.

## B. The Settlement Class Meets Rule 23(b)(3)'s Requirements

Under Rule 23(b)(3) common questions must "predominate over" individual ones and class treatment must be "superior" to other forms of litigation. Fed. R. Civ. P. 23(b)(3).[7] "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625; *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D 260, 271 (N.D. Ala. 2009) (securities class actions "have received favorable treatment in

---

[7] Rule 23(b)(3)(D) considers "whether trial would present intractable management problems[.]" *Amchem*, 521 U.S. at 593. That is "not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Id.*

the Eleventh Circuit."). Questions common to all Settlement Class Members predominate over individualized ones because most elements of Plaintiffs' claims (*i.e.*, §§10(b) and 20(a) of the Exchange Act and Rule 10b–5) are all "susceptible to class-wide proof." *S. Co.*, 332 F.R.D at 378, 380 n.4.

Further, a class action is superior to any of method of adjudicating the Action. In fact, it may be the only feasible method to do so given the large number of Settlement Class Members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "most of the plaintiffs would have no realistic day in court if a class action were not available"). Here, individual Settlement Class Members' claims are too small to be efficiently adjudicated individually, and other Settlement Class Members have not shown any interest in prosecuting their own claims. Moreover, management of the class does not present any significant difficulty. Rather, it is highly desirable to adjudicate the Settlement Class Members' claims in one litigation.

In sum, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the Court should certify the Settlement Class for the purposes of settlement only.

## C. Settlement Class Counsel Meets Rule 23(g)'s Requirements

A court must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). To assess proposed class counsel, courts consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has extensive experience in litigating securities class actions, and have vigorously litigated

this Action. *See* Joint Decl., Exs. 2 and 3. Lead Counsel has also invested considerable time and resources to adequately litigate this Action on behalf of the Settlement Class and commits to continue to do so. Thus, Levi & Korsinsky, LLP and Pomerantz LLP should be certified as class counsel. *S. Co.*, 332 F.R.D. at 380.

## VI.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a "proposed settlement, voluntary dismissal, or compromise[.]" *See also Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, Epiq will disseminate the Postcard Notice to all potential Settlement Class Members whose names and addresses are identified from: (a) Tupperware's transfer records; and (b) via nominees who hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. *See Health Ins. Innovations I*, 2020 WL 10486665, at *10 (approving similar notice plan). The Claims Administrator will also cause the Settlement Stipulation, the Preliminary Approval Order, the Long Notice, and the Proof of Claim to be posted on the Settlement website and will disseminate the Publication Notice on a national newswire. The Long Notice, Publication Notice, and Postcard Notice are attached to the Settlement Stipulation as Exhibits B, C, and D.

The Long Notice contains all information required by Federal Rule of Civil Procedure 23 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). As the PSLRA requires, the Long Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make ... an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

The Long Notice also defines the Settlement Class, describes the Plan of Allocation, summarizes the nature, history and status of the Action, identifies the claims and issues in this Action, discusses the rights of persons who fall within the definition of the Settlement Class, and explains why Plaintiffs and Lead Counsel are proposing the Settlement. Further, the Long Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. For those Settlement Class Members who wish to participate in the Settlement, the Long

Notice provides instructions on the timing and process for completing and submitting the Proof of Claim. The Publication Notice also informs Settlement Class Members that copies of the Long Notice and Proof of Claim may be obtained by writing the Claims Administrator or by accessing the documents on the Claims Administrator's website. Finally, the Long Notice sets forth the date, time, and place of the Final Approval Hearing, the procedures for commenting on the Settlement, and the postal address for the Court, Lead Counsel, and Settling Defendants' counsel.

Thus, the proposed Long Notice provides all of the information that Rule 23, the PSLRA, and due process require. The Court should approve the proposed form of Long Notice and direct that notice be given to the Settlement Class as proposed.

## VII.  CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, and thereby: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class for Settlement purposes only; (3) certifying Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; and (4) setting a date for a Final Approval Hearing at least 100 days from entry of the Preliminary Approval Order, which would set deadlines consistent with the Table of Proposed Deadlines above for the mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and Compensatory Awards to Plaintiffs.

<u>**Local Rule 3.01(g) Certification**</u>

Plaintiffs conferred with the Settling Defendants by email on Monday, July 21, 2025, and represent that the Settling Defendants do not oppose this motion.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien

Dated: July 21, 2025                Respectfully submitted,

By:    */s/ Cullin Avram O'Brien*
Cullin Avram O'Brien
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: (561) 676-6370
Email: cullin@cullinobrienlaw.com

*Liaison Counsel for Plaintiffs and the Class*

Shannon L. Hopkins*
Gregory M. Potrepka*
Morgan M. Embleton*
P. Cole von Richthofen*
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (212) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com
Email: cvrichthofen@zlk.com

Jeremy A. Lieberman*
Michael Wernke*
**POMERANTZ LLP**
600 Third Avenue, 20th Floor

36

New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mjwernke@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel.: (212) 667-6484
Fax: (212) 667-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiff Ralph Estep*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East Suite 600
Los Angeles, CA 90067
Tel.: (310) 6928883
Email: lesley@portnoylaw.com

*Additional Counsel for Michael Edge*

*\*pro hac vice* forthcoming or submitted

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025 I electronically filed the foregoing document with the Clerk of Court CM/ECF, which will send notice of this filing to counsel of record.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien