## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS,<br><br>    Defendants. | Case No. 6:22-cv-1518-RBD-LHP |

## LEAD COUNSEL'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND COMPENSATORY AWARDS TO PLAINTIFFS

**TABLE OF CONTENTS**

I.    INCORPORATED MEMORANDUM OF LAW .........................................1

II.   LEAD COUNSEL'S EFFORTS FOR THE SETTLEMENT CLASS ............5

III.  THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND
      WARRANT APPROVAL ...............................................................................8

      A.    The "Percentage of the Fund" Method is the Appropriate Basis for
            Awarding Attorneys' Fees in the Eleventh Circuit ...............................8

      B.    The Requested Fee is Reasonable Under the *Camden* factors.................9

            1.    Awards in Similar Cases ..............................................................9

            2.    Time and Labor Required / Lodestar Cross-Check....................11

            3.    The Novelty and Difficulty of the Questions Involved ..............13

            4.    The Skill Required to Perform the Legal Services Properly, and
                  the Experience, Reputation, and Ability of the Attorneys .........14

            5.    Preclusion of Other Employment ...............................................16

            6.    The Customary and Contingent Nature of the Fee ...................16

            7.    The Results Obtained..................................................................18

            8.    The "Undesirability" of the Case...............................................19

      C.    Lead Counsel's Expenses Are Reasonable and Were Necessarily
            Incurred to Achieve the Benefit Obtained. .........................................20

IV.   THE COURT SHOULD APPROVE COMPENSATORY AWARDS FOR
      PLAINTIFFS .....................................................................................................24

V.    CONCLUSION ................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...............................................................................................17

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd*, 899 F.2d 21 (11th Cir. 1990)............................................................... 16, 19

*Bell v. Pension Comm. Of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)....................................................4, 25

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................ 8

*Cabot East Broward 2 LLC v. Cabot*,
2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)................................................... 19, 24

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991)...............................................................................8, 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ......................14

*City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*,
2013 WL 12489095 (S.D. Fla. July 17, 2013) ...............................................9, 24

*Colon v. Johnson*,
2024 WL 5133933 (M.D. Fla. Dec. 12, 2024)............................................. 20, 21

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2012)....................................................12

*David v. Am. Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).....................................................13

*Doller v. Hertz Glob. Hldgs., Inc*,
2024 U.S. Dist. Lexis 144398 (M.D. Fla. Aug. 14, 2024) ..................................15

*Dowdell v. City of Apopka*,
  698 F.2d 1181 (11th Cir. 1983) ...............................................................19

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ...................................... 9

*Gevaerts v. TD Bank, N.A.*,
  2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)......................................................23

*In re "Agent Orange" Prod. Liab. Litig.*,
  611 F. Supp. 1396 (E.D.N.Y. 1985),
  *aff'd in part, rev'd and remanded in part on other grounds*,
  818 F.2d 179 (2d Cir. 1987)......................................................................18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
  *aff'd sub nom., Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .............................................................17

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011)................................................16

*In re Checking Acct. Overdraft Litig.*,
  2020 WL 4586398 (S.D. Fla. Aug. 10, 2020),
  *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022) ................................ 9

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................................18

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) .............................. 10, 24

*In re Friedman's Inc. Secs. Litig.*,
  2009 WL 1456698 (N.D. Ga. May 22, 2009).......................................18

*In re Frontier Commc'ns Corp.*,
  2022 WL 4080324 (D. Conn. May 20, 2022) ......................................21

*In re Giant Interactive Grp. Inc.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................14

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021),
  *report and recommendation adopted*,
  2021 WL 1186838 (M.D. Fla. Mar. 30, 2021)..............................*passim*

iii

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)......................................................14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) .......................................................12

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ....................................................10

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ...............................................................14

*In re Sterling Fin. Corp. Sec. Class Action*,
  2009 WL 2914363 (E.D. Pa. Sept. 10, 2009).....................................................13

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ........................................................ 12, 15

*In re Synovus Fin. Corp.*,
  2014 WL 12756149 (N.D. Ga. Nov. 18, 2014) ..................................................24

*In re Walter Energy, Inc. Sec. Litig.*,
  2016 WL 7230505 (N.D. Ala. May. 3, 2016)...................................................... 9

*McGaffin v. Argos USA, LLC*,
  2020 WL 3491609 (S.D. Ga. June 26, 2020).....................................................20

*Miller v. Dyadic Int'l, Inc.*,
  2010 WL 11591815 (S.D. Fla. July 28, 2010) .............................................. 10, 24

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. Mar. 9, 2016)............................................21, 23

*Pinto v. Princess Cruise Lines Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........................................................ 12, 16

