**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MICHAEL EDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUPPERWARE BRANDS CORPORATION, MIGUEL FERNANDEZ, and CASSANDRA HARRIS,<br><br>Defendants. | Case No. 6:22-cv-1518-RBD-LHP |

**JOINT DECLARATION OF MICHAEL J. WERNKE AND GREGORY M. POTREPKA IN SUPPORT OF (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND COMPENSATORY AWARDS TO PLAINTIFFS**

1

MICHAEL J. WERNKE and GREGORY M. POTREPKA, declare as follows:

1.      I, Michael J. Wernke, am a partner at the law firm of Pomerantz LLP ("Pomerantz"), counsel for Lead Plaintiff Ralph V. Estep and Plaintiff Michael Edge, and Co-Lead Counsel for the proposed Settlement Class in this Action.  I licensed to practice in the State of New York, and am admitted *pro hac vice* in this Action.  I have personal knowledge of the facts stated herein and, if called upon as a witness, I could and would testify competently thereto.

2.      I, Gregory M. Potrepka, am a partner at the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky"), counsel for Lead Plaintiff Michael J. Dennehy, and Co-Lead Counsel for the proposed Settlement Class in the above-captioned action (the "Action").[1]   I am licensed to practice in the States of Connecticut and New York, and am admitted *pro hac vice* to practice in this District. I have personal knowledge of the facts stated herein and, if called upon as a witness, I could and would testify competently thereto.

3.      We submit this declaration, together with the exhibits hereto, in support of (i) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Final Approval Motion"); and (ii) Lead Counsel's Motion for

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Amended Stipulation and Agreement of Settlement dated July 21, 2025 (the "Stipulation"). ECF No. 160-2.

Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs (the "Fee Motion").

4. Attached hereto as Exhibit 1 is the Declaration of Jordan Broker Regarding (I) Notice Dissemination; (II) Publication of Publication Notice; (III) Call Center Services and the Settlement Website; and (IV) Requests for Exclusion and Objections Received to Date ("Epiq Decl.").

5. Attached hereto as Exhibit 1-A is a true and correct copy of the Postcard Notice and Notice Packet.

6. Attached hereto as Exhibit 1-B is a true and correct copy of the proof of the dissemination of the Publication Notice.

7. Attached hereto as Exhibit 2 is a chart that summarizes the information set forth in the Fee Declarations attached hereto as Exhibits 2A, 2B and 2C

8. Attached hereto as Exhibit 2A is the Declaration of Michael J. Wernke on Behalf of Pomerantz LLP in Support of Lead Counsel's Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

9. Attached hereto as Exhibit 2B is the Declaration of Gregory M. Potrepka on Behalf of Levi & Korsinsky, LLP in Support of Lead Counsel's Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

10. Attached hereto as Exhibit 2C is the Declaration of Cullin O'Brien of Cullin O'Brien Law, P.A. in Support of Lead Counsel's Unopposed Motion for

Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

11.    Attached hereto as Exhibit 3 is Pomerantz's Firm Resume.

12.    Attached hereto as Exhibit 4 is Levi & Korsinsky's Firm Resume.

13.    Attached hereto as Exhibit 5 is the Declaration of Ralph V. Estep in Support of (i) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Lead Counsel's Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

14.    Attached hereto as Exhibit 6 is the Declaration of Michael J. Dennehy in Support of (i) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Lead Counsel's Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

15.    Attached hereto as Exhibit 7 is the Declaration of Michael Edge in Support of (i) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) Lead Counsel's Unopposed Motion for Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs.

16.    Attached hereto as Exhibit 8 is a true and correct copy of *NERA: Recent Trends in Securities Class Action: 2024 Full-Year Review*.

17.    Attached hereto as Exhibit 9 is a true and correct copy of *Cornerstone Research: Securities Class Action Settlements, 2024 Review and Analysis*.

## I.    PROCEDURAL HISTORY

### A. Initial Complaint and Appointment of Lead Plaintiffs and Co-Lead Counsel

18.    On June 14, 2022, Michael Edge ("Edge"), through Co-Lead Counsel Pomerantz, LLP filed a putative securities class action in the United States District Court for the Southern District of New York captioned *Edge v. Tupperware Brands Corporation, et al.*, No. 1:22-cv-04976 (S.D.N.Y.) on behalf of persons and entities that purchased or otherwise acquired Tupperware securities between November 3, 2021 and May 3, 2022, inclusive. ECF No. 1.