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ................................................................*passim*

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) .........................................................................17

*Sawyer v. Intermex Wire Transfer, LLC*,
  2020 WL 5259094 (S.D. Fla. Sept. 3, 2020)......................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................17

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..................................................9, 13

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)......................................................22

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ..........................................................................11

*Wendy v. Electrolux Home Prods., Inc.*,
   2018 WL 11351711 (M.D. Fla. Apr. 23, 2018) ..................................................12

## Statutes

15 U.S.C. § 78u-4...............................................................................................24

Private Securities Litigation Reform Act of 1995 ..............................................*passim*

## Rules

Fed. R. Civ. P. 23 ............................................................................... 1

v

Lead Plaintiffs Michael J. Dennehy and Ralph Estep ("Lead Plaintiffs") and Plaintiff Michael Edge (with Lead Plaintiffs, "Plaintiffs") respectfully move under Federal Rule of Civil Procedure 23 for an order: (1) awarding attorneys' fees of one-third of the Settlement Fund; (2) awarding reimbursement of $430,553.01 in expenses incurred in prosecuting this Action; and (3) granting a compensatory award of $15,000 for each of the Plaintiffs as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). This motion is supported by the memorandum of law below, the Joint Declaration of Michael J. Wernke and Gregory M. Potrepka (the "Joint Declaration" or "Joint Decl."), and exhibits thereto ("Ex.").[1]

## I.    INCORPORATED MEMORANDUM OF LAW

Lead Counsel secured a non-reversionary $21.75 million cash Settlement for the Settlement Class after three years of hard-fought litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts (¶¶23-27); (ii) drafted three complaints, including the operative Second Amended Class Action Complaint ("SAC") (¶¶18, 23-27, 38); (iii) successfully opposed Defendants' motion to dismiss (¶28-30); (iv) pursued fact discovery, which included serving and responding to party discovery requests (¶¶32-44); (v) managing a team of attorneys who reviewed and analyzed approximately 535,000 pages of documents

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation of Settlement, filed on May 7, 2024 ("Stipulation"). ECF No. 201-2. All emphasis is added and internal citations and quotations omitted unless otherwise noted. All references herein to "¶__" are to paragraphs of the Joint Declaration, filed herewith.

1

(¶42-43); (vi) moved for class certification (¶¶45-55); (vii) prepared for and defended depositions of the three Plaintiffs (¶¶46-48); (viii) engaged and consulted with experts on the issues of consumer pricing, profitability, damages, loss causation, and stock market efficiency (¶¶42, 86); (ix) retained specialized bankruptcy counsel to protect the Settlement Class's claims in connection with Tupperware's bankruptcy petition (¶¶54-57); (x) prepared detailed mediation statements, with voluminous exhibits, addressing both liability and damages (¶60); (xi) participated in a formal full day in-person mediation session before David Murphy of Phillips ADR Enterprises, and continued discussions for several weeks thereafter (¶¶59-62); (xii) negotiated the terms of the proposed Settlement (¶62); and (xiii) prepared the proposed Plan of Allocation in consultation with an experienced damages expert. ¶¶82-85.

The Settlement provides a substantial, immediate, and guaranteed recovery for Settlement Class Members, a favorable result in light of the substantial risks Plaintiffs faced with ongoing litigation, including risks in maintaining class certification, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, and defending the verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The Action would have involved significant expert discovery to establish loss causation and damages. Moreover, Tupperware's bankruptcy meant that even if Plaintiffs succeeded at trial and appeal it would be unlikely that there would be sufficient funds from the Settling Defendants and the dwindling insurance to satisfy the judgment. The risk that

Lead Counsel would never get paid after spending considerable attorney time and significant sums of its own money for litigation expenses was significant.

Despite these risks, Lead Counsel worked on a contingent basis for over 12,197 hours over the course of three years, with no guarantee of compensation. Lead Counsel now requests a payment of attorneys' fees of one-third (33⅓%) of the Settlement ($7,264,500) for their significant efforts and achievements on behalf of the Settlement Class, as well as reimbursement of expenses of $430,553.01 and compensatory awards in the amount of $15,000 for each of the three Plaintiffs. The attorneys' fees requested are well within the parameters recognized as appropriate in federal securities class actions such as this one, both under a percentage of recovery analysis and lodestar cross-check analysis. The requested fees are further supported by the exceptional result Lead Counsel obtained despite the high risks of continued litigation.