19.    On August 15, 2022, two movants filed motions for appointment of lead plaintiff and lead counsel, Ralph V. Estep ("Estep") and Michael J. Dennehy ("Dennehy"), who moved for appointment of Lead Plaintiff, and their choice of Pomerantz and Levi & Korsinsky, respectively, to serve as lead counsel.  ECF Nos. 10-17.

20.    The case was transferred to this District on August 17, 2022. ECF No. 21.

21.    On September 2, 2022, Estep and Dennehy jointly filed a Stipulation Appointing Co-Lead Plaintiffs and Co-Lead Counsel. ECF No. 26.

22.    On September 16, 2022, the Court appointed Estep and Dennehy as co-Lead Plaintiffs, and approved Pomerantz and Levi & Korsinsky as Lead Counsel. ECF No. 29.

**B. Amended Pleadings and Defendants' Motions to Dismiss**

23.    On November 30, 2022, Lead Plaintiffs filed their detailed First Amended Class Action Complaint ("FAC"). ECF No. 44.

24.     The Complaint was filed after Lead Counsel conducted an extensive investigation of the claims asserted in the Action including review and analysis of: (i) Tupperware's SEC filings; (ii) public reports, news articles, and research reports prepared by securities and financial analysts concerning Tupperware; (iii) transcripts of investor calls conducted by Tupperware's management; and (iv) press releases issued by and about Tupperware. Lead Counsel also consulted with an expert in market efficiency, loss causation and damages.

25.     Furthermore, to prepare the FAC, Lead Counsel worked with a private investigator to interview former Tupperware employees, including one who agreed to be cited as a confidential witness in the FAC. The information supplied by the confidential witness helped Lead Plaintiffs adequately allege falsity and scienter with respect to Defendants' statements and the information provided by other employees was useful to Lead Counsel in understanding Tupperware's business when it came to discovery and as the case progressed.

26.     As a result of Lead Counsel's investigation, the FAC included (a) extensive new evidence based on information obtained from witness interviews and an in-depth investigation of Tupperware and its operations; (b) an expanded class period; (c) additional false statements; (d) an additional corrective disclosure, and (e) new theories concerning the falsity behind Defendants' statements.

27.     Specifically, the FAC expanded the class period to May 5, 2021 to May 4, 2022, inclusive. ECF No. 44. The FAC alleges Defendants misrepresented

6

Tupperware's ability to maintain gross margins through price increases in the face of increasing costs. *Id.* at ¶¶81-98, 107-16. The FAC alleges the truth was partially revealed on November 3, 2021, when Tupperware announced Q3 2021 gross profits of only $247.9 million, or 65.5% of net sales, indicating prices did not offset inflation. *Id.* at ¶¶100, 103. On this news, Tupperware's common stock price declined 19.35% from a close of $23.46 on November 2, 2021 to a close of $18.92 on November 3, 2021. *Id.* at ¶106. Plaintiffs allege that the truth was further revealed on May 4, 2022, when Tupperware's Q1 2022 results showed "eroded gross and operating margins" and Defendants admitted that (i) "[p]rofitability was significantly impacted by persisting inflationary pressures and the latency between rising input costs and our decision to increase prices" and (ii) that most price increases would not become effective until the second quarter which was "the first time we've taken pricing actions in quite some time [in North America]." *Id.* at ¶¶117-25. On this news, Tupperware stock plummeted 32.16%. *Id.* at ¶126.

28.    On January 17, 2023, Defendants moved to dismiss the FAC, arguing, *inter alia*, the Section 10(b) claim failed because (i) none of the alleged misstatements were false and misleading, (ii) the statements were all non-actionable puffery or protected by the PSLRA safe harbor, and (iii) Lead Plaintiffs failed to plead scienter with the requisite particularity. Defendants argued that the Section 20(a) control person claims failed because Lead Plaintiffs had not pled an underlying primary claim. ECF No. 56.

29.     On February 28, 2023, Lead Plaintiffs filed a memorandum in opposition to Defendants' motion to dismiss the FAC, addressing all of Defendants' arguments. ECF No. 59. On March 24, 2023, Lead Plaintiffs filed a notice of supplemental authority in support of their opposition to the motion to dismiss.  ECF No. 63.  On April 3, 2023, Defendants filed a reply in further support of their motion to dismiss. ECF No. 71. On June 5, 2023, Defendants filed a notice of supplemental authority in support of their motion to dismiss. ECF No. 78. On June 22, 2023, Plaintiffs filed another notice of supplemental authority in support of their opposition to the motion to dismiss. ECF No. 79. On August 7, 2023, Defendants filed another notice of supplemental authority in support of their motion to dismiss. ECF No. 80.