Even measured against Plaintiffs' best-case damages scenario of $190.6 million (in which Plaintiffs prove falsity and scienter for every alleged false statement and that all alleged residual stock price decline was caused by the fraud) and that 100% of class members submit timely and valid claims following the verdict, the Settlement represents an approximately 11.4% recovery, which is *almost 4 times that of similarly sized cases*. *See* Joint Decl., Ex. 8 at 26 (2024 NERA Report: 3.0% median settlement for cases between 2015 and 2024 with losses between $100 and $199 million); Ex. 9 at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%).

Furthermore, Lead Counsel seeks reimbursement of $430,553.01 in out-of-

3

pocket litigation expenses incurred in prosecuting this Action. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Plaintiffs respectfully request PSLRA compensatory awards of $15,000 each for the time and effort they expended on behalf of the Settlement Class. Each Plaintiff familiarized himself with the facts of the case, reviewed the complaints prior to filing, reviewed the briefing on all motions, regularly conferred with Lead Counsel to stay apprised of developments in the litigation, reviewed and responded to discovery requests, prepared and sat for depositions, participated in discussions regarding the Settlement with Lead Counsel both before and after the mediation with Mr. Murphy, and authorized Lead Counsel to settle the case for $21.75 million. Plaintiffs have shown diligence and dedication to this case and have undertaken substantial time and effort on behalf of the Settlement Class, which will now benefit therefrom. But for their efforts, the Settlement Class would have recovered nothing. *See Bell v. Pension Comm. Of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

The Class's favorable reaction weighs strongly in support of approving the fee, expense, and compensatory award requests. The Claims Administrator mailed 17,846 Postcard Notices to Settlement Class Members detailing the specifics of the Settlement and stating that Lead Counsel would seek up to one-third of the Settlement as attorneys' fees, up to $700,000 in reimbursement of expenses, and up to $50,000 total

for Plaintiffs in compensatory awards. To date, no Settlement Class Member has objected to the settlement or fee request, and no Class Member has requested exclusion.[2] *See* Joint Decl. Ex. 1 (Declaration of Jordan Broker Regarding (I) Notice Dissemination; (II) Publication of the Publication Notice; (III) Call Center Services and the Settlement Website; and (IV) Requests for Exclusion and Objections Received to Date ("Epiq Decl.")), ¶¶15-18.

## II.    LEAD COUNSEL'S EFFORTS FOR THE SETTLEMENT CLASS

On June 14, 2022, Michael Edge, through Co-Lead Counsel Pomerantz, LLP filed the initial complaint in the Southern District of New York. ¶18.  The case was transferred to this District on August 17, 2022. ¶20. On September 16, 2022, the Court appointed Dennehy and Estep as Lead Plaintiffs, and approved Pomerantz LLP and Levi & Korsinsky, LLP as Lead Counsel. ¶22.

Lead Plaintiffs filed their First Amended Class Action Complaint ("FAC") on behalf of purchasers or acquirers of Tupperware securities between May 5, 2021 to May 4, 2022. ¶23.  Prior to filing the FAC, Lead Counsel extensively investigated Lead Plaintiffs' claims, including review and analysis of: (i) Tupperware's SEC filings; (ii) public reports, news articles, and research reports prepared by securities and financial analysts concerning Tupperware; (iii) transcripts of investor calls conducted by Tupperware's management; and (iv) press releases issued by and about Tupperware.

---

[2] The deadline to object to or request exclusion from the Settlement is November 28, 2025. Lead Plaintiffs will address any requests for exclusion or objections in their reply papers, due December 11, 2025.

Lead Counsel also consulted with an expert in market efficiency, loss causation and damages, and worked with a private investigator to interview former Tupperware employees. ¶¶24-25. As a result of Lead Counsel's investigation, the FAC included (a) extensive new evidence based on information obtained from witness interviews and an in-depth investigation of Tupperware and its operations; (b) an expanded class period; (c) additional false statements; (d) an additional corrective disclosure, and (e) new theories concerning the falsity behind Defendants' statements. ¶¶26-27.

Defendants filed a motion to dismiss the FAC, which Lead Plaintiffs opposed, and the Court denied on September 28, 2023. ¶¶28-30. Defeating Defendants' motion to dismiss required analyzing Defendants' legal and factual arguments and conducting exhaustive legal research on numerous complex issues. Indeed, Defendants contended, *inter alia*, that (i) none of the alleged misstatements were false and misleading, (ii) the statements were all non-actionable puffery or protected by the PSLRA safe harbor, and (iii) the FAC failed to adequately allege scienter. ¶29.

On February 13, 2024, Plaintiffs filed the SAC, adding original Plaintiff Michael Edge as a named Plaintiff. ¶38. Plaintiffs moved for class certification the same day. ¶45. In support of Plaintiffs' class certification motion, Lead Counsel researched and analyzed the underlying bases for the motion, retained and worked closely with an expert financial economist to opine on market efficiency, prepared opening and reply briefs, and reviewed and analyzed Defendants' opposition to class certification. ¶45-52.