30.     On September 28, 2023, the Court issued an Order denying Defendants' motion to dismiss the FAC in full.  ECF No. 85.

31.     On October 26, 2023, Defendants filed their Answer to the FAC.  ECF No. 91.

### C. Fact Discovery and Active Litigation

32.     Following the denial of Defendants' motion to dismiss, the parties diligently pursued discovery.  The scope of this discovery was contentious and hard-fought, as ostensibly each and every request for production and interrogatory was vigorously contested between the Parties.

33.     On November 14, 2023, the parties filed a joint Uniform Case Management Report (ECF No. 92), which the Court entered on November 22, 2023

(ECF No. 95), following a telephone conference with the parties on November 21, 2023. ECF No. 94.

34.    On November 21, 2023, Lead Plaintiffs served their First Set of Requests for Production of Documents (consisting of forty-three requests), Defendants served responses and objections thereto on January 5, 2024. With respect to these requests and objections, the Parties frequently met and conferred via videoconference and exchanged emails and correspondence on the scope of discovery, search terms, and issues related to ESI.

35.    On January 2, 2024, the parties exchanged Rule 26 initial disclosures.

36.    On January 16, 2024, after a series of negotiations, the Parties stipulated to a protocol to govern and manage discovery of electronically stored information (the "Stipulated Protocol for Discovery of Electronically Stored Information" or "ESI Protocol") and to an agreement to protect the confidentiality of nonpublic information (the "Stipulated Confidentiality Agreement").

37.    On January 16, 2024, Defendants served their initial document requests (consisting of 45 requests) and interrogatories (consisting of 14 interrogatories), and Lead Plaintiffs served responses and objections thereto on February 14, 2024. Lead Counsel worked closely with Lead Plaintiffs in identifying, reviewing, and producing documents and information responsive to Defendants' requests.

38.    On February 13, 2024, Plaintiffs filed the Second Amended Class Action Complaint ("SAC"), adding original Plaintiff Michael Edge as a named Plaintiff.

9

ECF No. 105. Defendants answered the SAC on February 27, 2024. ECF No. 106.

39.    On March 4, 2024, Plaintiff Michael Edge served his responses and objections to Defendants initial document requests and interrogatories.

40.    On July 19, 2024, Lead Plaintiffs served their First Set of Interrogatories to Defendants (consisting of three interrogatories), and Defendants served responses and objections thereto on August 19, 2024.

41.    Also during this time, from November 2023 to September 2024, Plaintiffs engaged in extensive third-party discovery having collectively served subpoenas *duces tecum* on thirty-five domestic third parties. This was no simple task. Even the simplest subpoenas required Lead Counsel to frequently meet and confer with counsel for each of the third parties to explain the Action, describe the information that was being sought, and participate in extensive negotiations to secure the responses, objections, and productions thereto, and related privilege logs, on behalf of Plaintiffs and the Settlement Class.

42.    In connection with the Plaintiff' discovery requests, Plaintiffs received and reviewed more than 502,160 pages of documents from Tupperware, and over 35,620 pages from third parties. This written discovery was wide-ranging including emails, board materials, pricing and promotional materials, spreadsheets and financial analyses of Tupperware's margins and profitability, periodic reports from Tupperware's international geographic regions, and text messages from certain Tupperware employees, among other categories. Many of these documents were

10

highly technical and required expert analysis, interpretation to English from other languages, and considerable effort from Lead Counsel to harmonize the disparate productions from 26 document custodians as well as the productions from third parties.

43.    To accomplish the review of the voluminous written discovery in this action, Lead Counsel also oversaw a team of staff document review attorneys to analyze the documents in preparation for motions for depositions, mediation, and trial. Such staff attorneys performed critical tasks of reviewing, analyzing, and digesting the large volume of complex documents produced in the case. To avoid any doubt, Lead Counsel's staff attorneys did far more than merely code documents or engage in rote word searches. They were integrally involved in analyzing Defendants' and non-parties' sizable document productions, which involved finding and developing critical information about the claims and defenses in this Action. This work included performing extensive searches to identify critical witnesses to depose, and preparing detailed summaries and "hot documents" for fact witnesses who Lead Counsel were preparing to depose in the case. Staff attorney work involved extensive analysis of the facts and the potential witness, as well as the exercise of significant critical judgment in deciding which of the thousands of documents to include for potential use with a deposition witness. The attorneys' work of scouring the voluminous productions and following up on that information was critical to Lead Plaintiffs' mediation efforts and successful prosecution of this Action.