In discovery, Plaintiffs served forty-three requests for production and three

interrogatories on Defendants and thirty-five subpoenas *duces tecum* on third parties. Plaintiffs received and reviewed more than 502,160 pages of documents from Tupperware, and over 35,620 pages from third parties. ¶¶32-42. Lead Counsel also oversaw a team of reviewers to analyze the documents in preparation for motions for depositions and trial. ¶43. Further, Defendants served forty-five requests for production and fourteen interrogatories on Plaintiffs, to which Plaintiffs responded. ¶37. Defendants also noticed and took the depositions of all three Plaintiffs, which Lead Counsel prepared Plaintiffs to sit for and defended. ¶¶46-48.

On September 20, 2024, the Court granted Plaintiffs' motion for class certification, appointing Michael Edge as a class representative and requesting additional briefing on Lead Plaintiffs' adequacy and typicality. ¶53. Also on September 20, 2024, Tupperware filed a suggestion of bankruptcy (¶54), triggering an automatic stay. Later on September 20, 2024, the Court vacated its order granting class certification in light of Tupperware's bankruptcy. ¶55. Subsequently, Lead Counsel and counsel for the Individual Defendants prepared and filed numerous position statements regarding the effects of the bankruptcy stay. ¶56. Lead Counsel also retained specialized bankruptcy counsel to assist with the bankruptcy proceedings for the protection of the Settlement Class. ¶57. Ultimately, the Court also stayed this Action as to the Settling Defendants pending mediation. ¶58.

On February 5, 2025, the Settling Parties participated in a full-day in-person mediation session presided over by David Murphy of Phillips ADR Enterprises. ¶59. Before that session, the Settling Parties submitted lengthy opening and responsive

7

mediation statements. ¶60. The session ended without any agreement. *Id.* The Settling Parties continued discussions with the mediator over the following weeks. ¶61. On February 27, 2025, the mediator issued a double-blinded proposal to settle the Action and set a deadline for the Settling Parties to provide the mediator with their respective responses. ¶62. On March 3, 2025, the Settling Parties agreed to the mediator's proposal, and subsequently negotiated and executed the Settlement Stipulation. *Id.*

## III. THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND WARRANT APPROVAL

### A. The "Percentage of the Fund" Method is the Appropriate Basis for Awarding Attorneys' Fees in the Eleventh Circuit

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Fees "awarded from a common fund shall be based upon a reasonable percentage of the fund[.]" *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). This approach appropriately encourages counsel to obtain the maximum recovery at the earliest possible stage and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class. There is no "hard and fast" rule as to what percentage of the recovery is reasonable "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 775.

### B.    The Requested Fee is Reasonable Under the *Camden* factors

Under *Camden*, the court first fixes a benchmark, and then considers the following factors to determine what constitutes a reasonable percentage award: (i) awards in similar cases; (ii) the time and labor required; (iii) the novelty and the difficulty of the questions; (iv) the skill requisite to perform the legal service properly, including the experience, reputation, and ability of the attorneys; (v) the preclusion of other employment by the attorney due to the acceptance of the case; (vi) the customary fee, including whether the fee is fixed or contingent; (vii) the amount involved and the results obtained; (viii) the "undesirability" of the case; (ix) time limitations imposed by the client or the circumstances; and (x) the nature and length of the professional relationship with the client.[3] *Camden*, 946 F.2d at 773, 775.

### 1.    Awards in Similar Cases

Courts in the Eleventh Circuit routinely award attorney fees of one-third in securities class actions and similar cases that implicate highly complex issues, require an extraordinary investment of time and resources, and provide class members with hard cash, instead of coupons. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8-9 (S.D. Fla. Oct. 17, 2016) (awarding 33.3% of $24 million settlement, noting that "[i]n recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund[.]"); *In re*

---

[3] Plaintiffs imposed no time limitations on Lead Counsel and had no prior relationships with Lead Counsel before this Action; thus, these factors are neutral.

*Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at \*17 (S.D. Fla. Aug. 10, 2020) (awarding fee equal to 35% of the settlement fund), *aff'd*, 2022 WL 472057 (11th Cir. Feb. 16, 2022); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at \*4 (S.D. Fla. Dec. 18, 2017) (same); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at \*1 (N.D. Ala. May. 3, 2016) (33% of $25 million settlement); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*, 2013 WL 12489095, at \*3 (S.D. Fla. July 17, 2013) (one-third of $37.5 million fund); *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at \*2 (N.D. Ga. Nov. 9, 2011) (awarding 34% of settlement); *Theodore v. Purecycle Technologies, Inc. et al*, No. 6:21-cv-00809, ECF No. 224, ¶11 (M.D. Fla. Oct. 08, 2024) (awarding one-third fee of common fund); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at \*10 (M.D. Fla. Mar. 23, 2021) (same) (alteration in original), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at \*1 (S.D. Fla. Sept. 3, 2020) (same); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at \*1 (M.D. Ga. Dec. 11, 2019) (same); *Howard v. Chanticleer Holdings, Inc.*, No. 12-cv-81123, ECF No. 74, ¶4 (S.D. Fla. Aug. 14, 2014) (same); *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 11-cv-20549, ECF No. 103, ¶¶14-15 (S.D. Fla. Apr. 25, 2012) (same); *Dance v. Levitt Corp.*, No. 08-cv-60111, ECF No. 151, ¶14 (S.D. Fla. Sep. 29, 2011) (same); *Miller v. Dyadic Int'l, Inc.*, 2010 WL 11591815, at \*1 (S.D. Fla. July 28, 2010) (same).

### 2.    Time and Labor Required / Lodestar Cross-Check.

Lead Counsel has devoted significant time and resources to researching, investigating, and prosecuting this action. By the time the Settlement was reached, Lead Counsel had: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts (¶¶23-27); (ii) drafted three complaints, including the operative Second Amended Class Action Complaint ("SAC") (¶¶18, 23-27, 38); (iii) successfully opposed Defendants' motion to dismiss (¶28-30); (iv) pursued fact discovery, which included serving and responding to party discovery requests (¶¶32-44); (v) managing a team of attorneys who reviewed and analyzed approximately 535,000 pages of documents (¶42-43); (vi) moved for class certification (¶¶45-55); (vii) prepared for and defended depositions of the three Plaintiffs (¶¶46-48); (viii) engaged and consulted with experts on the issues of consumer pricing, profitability, damages, loss causation, and stock market efficiency (¶¶42, 86); (ix) retained specialized bankruptcy counsel to protect the Settlement Class's claims in connection with Tupperware's bankruptcy petition (¶¶54-57); (x) prepared detailed mediation statements, with voluminous exhibits, addressing both liability and damages (¶60); (xi) participated in a formal full day in-person mediation session before David Murphy of Phillips ADR Enterprises, and continued discussions for several weeks thereafter (¶¶59-62); (xii) negotiated the terms of the proposed Settlement (¶62); and (xiii) prepared the proposed Plan of Allocation in consultation with an experienced damages expert. ¶¶82-85.

Indeed, Plaintiffs' Counsel expended approximately 12,197 hours with a lodestar of $7,320,194.00, at current billing rates, reflecting a multiplier around 0.99. ¶¶102-104. While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third of the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). The 0.99 multiplier requested here is **below** the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 & n.4 (N.D. Ga. Oct. 26, 2012) (noting that multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average").

Indeed, courts routinely find that a "negative multiplier" as Lead Counsel has here, strongly supports granting the requested fee. *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *13 (finding "negative multiplier of 0.33" supports reasonableness of fee request where "[t]ypically, courts award a [positive] multiplier range of 2.5 to 4 in class actions"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 4415214, at *5 (S.D. Fla. Oct. 5, 2024) (the "negative multiplier supports the reasonableness of the fee request"); *Wendy v. Electrolux Home Prods., Inc.*,

12

2018 WL 11351711, at *2 (M.D. Fla. Apr. 23, 2018) (finding that "Class Counsel's fee request is reasonable under Eleventh Circuit precedent" where there was a "negative multiplier" of 0.63).

As such, the time and labor expended justify the fee requested.

### 3.    The Novelty and Difficulty of the Questions Involved

Plaintiffs faced all the "multi-faceted and complex legal questions endemic" to securities class actions. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This Action was no exception.

In particular, Lead Counsel had to navigate complex issues concerning standing, loss causation, damages, and market efficiency, the latter of which necessitated expensive and time-consuming expert testimony at the class certification stage. Continued litigation would have involved additional battles of experts on the issues of damages and loss causation. "The results of battles of the experts are notoriously difficult to predict." *Thorpe*, 2016 WL 10518902, at *9.

Moreover, at summary judgment, at trial, and in any ensuing appeal, the Parties would have continued to litigate each element of the complex Exchange Act claims, including falsity, scienter, loss causation, reliance and damages (the latter three of which would have involved the aforementioned battle of the experts).