44.    On August 29, 2024, Plaintiffs served their first round of Notices of Depositions, noticing 11 depositions. Then, on September 5, 2024, Plaintiffs served their second round of Notices of Depositions, noticing an additional 5 depositions. Lead Counsel actively prepared to take these depositions prior to the Company's bankruptcy.

**D. Class Certification and Tupperware's Bankruptcy**

45.    On February 13, 2024, Plaintiffs moved for class certification. ECF No. 103. In support of Plaintiffs' class certification motion, Lead Counsel met with Plaintiffs in a joint conference call to discuss their proposed leadership of the putative class, prepared declarations for each Plaintiff, rigorously researched and analyzed the underlying legal and factual bases for the motion, and retained and worked closely with an expert financial economist to opine on market efficiency.

46.    On April 9, 2024, Defendants took the deposition of Michael Edge.

47.    On April 10, 2024, Defendants took the deposition of Michael J. Dennehy.

48.    On April 17, 2024, Defendants took the deposition of Ralph V. Estep.

49.    In advance of each deposition, Lead Counsel collected relevant documents that Lead Counsel anticipated might become the focus of the depositions, met with Plaintiffs, and prepared them for their depositions and Lead Counsel defended Plaintiffs during each deposition.

50.    On April 23, 2024, Defendants filed their opposition to Plaintiffs' motion

for class certification. ECF No. 116 Therein, Defendants argued that each Plaintiff did not meet the adequacy and/or typicality prong for being a class representative.

51.    On June 10, 2024, Plaintiffs filed their reply in further support of their motion for class certification, addressing each of Defendants' arguments. ECF No. 119.

52.    On August 26, 2024, Plaintiffs filed a notice of supplemental authority in support of their motion for class certification. ECF No. 129.

53.    On September 20, 2024, the Court granted Plaintiffs' motion for class certification, appointing Michael Edge as a class representative and requesting additional briefing on Lead Plaintiffs' adequacy and typicality. ECF No. 131.

54.    Also on September 20, 2024, Tupperware filed a suggestion of bankruptcy (ECF No. 130), triggering an automatic stay.

55.    Later on September 20, 2024, the Court vacated its order granting class certification in light of Tupperware's bankruptcy. ECF No. 132.

56.    Subsequently, Lead Counsel and counsel for the Individual Defendants researched, prepared, and filed numerous position statements regarding the effects of the bankruptcy stay.  ECF 133, 138-39, 143, 145, 147, 150, 152.

57.    In conjunction with Tupperware's bankruptcy, Lead Counsel retained specialized bankruptcy counsel to assist with the bankruptcy proceedings for the protection of the Settlement Class.

58.    The Court also stayed this Action as to the Settling Defendants pending

mediation. ECF 140, 144, 146, 148.

### E. Settlement Negotiations

59.    On February 5, 2025, the Settling Parties participated in a full-day in-person mediation session presided over by David Murphy of Phillips ADR Enterprises, a well-respected and highly experienced mediator.

60.    Before that session, the Settling Parties submitted lengthy opening and responsive mediation statements. The session ended without any agreement.

61.    The Settling Parties continued discussions with the mediator over the following weeks.

62.    On February 27, 2025, the mediator issued a double-blinded proposal to settle the Action and set a deadline for the Settling Parties to provide the mediator with their respective responses. On March 3, 2025, the Settling Parties agreed to the mediator's proposal and subsequently negotiated and executed the Settlement Stipulation, providing status updates to the Court. ECF Nos. 145, 150, 152.

### F. Preliminary Approval of the Settlement

63.    On April 14, 2025, Plaintiffs moved for preliminary approval of the Settlement. ECF No. 153.

64.    On July 9, 2025, the Court denied the motion, without prejudice, and with instruction to address "all issues" in its July 9 Order and any others "relevant to the resolution of a motion for preliminary approval of a class action settlement[.]" ECF No. 158 at 5.