13

Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action. However, notwithstanding these obstacles, Lead Counsel achieved an excellent result for the Settlement Class. Success in the face of these obstacles strongly supports the requested fee award.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by and the standing of Lead Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). From the Action's inception, Lead Counsel endeavored to obtain the maximum recovery for the Settlement Class. As noted, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to the legal and factual arguments raised by Settling Defendants.

Here, the requested fee is further justified because Lead Counsel independently investigated and developed the claims alleged without the benefit of a related regulatory investigation or settlement. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel did not have the benefit of a road map established by a government investigation off which they could piggy back, but instead independently developed factual allegations and legal theories sufficient to survive the PSLRA's heightened pleading standards."); *City of Providence v. Aeropostale,*

14

*Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (noting "there was no road-map for Lead Counsel to follow" in awarding fee); *In re Giant Interactive Grp. Inc.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (fee supported "in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel" as opposed piggybacking on regulatory investigation).

Indeed, Lead Counsel has developed a reputation for zealous advocacy in securities class actions. *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (appointing Pomerantz as sole lead counsel in multi-billion dollar securities class action and stating that "[t]he Court is familiar with the Pomerantz firm from previous matters, and finds that it is well qualified to serve as lead counsel") (internal citation omitted); *Doller v. Hertz Glob. Hldgs., Inc*, 2024 U.S. Dist. Lexis 144398, *8 (M.D. Fla. Aug. 14, 2024) (Levi & Korsinsky "is plainly qualified" to be appointed lead counsel "as demonstrated by the firm's experience litigating securities class actions"); *see* Joint Decl., Ex. 3 (Pomerantz resume), Ex. 4 (Levi & Korskinsky resume). Lead Counsel achieved an excellent $21.75 million recovery for investors, in the face of substantial risks, despite Tupperware's bankruptcy and a wasting insurance policy.

The quality of opposing counsel is also important in evaluating the quality of counsel's work. *Sunbeam*, 176 F. Supp. 2d at 1334. Defendants were represented by experienced and highly-skilled lawyers from Sidley Austin LLP. Defense counsel have reputations for vigorous defenses of complex civil cases such as this. ¶107. Lead

15

Counsel's ability to obtain a favorable outcome for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided here. Accordingly, this factor also supports the fee requested.

### 5.    Preclusion of Other Employment

When Lead Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and incur significant out-of-pocket expenses. Lead Counsel did not settle this case quickly but did so only after three years of litigation and over 12,197 hours of work. Lead Counsel's time spent on this case was at the expense of time that they could have devoted to other matters without any assurance that they would be successful or that they would ever receive compensation for their hard work. Accordingly, this factor also supports the requested fee. *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *11 (the time spent litigating this matter "limited the … time and resources" Lead Counsel could "devote to other matters" "weigh[s] in favor of the requested fee award.").

### 6.    The Customary and Contingent Nature of the Fee

The "customary fee" in securities class action lawsuits is a contingency fee because virtually no individual possesses a sufficiently large stake to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654. Substantial weight is afforded to the contingent nature of the representation when assessing a fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Courts  recognize that the risk of receiving little or no recovery is a major factor in awarding fees, and that skilled counsel should be encouraged to

16

undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("[A]ttorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award."); *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the [fee] award").

This case is fully contingent, meaning that Lead Counsel has not received any payment while incurring $430,553.01 in expenses and paying attorney salaries (not counted in the expense account) for the duration of the case, with no guarantee that they would ever receive compensation. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals after expending millions of dollars in time and received no compensation at all. Even a victory at trial does not guarantee success. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). And even surviving post-trial motions no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after ~7 years of litigation, based on novel loss causation ruling). The contingent nature of Lead Counsel's representation strongly favors the requested fee.

Moreover, the award of appropriate attorneys' fees is particularly important to ensure  private enforcement of the federal securities laws. Indeed, "Congress, the

Executive Branch, and th[e Su[preme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought" by the federal government. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs*, *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010); *Ressler*, 149 F.R.D. at 657.

### 7.    The Results Obtained

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *In re Friedman's Inc. Secs. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) (alteration in original). Even measured against Plaintiffs' best-case damages scenario of $190.6 million, the Settlement represents an approximately 11.4% recovery, which is ***almost 4 times that of similarly sized cases***. *See* Ex. 8 at 26 (2024 NERA Report: median settlement for cases between 2015 and 2024 with investor losses between $100 and $199 million was 3.0%); Ex. 9 at 7 (2024 Cornerstone Report: "In 2024, the overall median settlement" was 7.3%).

18

Finally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *aff'd in part, rev'd and remanded in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Moreover, Tupperware's bankruptcy and exhausting insurance policies made a larger recovery not only hypothetical, but extremely unlikely.