65.     On July 21, 2025, Plaintiffs filed their renewed motion for preliminary approval of the Settlement and papers in support thereof, including the Amended Stipulation, exhibits thereto, and memorandum and supporting declaration. ECF No. 160.

66.     On September 5, 2025, the Court issued the Preliminary Approval Order, *inter alia*, approving the notice program, setting the briefing schedule for Plaintiffs' motion for final approval of the Settlement and the fee and expense application, and setting December 18, 2025 as the date for the Final Approval Hearing.  ECF No. 161.

## II.     THE FINAL APPROVAL AND FEE REQUESTS

67.     The Settlement is fair, reasonable, adequate and a strong result for the Settlement Class.  The Settlement confers a certain and immediate benefit on the Settlement Class, eliminating the risk of continued litigation where Plaintiffs faced the hurdles concerning class certification, and proving the elements of a complex securities class action claim involving complex that would necessitate vigorous battles of the experts (e.g., market efficiency, loss causation, and damages) to succeed at summary judgment, trial, and on any appeal.

68.     Moreover, the $21,750,000 Settlement is an outstanding result considering that Plaintiffs also faced a sizable risk of zero or limited recovery due to Tupperware's bankruptcy and dwindling insurance policy which rendered collectability in the event of any judgment uncertain.

69.     The $21,750,000 Settlement Amount represents approximately 11.4% of

the total maximum damages of $190.6 million under their best-case scenario as estimated by Plaintiffs' damages expert.

70.    Moreover, even if Plaintiffs achieved a judgment equating to the full amount of damages under any damage scenarios, they faced substantial collectability risks given Tupperware's bankruptcy and a wasting insurance policy.

71.    A lump sum settlement involving a certain cash payment in the face of the numerous challenges set forth herein and in the accompanying Final Approval Motion and Fee Motion, is a favorable outcome.  Additionally, the Plan of Allocation is a fair and reasonable method for distributing the Settlement proceeds to Settlement Class Members.

72.    In light of these circumstances, and especially given that the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate, thus warranting final approval of the Settlement and Plan of Allocation.

73.    For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of one third of the Settlement, or $7,264,500, and reimbursement of litigation expenses totaling $430,553.01.  As explained in the Fee Motion, this fee request is within the reasonable range of percentages typically awarded to Lead Counsel in securities class actions in the Eleventh Circuit.

74.    The favorable reaction of the members of the Settlement Class also

supports the reasonableness of the Settlement and the fee/award requests.  To date, there have been no objections to the Settlement. Epiq Decl., ¶18.[2] The deadline for objections is November 28, 2025. Lead Counsel will address any objections in their reply papers, due on December 11, 2025.

75.    To date, there have been no requests for exclusion received by the Claims Administrator. *Id.*, ¶16. The deadline for requests for exclusion is November 28, 2025. Lead Counsel will address any objections in their reply papers, due on December 11, 2025.

## III.    NOTICE PROCEDURES

76.    The Preliminary Approval Order directed that the Postcard Notice highlighting key information regarding the proposed Settlement be disseminated to the Settlement Class, in addition to the online posting of the Notice and Claim Form, and the publication of the Publication Notice. ECF No. 161. The Preliminary Approval Order also set a deadline of November 28, 2025 (21 calendar days prior to the final fairness hearing) for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, and/or the Attorneys' Fee Motion or to request exclusion from the Settlement Class, and set a final fairness hearing date of December 18, 2025 (the "Settlement Hearing").

77.    At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, the Claims Administrator published the Publication Notice electronically on

---

[2] Plaintiffs will file a proposed order granting final approval along with the reply brief.

*PR Newswire* on October 3, 2025. Epiq Decl., ¶11, Ex. 1-B. The Claims Administrator also published the current status of the case; important Settlement-related deadlines; an online claim filing link; and downloadable copies of the Notice Packet, the Preliminary Approval Order, and the Amended Stipulation on a Settlement-specific website. *Id.*, ¶14.

78.   The Postcard Notice directed Settlement Class Members to the Settlement Website to obtain additional information on the Settlement, including how to file a claim and access to downloadable versions of the Notice and Claim Form. *See* Epiq Decl. Ex. 1-A. The Notice contains, among other things, a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of a Settlement Class Member's right to participate in the Settlement, object to the Settlement, the Plan of Allocation and/or the Attorneys' Fee Motion, or to exclude themselves from the Settlement Class. *See* Ex. 1-A. The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and for reimbursement of litigation expenses in an amount not to exceed $700,000, and to apply for a total award of up to $50,000 for the three Lead Plaintiffs for their time and expenses related to their representation of the Settlement Class. *Id*.