### 8.    The "Undesirability" of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, *6 (S.D. Fla. Nov. 9, 2018). While Lead Counsel does not believe the case was undesirable, there are significant risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Plaintiffs in this Action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms. Notably, despite opportunity under the PSLRA, no law firms other than Lead Counsel filed motions seeking appointment as lead counsel or filed complaints alleging the same fraudulent scheme.

**C.     Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.**

Lead Counsel's fee application includes a request for reimbursement of $430,553.01 in expenses that were "reasonable and necessary to obtain the [S]ettlement reached." *Ressler*, 149 F.R.D. at 657. These expenses are properly recoverable. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.").

As set forth in the Declaration, Lead Counsel incurred $430,553.01 in litigation expenses on behalf of the Settlement Class in the prosecution of the Action. ¶¶115-18. The largest component of expenses amounted to $234,893.00 and related to the retention of experts in the fields of consumer pricing, market efficiency, loss causation and damages. These experts were consulted at different points throughout the litigation, including on matters related to the preparation of the complaints, the opposition to Defendants' motion to dismiss, the motion for class certification, reports on damages, preparation for depositions and expert reports, preparation of the mediation submissions and responses thereto, negotiation of the Settlement, the preparation of the proposed Plan of Allocation, and preparation of the Claim Form. *Colon v. Johnson*, 2024 WL 5133933, at *3 (M.D. Fla. Dec. 12, 2024) (awarding reimbursement of $509,156.05 for "expert fees"); *In re Health Ins. Innovations Sec. Litig.*,

2021 WL 1341881, at *13 (finding expert fees were "reasonably incurred and necessary to furthering the interests of the Class").

The second largest component of Lead Counsel's expenses amounted to $57,070.00 and related to fees for mediation services that led to the Settlement, including the full-day mediation before Mr. Murphy. Mr. Murphy's efforts were critical in achieving a Settlement. ¶¶59-62; *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *13 (mediation fees were "reasonably incurred and necessary to furthering the interests of the Class"); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1258 (S.D. Fla. Mar. 9, 2016) (similar).

Lead Counsel also paid $40,405.91 related to JND eDiscovery for hosting the database for documents produced in this Action for approximately 15 months. *McGaffin v. Argos USA, LLC*, 2020 WL 3491609, at *10 (S.D. Ga. June 26, 2020) (awarding reimbursement for "e-discovery costs"). Document hosting is an essential function in complex securities fraud actions, such as this, where thousands of pages of production documents need to be stored securely.

Lead Counsel also paid $34,029.30, to a private investigator L.R. Hodges & Associates, Ltd., for investigation services that were critical to the development of the facts alleged in the Complaint. ¶¶25-28; *see Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at * (S.D.N.Y. Dec. 14, 2017) (finding "investigator fees" were "reasonable"). Without these investigative services, Lead Counsel would likely not

have located and interviewed the Confidential Witness cited in the Complaint that the Court relied upon in ruling on Defendants' Motion to Dismiss. ECF No. 85.

Lead Counsel also paid to outside counsel $28,380.00, including specialized bankruptcy counsel and counsel to the Confidential Witness identified in the FAC and SAC. *Colon*, 2024 WL 5133933, at *3 (noting expense reimbursement for "bankruptcy counsel" was "appropriate"); *In re Frontier Commc'ns Corp.*, 2022 WL 4080324, at *16 (D. Conn. May 20, 2022) (reimbursement for retention of bankruptcy counsel to protect the interests of the settlement class as it was "reasonably and necessarily incurred in litigating" the Action). Specialized bankruptcy counsel was instrumental to protecting the Settlement Class's claims following Tupperware's bankruptcy and enabling recovery for the Settlement Class from the Individual Defendants. Lead Counsel also incurred expenses to secure independent legal representation for the former Tupperware employee cited in the Complaint as a Confidential Witness. Providing protection for this individual, who undoubtedly would be the target of discovery by the Settling Defendants if the Parties had not agreed to the Settlement, was prudent and beneficial to the Settlement Class. *See In re U. S. Steel Consolidated Cases*, No. 2:17-cv-00579, ECF 346-8, 358 (W.D. Pa. Mar. 21, 2023) (approving reimbursement for legal representation provided to confidential witnesses); *In re Mindbody, Inc. Sec. Litig.*, No. 1:19-cv-08331, ECF 137-4, 144 (S.D.N.Y. Oct. 27, 2022) (approving reimbursement for legal fees of counsel for five potential witnesses who were former employees of defendant corporation).

Lead Counsel also paid $9,227.21 for necessary legal database costs, $7,498.18 for travel, lodging, and meals, $9,398.26 for filing fees and transcription service fees, $5,800.00 for issuance of press releases and newswires, $3,069.40 to process servers, $473.61 in clerical overtime,  $253.84 in postage fees, and $54.30 for photocopies necessary to the litigation.