79.   On September 19, 2025, pursuant to paragraph 4.0 of the Stipulation, Epiq received the names and addresses of potential Settlement Class Members from

Defendants (the "Record Holder List"). *See* Epiq Decl., ¶5.

80.     In addition, Epiq maintains and updates a proprietary internal list of the largest and most common banks, brokers, and other nominees. *See* Epiq Decl., ¶6. At the time of the Initial Mailing, Epiq's internal broker list contained 893 mailing records. On September 26, 2025, Epiq caused the Notice Packet to be mailed to the 893 mailing records contained in its internal broker list.

81.     Pursuant to the Court's Preliminary Approval Order, as of November 12, 2025, over 17,846 Postcard Notices were mailed or emailed to potential Settlement Class Members and nominees. *See* Epiq Decl., ¶10.

## IV.    PLAN OF ALLOCATION

82.     Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation.  Epiq Decl., Ex. 1-A (Notice Packet). Lead Counsel created the Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner.

83.     Pursuant to the Preliminary Approval Order and as set forth in the Long Notice, all members of the Settlement Class who wish to participate in the distribution of the Net Settlement Fund have to submit a valid, timely Claim Form and all required information by no later than November 28, 2025. As provided in the Amended Stipulation, after deducting all appropriate taxes, administrative costs, attorneys' fees and expenses, the remainder of the Settlement Fund, i.e., the Net

Settlement Fund, shall be distributed among Settlement Class Members who submit timely and valid Claim Forms ("Authorized Claimants") according to the Plan of Allocation.

84.    The Plan of Allocation is set forth in detail in the Long Notice and provides that Authorized Claimants will receive a pro rata share of the Net Settlement Fund based on the value of their recognized claim attributable to the alleged fraud.

85.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Authorized Claimants. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the value of the Authorized Claimant's recognized claim. If, however, as is more likely, the amount in the Net Settlement Fund is not sufficient to permit payment of the total recognized claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the recognized claims of all Authorized Claimants.

## V.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

*86.*    The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations.  The Settling Parties reached the Settlement after three years of litigation during which Lead Counsel had thoroughly investigated the claims and consulted with multiple experts, including a financial economist to calculate estimated damages.  Indeed, at the time

of Settlement, Lead Counsel had already, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with experts; (ii) drafted three complaints, including the operative Second Amended Class Action Complaint ("SAC") (iii) successfully opposed Defendants' motion to dismiss; (iv) pursued fact discovery, which included serving and responding to party discovery requests; (v) managing a team of attorneys who reviewed and analyzed approximately 535,000 pages of documents; (vi) moved for class certification; (vii) engaged and consulted with experts on the issues of consumer pricing, profitability, damages, loss causation, and stock market efficiency; (viii) retained specialized bankruptcy counsel to protect the Settlement Class's claims in connection with Tupperware's bankruptcy petition; (ix) prepared detailed mediation statements, with voluminous exhibits, addressing both liability and damages; (x) participated in a formal full day in-person mediation session before David Murphy of Phillips ADR Enterprises, and continued discussions for several weeks thereafter; (xi) negotiated the terms of the proposed Settlement; and (xii) prepared the proposed Plan of Allocation in consultation with an experienced damages expert. Additionally, Plaintiffs followed the Court-approved notice plan to solicit claims, requests for exclusions, and objections.

89.    Lead Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case continued forward, considering the risks of this case surviving on the pleadings, at summary judgment, and at trial;

as well as significant ability-to-pay risks arising from Tupperware's bankruptcy. As discussed below and in the Final Approval Motion, Plaintiffs would have faced multiple procedural hurdles and significant merit-based risks if litigation continued, which would also entail significant additional expenses and delay. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

90.    Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently plead, there is no certainty that Plaintiffs would be able to defeat Defendants' anticipated motion for summary judgment, prevail at trial, or any subsequent appeals. Defendants have, and would have continued to, vigorously challenge Plaintiffs' standing and challenge whether Plaintiffs had adequately alleged the elements of falsity, scienter, reliance, and loss causation.