The types of expenses for which Lead Counsel seeks reimbursement were necessarily incurred in litigation, are routinely charged to classes in contingent litigation and clients billed by the hour, and the type for which reimbursement is routinely permitted. *See Morgan*, 301 F. Supp. 3d at 1258 (S.D. Fla. 2016); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"). Moreover, from the outset, Lead Counsel were aware that they may not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶116.

The expenses incurred were reasonable and necessary to successfully prosecute this case. The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $700,000, and Lead Counsel requested reimbursement is significantly less than that. To date, there have been no objections to Lead Counsel's request for expenses. *See* Epiq Decl., ¶18.

Accordingly, the requested expenses are fair, adequate, and reasonable, and should be approved.

## IV.   THE COURT SHOULD APPROVE COMPENSATORY AWARDS FOR PLAINTIFFS

Plaintiffs also respectfully request compensatory awards of $15,000 each for their diligent and zealous representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). *See, e.g.*, *Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (awarding plaintiffs $20,000 total "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"); *Cabot*, 2018 WL 5905415, *11 (awarding two plaintiffs $50,000 each) (citing cases); *In re Synovus Fin. Corp.*, 2014 WL 12756149, at *1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two institutional lead plaintiffs); *Aracruz Celulose*, 2013 WL 12489095, at *4 (awarding Lead Plaintiff $40,000 for "its reasonable costs and expenses incurred in representing the Class during the prosecution of this Action"); *Miller*, 2010 WL 11591815, at *2 (awarding Lead Plaintiff $32,000 for "reimbursement of its time and expenses in assisting in the prosecution of this action," including 160 hours at a rate of $200 per hour); *Mazur v. Lampert*, No. 04-61159-CIV, ECF No. 130, ¶4 (S.D. Fla. June 19, 2008) (awarding Lead Plaintiff $40,000).

Plaintiffs took a very active role in the litigation. Each Plaintiff spent considerable time to familiarize himself with the facts of the case, reviewed the complaints, reviewed the briefing on all motions, regularly conferred with Lead Counsel to stay apprised of developments in the litigation, reviewed and responded to discovery requests, prepared and sat for depositions, participated in discussions regarding the Settlement with Lead Counsel both before and after the mediation with Mr. Murphy, and authorized Lead Counsel to settle the case for $21.75 million after due consideration to both the merits of the case and the risks involved. *See* ¶¶119-20, Exs. 5-7. Plaintiffs have shown diligence and dedication to this case and have undertaken substantial time and effort on behalf of the Settlement Class, which will now benefit therefrom. Without their contributions, there would have been no case, and no recovery for Settlement Class Members. *See Bell*, 2019 WL 4193376, at *6 ("Without [plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

Moreover, the Notice informed the class that Class Representatives would seek an award not to exceed a total of $50,000 each. To date, there have been no objections. Epiq Decl., ¶18. Thus, the Court should award Plaintiffs $15,000 each for their role in representing the Class and bringing the current resolution.

## V. CONCLUSION

For the foregoing reasons, the Court should award Lead Counsel 33⅓% of the Settlement Fund; award reimbursement of expenses of $430,553.01; and award Plaintiffs $15,000 each.

25

26

## Local Rule 3.01(g) Certification

Plaintiffs conferred with the Settling Defendants by email on November 13, 2025,

and represent that the Settling Defendants do not take any position on this motion.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien

Dated: November 13, 2025                    Respectfully submitted,

By:     */s/ Cullin Avram O'Brien*
Cullin Avram O'Brien
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: (561) 676-6370
Email: cullin@cullinobrienlaw.com

*Liaison Counsel for Plaintiffs and the Class*

Shannon L. Hopkins*
Gregory M. Potrepka*
Morgan M. Embleton*
P. Cole von Richthofen*
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (212) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com
Email: cvrichthofen@zlk.com

Jeremy A. Lieberman*
Michael Wernke*
**POMERANTZ LLP**

27

600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: mjwernke@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel.: (212) 667-6484
Fax: (212) 667-7296
Email: peretz@bgandg.com

*Additional Counsel for Plaintiff Ralph Estep*

**THE PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East Suite 600
Los Angeles, CA 90067
Tel.: (310) 6928883
Email: lesley@portnoylaw.com

*Additional Counsel for Michael Edge*

*\*pro hac vice* forthcoming or submitted

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025 I electronically filed the foregoing document with the Clerk of Court CM/ECF, which will send notice of this filing to counsel of record.

*/s/ Cullin Avram O'Brien*
Cullin Avram O'Brien