91.    At summary judgment and trial, Plaintiffs faced the risk that the Court or the jury would find that Defendants' alleged misstatements were not material, actionably false or misleading, or made with the requisite scienter.

92.    Additionally, Plaintiffs faced the risk that the Court would find Plaintiffs' theory of loss causation unavailing.

93.    If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated.

94.    Additionally, even if Plaintiffs achieved a judgment at trial and successfully litigated through any appeal, the risk of collecting on that judgment was considerable. Tupperware declared bankruptcy. Moreover, continued litigation

would have further exhausted the limited and wasting insurance policy.

95.    In sum, in light of these significant risks, Plaintiffs believe that the proposed Settlement is a very favorable outcome for the Settlement Class.

## VI.    THE FEE APPLICATION IS FAIR AND REASONABLE

96.    The Long Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, and for reimbursement of counsel's litigation expenses in an amount not to exceed $700,000 for Lead Counsel.  Epiq Decl., Ex. 1-A.  As set forth in the Fee Motion, one third of the common fund that Lead Counsel's efforts created falls is merited here and is in line with similar awards that courts in the Eleventh Circuit have granted in securities class actions, due to the unique characteristics and challenges posed in such cases.

97.    Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel committed to the interests of the Settlement Class, investing the time and resources necessary to resolve the Settlement Class's claims. As a result of Lead Counsel's efforts, Settlement Class Members will receive compensation they would not have sought individually and avoid the risk of no recovery at all.

*Lead Counsel's Work and Experience*

98.    Lead Counsel took this case on a contingency basis, spending over 12,197 hours litigating the case with no assurance of success or receiving any compensation.

99.    As a result of these efforts, Lead Counsel secured a non-reversionary $21,750,000 cash Settlement for the Class after three years of extensive investigation, hard-fought litigation, review of 535,000 pages of documents produced in discovery, defended three depositions, and lengthy negotiations by experienced attorneys that specialize in securities litigation. Plaintiffs filed three complaints, successfully opposed Defendants' motion to dismiss, and filed a motion for class certification that included expert testimony on the oft contentious subject of market efficiency. The Settlement is an excellent result for Settlement Class Members given the considerable risks of continued litigation and Tupperware's bankruptcy.

100.    As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to agree to the proposed Settlement.

101.    Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this Action.  As lead attorneys on the case, we personally monitored and maintained control of the work performed by other lawyers at Pomerantz, Levi & Korsinsky and Cullin O'Brien Law, P.A. throughout the litigation. Other experienced attorneys at our two firms were also involved in the drafting, reviewing and/or editing of pleadings, motion papers and other significant court filings, court appearances including oral argument, the mediation process, the settlement negotiations and in negotiating the terms of the Stipulation, and other matters.  More

junior attorneys and paralegals worked on matters appropriate to their skill and experience level.

102. Attached hereto as Exhibits 2A, 2B and 2C are declarations in support of Lead Counsel's motion for attorneys' fees on behalf of each of our two Co-Lead Counsel firms, Pomerantz and Levi & Korsinsky, as well as local counsel Cullin O'Brien Law, P.A (the "Fee Declarations"). Each of the Fee Declarations includes a schedule summarizing the lodestar of the firm. The Fee Declarations indicate the amount of time spent on the Action by the attorneys and professional support staff of each firm and the lodestar calculations based on their current hourly rates. The Fee Declarations were prepared from contemporaneous daily time records regularly maintained and prepared by the respective firms. The first page of Exhibit 2 is a chart that summarizes the information set forth in the Fee Declarations, listing the total hours expended and lodestar amounts for each Plaintiffs' Co-Lead Counsel firm and totals for the numbers provided.

103. As set forth in Exhibit 2, Plaintiffs' Counsel collectively expended a total of 12,197 hours in the investigation and prosecution of the Action. The resulting lodestar is $7,320,194.00. The requested fee of one third of the Settlement Fund thus represents a multiplier of approximately 0.99 to Plaintiffs' Counsel's lodestar.

104. The above amounts do not include the additional time that Lead Counsel will devote overseeing and assisting in the administration of the Settlement, for which Lead Counsel will not be paid. This work will include answering questions posed by

25

Settlement Class Members about the Settlement and the distribution of the Settlement proceeds, overseeing the work performed by the Claims Administrator, addressing any questions or disputes raised by Settlement Class Members about the allocation of the Settlement proceeds, and drafting and filing motions for distribution of the Net Settlement Fund.

105.   As discussed in further detail in the Fee Motion, the requested multiplier is at the bottom of the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere, and is particularly appropriate under the circumstances of this case.

106.   As reflected in the Pomerantz and Levi & Korsinsky firm resumes, attached hereto as Exhibits 3 and 4, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.

*The Caliber of Opposing Counsel*

107.   Defendants' Counsel, experienced and highly-skilled lawyers from Sidley Austin LLP, vigorously represented their clients.  Sidley Austin LLP is a law firm well-known for its litigation practice, including securities litigation specifically, to defend them in this lawsuit. Sidley Austin LLP expended tremendous resources and assembled a large team of partners and associates to defend the Action. Given the nature of complex securities litigation, Sidley Austin LLP also most likely had

26

substantial numbers of additional attorneys, paralegals, and support staff working behind the scenes.

108.    In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms favorable to the Settlement Class.

**The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases**

109.    Lead Counsel undertook this class action on a contingency fee basis. As summarized *supra* and further described in the Final Approval and Fee Motions, Lead Counsel assumed significant risks to bring these claims to a successful conclusion. Those risks are relevant to an award of attorneys' fees.

110.    From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of compensation for the investment of time and money that the case required. Lead Counsel have received no compensation during the course of their involvement in this litigation.

111.    The commencement of a class action does not guarantee a settlement. To the contrary. It takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

112.    As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for

the Settlement Class. In consideration of Lead Counsel's efforts and the favorable result achieved, a one third fee is reasonable and in line with attorneys' fee awards in similar cases in this Circuit.

*The Reaction of the Settlement Class to the Requested Fee*

113.    As noted above, as of November 12, 2025, over 17,846 Postcard Notices were mailed or emailed to potential Settlement Class Members and nominees. Epiq Decl., ¶10.

114.    The deadline to request exclusion from the Settlement or object to the Settlement is November 28, 2025. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees, and has not received any request for exclusion.  Epiq Decl., ¶¶15-18.

## VII.    REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

115.    Lead Counsel seek a total of $430,553.01 in reimbursement of out-of-pocket litigation expenses reasonably and necessarily incurred by Plaintiffs' Counsel in connection with commencing, litigating, and settling the claims asserted in the Action, to be paid from the Settlement Fund.  *See* Ex. 2 (summary chart, and listed by category).

116.    From the outset, Lead Counsel knew they might not recover any of their expenses, and, at minimum, would not recover anything until achieving a successful resolution of the case.  Lead Counsel also understood that, even assuming a successful

28

resolution, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

117. A categorized list of the expenses Lead Counsel incurred were compiled from the firms' regularly maintained records.

118. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

## VIII. COMPENSATORY AWARDS TO LEAD PLAINTIFFS PURSUANT TO THE PSLRA ARE WARRANTED

119. Plaintiffs seek an award of $15,000 each, or $45,000 in total, for their time and effort overseeing this action pursuant to the PSLRA. The work that Plaintiffs performed on behalf of the Settlement Class included, *inter alia*, familiarizing themselves with the facts of the case, filing the original complaint, filing lead plaintiff motions, reviewing the complaints, reviewing the briefing on all motions, regularly conferring with Lead Counsel to stay apprised of developments in the litigation, reviewing and responding to discovery requests, preparing and sitting for depositions, participating in discussions regarding the Settlement with Lead Counsel both before and after the mediation with Mr. Murphy, and authorizing Lead Counsel to settle the case for $21,750,000. *See* Exhibits 5 (Estep Decl.), 6 (Dennehy Decl.), 7 (Edge

Declaration). Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront. Moreover, Plaintiffs request is lower than the maximum set forth in the Notice. To date, no objections to the Lead Plaintiff Awards, which were also specifically disclosed in the Notice, have been received.

120. As explained in the Fee Motion, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

## IX.   CONCLUSION

121. For all the reasons set forth above, Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  Lead Counsel further submit that the requested fee in the amount of one third  of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of Co-Lead Counsel's out-of-pocket litigation expenses in the amount of $430,553.01, and the Plaintiff award, in the amount of $15,000 for each of the three Lead Plaintiffs, should also be approved.

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

Executed this 13th day of November 2025.

/s/ *Michael J. Wernke*
Michael J. Wernke


/s/ *Gregory M. Potrepka*
Gregory M. Potrepka